Elaine T. Byszewski (SBN 222304)
*elaine@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA  91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

Robert B. Carey (*Pro Hac Vice* pending)
*rob@hbsslaw.com*
Leonard W. Aragon (*Pro Hac Vice* pending)
*leonard@hbsslaw.com*
John M. DeStefano (*Pro Hac Vice* pending)
*johnd@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Patrick Maloney, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>      v.<br><br>T3Media, Inc. d/b/a Paya.com, a Colorado corporation,<br><br>    Defendant. | No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................ 1

II.    PARTIES .................................................................................... 2

III.   JURISDICTION AND VENUE................................................. 2

IV.    UNLAWFUL CONDUCT COMMON TO THE CLASS ................... 4

    A.     Defendant Conspired With NCAA Member Institutions And The NCAA Itself To Display And Sell NCAA Student-Athlete Photos Through Paya.Com. ........................................................ 4

    B.     Defendant Failed To Obtain Valid Permission From Student-Athletes To Utilize Student-Athlete Images To Market Sales Of NCAA Photographs And Defendant's Other Services .......................................... 6

    C.     Defendant Commercially Exploits Student-Athlete Photos Without Their Consent Even Though Doing So Breaches NCAA Rules And Statutory And Common Law Rights Of Publicity..................................... 7

    D.     Defendant Knows That It Does Not Have Student-Athletes' Consent To Sell Their Names, Images And Likenesses On Paya.com...................... 9

    E.     T3Media Makes Plaintiff's Images Appear For Sale Without Permission 11

V.     INJURY TO CLASS MEMBERS AND PLAINTIFF ....................... 17

VI.    COMMON COURSE OF CONDUCT DIRECTED TOWARD CALIFORNIA17

VII.   CLASS ACTION ALLEGATIONS................................................. 18

VIII.  CAUSES OF ACTION ............................................................... 20

IX.    JURY TRIAL DEMANDED ......................................................... 23

Plaintiff, through his attorneys, based on his experiences, the investigation of Counsel, and on information and belief, alleges as follows:

## I.     INTRODUCTION

1.     NCAA rules explicitly prohibit the NCAA, its member institutions, and its corporate affiliates from commercially exploiting the names, images, and likeness of NCAA student-athletes. The commercial exploitation of NCAA student-athletes' names and likenesses without their permission also violates the students' statutory and common law rights of publicity. When media companies claiming to be the NCAA's "exclusive agent" and "official photographer" upload tens of thousands of photographs of NCAA student-athletes to public websites and, without appropriate authorization, use those images and the names of the athletes to promote direct sales of the images, the media companies violate the student-athletes' rights of publicity and are subject to monetary, statutory, and injunctive relief.

2.     This suit arises out of National Collegiate Athletic Association ("NCAA") student-athlete images being sold, advertised, and used for promotional purposes on the internet. Defendant, through websites which it operates or utilizes, including Paya.com, conspired and continue to conspire with the NCAA itself, numerous colleges and universities that participate in the NCAA ("NCAA member institutions"), and NCAA-licensed photographers to market, sell, and otherwise exploit thousands of images of active and former collegiate athletes without offering compensation to or obtaining consent from these student-athletes.

3.     Specifically, the NCAA and certain NCAA member institutions permit Defendant Paya.com to use archival photographs of student-athletes and to use NCAA-related trademarks despite strict NCAA rules explicitly prohibiting the NCAA itself and its member institutions from commercially exploiting the names, images, and likenesses of NCAA student-athletes. Paya.com then offers these photos for sale on websites it controls or utilizes. Through this commercial exploitation of

CLASS ACTION COMPLAINT

NCAA student-athlete images, Defendant Paya.com derives profits for itself and others.

4.     This is a proposed class action on behalf of all current and former NCAA student-athletes whose names, images, and likenesses, in the form of photographs, have been used without their consent by Defendant for the purpose of advertising, selling, or soliciting purchases of the photographs themselves.

## II.     PARTIES

**Plaintiff**

5.     Plaintiff Patrick Maloney, an individual, is a resident of Pennsylvania and a former basketball player at Catholic University.

**Defendant**

6.     Defendant T3Media Inc. ("T3Media"), d/b/a Paya.com, is a Delaware Corporation with its principal place of business in Denver, Colorado.

7.     On information and belief, in an effort to exploit NCAA student-athletes, Defendant entered into agreements with numerous NCAA member institutions and the NCAA itself to commercially exploit the names, images, and likenesses of NCAA student-athletes through the sale of student-athletes images without the consent of those athletes.

8.     Defendant T3Media Inc. advertises itself as "a leading provider of cloud-based video management and licensing services." T3Media touts its ambition "to break or change established industry thinking and business models." Through its website portal Paya.com, T3Media asserts that it is the "sole source for NCAA copyrighted photos from men's and women's collegiate championships." T3Media further claims to be "the exclusive licensing agent of NCAA photos" and advertises "access to more than 70+ years of professionally shot" college sports images.

## III.     JURISDICTION AND VENUE

9.     This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds

$5,000,000, and Plaintiff and other putative Class members are citizens of a different state from Defendant.

10.     This Court has personal jurisdiction over the Plaintiff because Plaintiff Patrick Maloney submits to the Court's jurisdiction.

11.     This Court has personal jurisdiction over Defendant because it transacts substantial business in this District giving rise to the allegations in this complaint. Defendant maintains a physical licensing and sales office in Los Angeles, California. Defendant further maintains an "advanced scanning and ingest facility" in Burbank, California. Defendant continually misappropriates the rights of California residents whose names, images, and likenesses are featured in the NCAA student-athlete photo archive. Defendant offers for sale images of NCAA student-athletes within this District and promotes its services within this district. Defendant commercially exploits and offers for sale the images of NCAA student-athletes who are residents of this District as well as NCAA student-athletes who participated in NCAA university athletic programs in this District and were photographed in this District. In addition, Defendant actively markets the NCAA student-athlete photo archive on the internet and conducts internet sales and licensing transactions with California residents. Defendant specifically markets the licensing of the NCAA student-athlete photo archive toward leading producers in TV, film and advertising in and around Los Angeles, California. Plaintiff's claims arise out of Defendant's substantial, ongoing business activities in this District, and personal jurisdiction is therefore appropriate.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant, a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because many of the decisions behind the scheme to use student-athletes' names and likenesses were made in this District, as described above. Venue is also appropriate because Defendant transacts business

within the District, and substantial events giving rise to the claims arose in this District.

## IV.   UNLAWFUL CONDUCT COMMON TO THE CLASS

**A.   Defendant Conspired With NCAA Member Institutions And The NCAA Itself To Display And Sell NCAA Student-Athlete Photos Through Paya.Com.**

13.   Defendant made agreements with the NCAA, NCAA Member Institutions, and NCAA-licensed photographers to display, market, and offer for sale literally thousands of photographs of NCAA current and former student-athletes in violation of NCAA rules and without the consent of those athletes.

14.   In January 2012, T3Media, then known as Thought Equity Motion Inc.,[1] announced that it had newly acquired "the rights to license photographs and radio calls from the NCAA's 89 Championships across 23 sports and all three division levels."

15.   As T3Media expressly acknowledges, the purpose of this licensing arrangement is to commercially exploit photographs of student-athletes, including the publicity rights associated with those photographs, in order to generate revenue for the NCAA and T3Media. To use T3Media's term, the purpose of the conspiracy was to "monetize assets," the assets being photographs of student-athletes.

16.   In the same announcement, Thought Equity bragged that it was "now the sole source to license a full-range of 'non-live' NCAA media, including fully-produced games, clips, photos and radio calls." Similarly, the T3Media website states that "T3Media is your sole source for NCAA copyrighted photos from men's and women's collegiate championships. As the exclusive licensing agent of NCAA photos, we can provide you access to more than 15 years of professionally shot images through our online licensing platform."

---

[1] Thought Equity Motion Inc. changed its name to T3Media in 2012. Throughout this Complaint, "T3Media" is intended to refer to both the original and renamed T3Media entity.

17. T3Media's website contains an article entitled "Preserving and Monetizing the NCAA's Assets." According to the website, "T3Media increases the value of the NCAA's Archive through integrated asset management and rights development approach."

18. The same article states that "In partnering with a vendor [T3Media] to manage its video library, the NCAA set out to accomplish the following goals: . . . Monetize and distribute its content through licensing, direct sales as well as sponsorship and advertising opportunities."

19. T3Media characterizes the NCAA's video library as being "Unclear in terms of rights & clearances structure." Billing itself as out to "break" existing business models, T3Media claimed to be "an ideal partner to help preserve, manage and monetize the NCAA Collection."

20. NCAA rules prohibit the commercial exploitation of student-athlete images, and the NCAA restricts photographer access to NCAA sporting events. The NCAA has designated Clarkson Creative as the "official championships photographer."

21. Clarkson Creative LLC and Rich Clarkson and Associates LLC provide photographs of NCAA student-athletes for T3Media to display on its Paya.com website.

22. Student-athletes who participate in NCAA competitions understand and expect that no explicit commercial use will be made of photographs taken at the game. Student-athletes who participate in NCAA competitions understand and expect that the NCAA and those entering into agreements with the NCAA will abide by the NCAA's own rules regarding the exploitation of student-athlete photographs and rights of publicity. The NCAA's standard photographer license prohibits photographers from using Event photographs "to market or advertise the photographer's services."

23.     Under the NCAA's standard photographer license agreement, an NCAA-licensed photographer is entitled to 50% of revenues "net of applicable taxes and fees," with the balance payable to the NCAA. Upon information and belief, Defendant collects a fee associated with each sale of an NCAA event photograph. According to media reports, T3Media generally charges content licensors a 20% fee on each sale made via its Paya.com marketing and licensing service.

**B.     Defendant Failed To Obtain Valid Permission From Student-Athletes To Utilize Student-Athlete Images To Market Sales Of NCAA Photographs And Defendant's Other Services**

24.     Plaintiff and class members have not consented to the sale of their images by Defendant as part of the NCAA photo archive, as doing so would jeopardize their NCAA eligibility if such sales were made during their collegiate careers. Nevertheless, Defendant displays these photographs online and offers them for sale to the public. Defendant then takes a sizeable cut of the proceeds of the sales for itself.

25.     Defendant has not obtained a license from Plaintiff or class members to market their images for sale for personal, commercial, or any other use. The identities of student-athletes who participate in the NCAA and who appear in NCAA event photographs are readily ascertainable by appearance, sport, team, year, event, and/or number, and the NCAA regularly adopts rules and enters into contracts with its student-athletes regarding the terms of their participation in NCAA events.

26.     Plaintiff and class members have not requested or authorized Defendant to license or promote the sale of student-athlete publicity rights. Nor have Plaintiff or class members authorized Defendant to use their names and photographs to promote T3Media's licensing, archiving, and rights-clearance services. Despite purporting to offer rights-clearance services to purchasers of NCAA photographs, T3Media continuously violates the publicity rights of thousands of student-athletes wholesale.

27.     Despite the availability of ready alternatives that would bring Defendant and the NCAA into compliance with NCAA rules and statutory and legal obligations to student-athletes, Defendant and the NCAA have found it expedient to skip the step of clearing publicity rights in their hurry to monetize NCAA photographs for their own benefit.

28.     Moreover, at no point does Defendant compensate Plaintiff or class members for the use of their names, images, and likenesses for commercial gain.

**C.     Defendant Commercially Exploits Student-Athlete Photos Without Their Consent Even Though Doing So Breaches NCAA Rules And Statutory And Common Law Rights Of Publicity**

29.     Defendant markets every student-athlete image in its Paya.com archives, and upon information and believe other websites, for paid licensing to commercial, personal, and other users. Defendant also continuously uses student-athlete photographs on its website to promote T3Media's licensing, archiving, and rights-clearance services.

30.     Defendant exhibits the NCAA photograph archive in its entirety, indexed by the names of the players who appear in the photographs, in order to promote licensing of the photographs themselves and T3Media's ability to obtain rights clearances regarding the photographs, even though T3Media has failed to clear the rights for its own use of the student-athlete images to promote its commercial services.

31.     Defendant has divided the marketing of NCAA photographs to the general public between at least two websites: T3Media.com and Paya.com.

32.     T3Media maintains its own website, T3Media.com, which promotes T3Media's archiving, licensing, and rights clearance services. The T3Media.com website directs users interested in licensing NCAA event photographs to the Paya.com website. The T3Media.com website further holds up as example T3Media's commercial activities regarding the NCAA photograph archive, and the

1   archive itself, to promote T3Media's archiving, licensing, and rights-clearance

2   services.

3       33.     With the launch of Paya.com, T3Media created a new portal for the

4   general public to purchase photographs in the NCAA photo archive. Users of the

5   Paya.com site were permitted to search through the photographs by keyword,

6   including by using the names of student-athletes featured in the photographs.

7       34.     According to the terms of the NCAA's standard photographer license

8   agreement, photographers "may only sell digital copies of Event photographs

9   ("Digital Copies") on the NCAA Photo Marketplace (the "Marketplace"), available

10  at https:/ncaa.paya.com." NCAA-licensed photographers provide all of the NCAA

11  student-athlete photographs that appear on the Paya.com storefront.

12      35.     NCAA photographs in the online T3Media/Paya.com archive cover 89

13  championships across 23 sports including the Final Four, the Frozen Four, and the

14  College World Series. T3Media advertises its ability to license images of iconic

15  NCAA athletes.

16      36.     Irrespective of rights of publicity, T3Media (through Paya.com) offers

17  users a standard license to NCAA student-athlete images at a price of around $20-30.

18  The terms of this license purport to grant an instant right in the purchaser to make

19  "personal use" of the photograph, including "desktop wallpaper, poster art, etc." The

20  terms of the license purport to grant the right to "use a single copy of the image for

21  non-commercial art use." T3Media purports to sell this license directly, for a flat fee,

22  without obtaining any permission from Plaintiff or class members to market their

23  images for sale for personal use. Defendant profits from the direct sale of NCAA

24  student-athlete images on Paya.com.

25      37.     Defendant organizes its galleries of NCAA student-athlete photos into

26  archives which are searchable by student, athletic event, year, and school. Photo

27  galleries go back many years depending on the school and sport and contain images

28  taken during actual NCAA games and events. These galleries are regularly updated

and frequently contain images from contests that took place just days prior. The galleries also offer for sale images of student-athletes who no longer play for an NCAA member institution (due to having graduated or otherwise).

38.     Defendant continues to add student-athlete images to its archives by the hundreds each month. For example, as of February 20, 2014, the Paya.com website represented that it offered 45,745 assets for sale in its NCAA photo archive. As of April 16, 2014, the Paya.com website represented that it offered 46,307 assets for sale in its NCAA photo archive.

39.     Photo descriptions often, if not invariably, contain the student-athlete's full name to allow visitors to search specific athletes by name.

**D.     Defendant Knows That It Does Not Have Student-Athletes' Consent To Sell Their Names, Images And Likenesses On Paya.com**

40.     On information and belief, Defendant knows that it does not have written consent from any NCAA student-athletes to use their names, images or likenesses for commercial purposes on Paya.com.

41.     T3Media's own website states as follows:

> In the United States, celebrities, professional athletes, and public figures control the use of their name, likeness, signature, and voice for commercial purposes during their lifetime and for many years after their death. Permission for commercial use can be granted by the individual, their authorized agent, or their estate.

> Commercial and advertising projects generally include print and TV advertising, radio commercials, corporate brochure/presentation/ website, and trade shows. Response and willingness to license from individuals, agents, or celebrities, depends on the project – studios and talent can be very particular about projects they want to be associated with. Some will not provide permission for any commercial or advertising use. When planning your project, keep in mind that clearing celebrities and athletes can add significant cost, time and effort to any project.

42.     T3Media advertises on its website that T3Media provides rights clearance services to prospective purchasers of its media content. T3Media further

states that in some cases, "T3Media has prenegotiated rights with athletes and other talent to facilitate a fast turnaround for your projects." In other cases, T3Media offers to indemnify users of its media content without a rights clearance, including cases where rights clearances are, according to T3Media, "impractical."

43.     On its Paya.com website, T3Media goes so far as to prohibit users from posting or licensing photographs that infringe rights of publicity. On its Frequently Asked Questions Page, T3Media states, "Per our Terms of Use: Users shall not post, list or license any video, photo, image, text, metadata, audio recording, or other work or material that:  Violates or infringes upon the rights of any third party, including, without limitation, copyright, trademark, patent, right of privacy, right of publicity or other personal or proprietary rights; . . . ."

44.     Yet despite this professed familiarity with the law governing rights of publicity and the process of obtaining rights clearances, and in violation of its own stated policy not to permit the posting of material that infringes rights of publicity, T3Media has failed to obtain clearances from Plaintiff to use Plaintiff's image in advertising those images for sale. T3Media prohibits Paya.com users from doing what T3Media itself has done.

45.     The NCAA rules—of which Defendant is aware—prohibit NCAA current student-athletes from consenting to the sale of their photographs on Defendant's websites or the use of their photographs to promote Defendant's for commercial gain. Doing so would make them ineligible to participate in NCAA athletic events, and of course, would lower the value of their images to Defendant.

46.     NCAA Rule 12.5.2 prohibits NCAA student-athletes from permitting the use of their "name[s] or picture[s]" to "advertise, recommend or promote directly the sale or use of a commercial product or service of any kind." Similarly, a member institution violates the NCAA rules when, without a student-athlete's knowledge or consent, it uses or permits the use of a student-athlete's name or picture to "advertise, recommend or promote directly the sale or use of a commercial product

or service of any kind." This same rule also requires student-athletes and/or NCAA member institutions "to take steps to stop such activity" when it occurs without the "knowledge or permission" of the student-athlete.

47.     The NCAA and its member institutions have blindly ignored their obligation to prevent exploitation of their student-athletes at their own hands and to halt others from doing so. Instead, with the cooperation of Defendant, and in violation of the duties they owe to their student-athletes, they have used student-athlete names and photos to promote Defendant's businesses and sales of NCAA-related photographs without the student-athletes' consent.

48.     Defendant knows of the relevant NCAA rules but has also ignored them. Not only does Defendant tout its dominance in the NCAA photography market, but Defendant even warns that NCAA image licenses are subject to NCAA rules and restrictions. T3Media's advertisement on the NCAAPhotos.com website states that "All images of NCAA Championships contained in the archive are available for editorial and commercial usage, subject to NCAA restrictions and normal commercial practices, through an exclusive marketing partnership with T3Media and its NCAA Photos Collection (powered by PAYA)." Defendant expressly admits on Paya.com that Defendant has not obtained Plaintiff's consent to use and sell his images, stating "talent not released" beside Plaintiff's photographs.

**E.     T3Media Makes Plaintiff's Images Appear For Sale Without Permission**

49.     Below are examples of student-athlete photographs that Defendant has blatantly offered for sale and commercially exploited on Paya.com. As can be seen in these examples, the photographs are clearly labeled with the names and schools of NCAA student-athletes:

1

**<u>Figure I</u>**

2



16

**Source:**  www.paya.com/photos/358518.html

**Caption:** w1k2007cw.jpg
01 APR 2007: Candace Parker (3) of the University of Tennessee and Erlana Larkins
(2) of the University of North Carolina battle for a rebound during the NCAA
Women's Final Four at Quicken Loans Arena in Cleveland, OH. Tennessee defeated
North Carolina 56-50 to advance to the national title game. Jamie
Schwaberow/NCAA Photos

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Figure II</u>**



**Source:** www.paya.com/photos/358470.html

**Caption:** w1m2007co.jpg
10 MAR 2007: Rebecca Soni of the University of Southern California competes in the 200 Yard Breaststroke at the Division I Women's Swimming and Diving Championships held at the University of Minnesota's Aquatic Center in Minneapolis, MN. Soni won the event with a 2:08.23 time. Alicia Jerome/NCAA Photos

50.    Defendant does not discriminate in selecting which players' images to display and market. From a team's top star to its last person off the bench, all student-athletes are at risk of seeing their names and photographs displayed and sold and otherwise exploited by Defendant.

51.    Defendant, with the knowledge and cooperation of its co-conspirators, attracts NCAA fans to its websites and services with images of student-athletes.

52.    Plaintiff Patrick Maloney's experience is typical of Defendant's treatment of NCAA student-athletes.

53.   Plaintiff played basketball for Catholic University, joining the program in 1997 as a freshman and playing until he graduated in 2001.

54.   In his final season, the senior point guard won the NCAA Division III National Basketball Championship and was awarded the NCAA Most Outstanding Player title. The win gave Catholic University its first team national title in school history.

55.   Acting without Plaintiff's consent, Defendant displayed and sold, and continues to display and sell, images of Plaintiff taken when he was still in college.

**Figure III**



**Source:**  www.paya.com/photos/321143.html

**Caption:** m3k2001ci.jpg
17 MAR 2001: Guard Horace Jenkins (15) of William Paterson University drives past guard Pat Maloney (21) of Catholic University during the Men's Division 3 Basketball Championship held at the Salem Civic Center in Salem, VA. Catholic University defeated William Paterson University 76-62 for the championship title. Andres Alonso/NCAA Photos

1

**Figure IV**

2

3

4

5

6

7

8

9

10

11

12

13

14

15



16

17

18 **Source:** www.paya.com/photos/321143.html

19 **Caption:** m3k2001cl.jpg

20 17 MAR 2001: Catholic University poses with their championship trophy after
21 defeating William Paterson University during the Men's Division 3 Basketball
22 Championship held at the Salem Civic Center in Salem, VA. Catholic University
23 defeated William Paterson University 76-62 for the championship title. Andres
Alonso/NCAA Photos

24      56.    Mr. Maloney never granted Defendant the right to exploit his name,
25 image, or likeness commercially.

26      57.    Nor did Mr. Maloney grant these rights to the NCAA or to any company
27 that manages the online display and/or sale of photos of NCAA sporting events.

28

58.     Nonetheless, Defendant displayed and offered photographs of Plaintiff in his Number 21 uniform for sale without informing him or sharing in any profits. The photographer who took the photos of Plaintiff (See Figures III and IV, *supra*), Andres Alonso holds himself out to be, and on information and belief is, a photographer for the NCAA.

59.     In displaying and offering for sale images of Plaintiff, Defendant misappropriated Plaintiff's right of publicity.

60.     On information and belief, Defendant did not obtain consent from the other thousands of NCAA student-athletes whose images it has displayed, commercially exploited, and offered for sale.

61.     Indeed, given that eligibility for a student-athlete is premised on the student-athlete (or NCAA member institution) taking steps to halt use of the student-athlete's image for commercial purposes, and given that the student-athletes do not profit from Defendant's sale of their images, it is patently absurd to think that the student-athletes—who have everything to lose and absolutely nothing to gain from their names, images, and likenesses being sold on the internet—would consent to use of their images in such a fashion.

62.     The lack of student-athlete consent is also obvious by the nature of the various images offered for sale. For example, Paya.com offers for sale images of numerous athletes in situations that they would not want displayed, such as losing championships, getting "dunked" on, giving up hits, falling, etc. Given the option, class members would not consent to the use of embarrassing images for purposes of sale and the promotion of Defendant's services.

63.     To the extent such consent is obtained from student-athletes while they are still in school, it is void because it would have been obtained in violation of NCAA Rule 12.5 that is contractually binding on all NCAA member institutions and prohibits the commercial exploitation of student-athlete images, as alleged above.

1   Likewise, the NCAA and NCAA member institutions did not receive consent by

2   virtue of any NCAA form signed by the student-athletes.

3                    **V.     INJURY TO CLASS MEMBERS AND PLAINTIFF**

4          64.    A student-athlete's name, image, and likeness compose part of that

5   individual's right of publicity and represent an extremely valuable property interest.

6   Individual and group licenses typically provide compensation to athletes in exchange

7   for permitting third parties to attach their names, images, and likenesses to a host of

8   products and services.

9          65.    On and off the field, collegiate athletes provide a major financial boon

10  to their universities. A joint study conducted by Drexel University Department of

11  Sport Management and the National College Players Association determined that the

12  fair market value of the average top level football and basketball player was

13  $121,048 and $265,027, respectively. Football players at the University of Texas

14  were appraised at $513,922 on average, while Duke University men's basketball

15  players were found to be worth over a million dollars apiece.

16         66.    The demand for player photographs and merchandise is robust, though,

17  and money is rarely left on the table when it comes to exploiting student-athlete

18  names, images, and likenesses. Instead of going directly to the players, revenue from

19  the commercial exploitation of their names and photographs is taken by Defendant

20  and others.

21                  **VI.    COMMON COURSE OF CONDUCT DIRECTED TOWARD**

22                                              **CALIFORNIA**

23         67.    Defendant T3Media maintains a physical licensing and sales office in

24  Los Angeles, California. According to T3Media, the purpose of this office is to

25  market T3Media's vast content archive to California residents, including without

26  limitation the Los Angeles-area entertainment industry. Upon information and belief,

27  Defendant regularly markets the NCAA photo archive to California residents and

28  regularly conduct sales of NCAA photo archive image rights to California residents.

CLASS ACTION COMPLAINT                                17

68.     Defendant T3Media maintains an "advanced scanning and ingest facility" in Burbank, California. Upon information and belief, T3Media has utilized and continues to utilize this facility to reproduce images of Plaintiff and class members, in furtherance of its efforts to use those images in its commercial marketing efforts in violation of the publicity rights of Plaintiff and the class.

69.     Defendant T3Media maintains the website Paya.com for the purpose of advertising and marketing the NCAA photo archive and T3Media's other services. Through Paya.com, internet users are able to purchase images of Plaintiff and the class for their own use, and for other commercial uses, in return for compensation paid to Defendant. The website Paya.com is visible and accessible to California residents. Upon information and belief, through Paya.com, Defendant has conducted and continues to conduct numerous sales of class members' images to California residents.

70.     Further, Defendant continually markets thousands of photographs of student-athletes in the NCAA photo archive. Defendant also markets thousands of photographs of student-athletes in the NCAA photo archive that were taken while the student-athletes were participating in California-based university athletic programs.

71.     Because they maintain ongoing business operations in California and conducts substantial and continuous business in California affecting California residents and California schools, Defendant is subject to California laws.

## VII.   CLASS ACTION ALLEGATIONS

Plaintiff sues on his behalf and on behalf of a class of persons pursuant to Federal Rule of Civil Procedure 23. The putative Class is defined as:

> Any current or former NCAA student-athlete who appears in a photograph that is or was publically available on Paya.com or whose name is or was used on Paya.com.

72.     Excluded from the Class are Defendant, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly

owned subsidiaries or affiliated companies, Class counsel and their employees, and the judicial officers and associated court staff assigned.

73.      The persons in the Class are so numerous that individual joinder of all members is impracticable under the circumstances of this case. Although the precise number of such persons is unknown, the exact size of the Class is easily ascertainable, as each Class member can by identified by using Defendant's own records. Plaintiff is informed and believes there are many thousands of Class members.

74.      There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

(a)      Whether Defendant displays, markets, and sells photographs using NCAA student-athlete names, images, or likenesses;

(b)      Whether the NCAA student-athletes whose names, images, and likenesses are displayed on Defendant's websites have given their consent;

(c)      Whether Defendant's use of NCAA student-athletes' names, images, and likenesses is unlawful;

(d)      Whether Defendant's conduct violates California Civil Code § 3344;

(e)      Whether Defendant's conduct constitutes an unfair trade practice;

(f)      Whether Class members have been damaged by Defendant's conduct and the amount of such damages;

(g)      Whether punitive damages are appropriate and the amount of such damages;

(h)      Whether statutory damages are appropriate and the amount of such damages;

75.      Plaintiff's claims are typical of the Class's claims, as they arise out of the same course of conduct and the same legal theories as the rest of the Class, and Plaintiff challenges the practices and course of conduct engaged in by Defendant with respect to the Class as a whole.

76.     Plaintiff will fairly and adequately protect the interests of the Class. He will vigorously pursue the claims and has no antagonistic conflicts. Plaintiff has retained counsel who are able and experienced class action litigators and are familiar with the commercial market for student-athlete names, images, and likenesses.

77.     Defendant has acted or refused to act on grounds that apply generally to the Class, and final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole. A class action is also appropriate because Defendant has acted and refused to take steps that, on information and belief, would generally apply to and affect thousands of individuals, thereby making injunctive relief appropriate with respect to the Class as a whole.

78.     Questions of law or fact common to Class members predominate over any questions affecting only individual members. Resolution of this action on a class-wide basis is superior to other available methods and is a fair and efficient adjudication of the controversy because, in the context of this litigation, no individual Class member can justify the commitment of the large financial resources to vigorously prosecute a lawsuit against Defendant. Separate actions by individual Class members would also create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Defendant and substantially impede or impair the ability of Class members to pursue their claims. It is not anticipated that there would be difficulties in managing this case as a class action.

## VIII.  CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Deprivation of Rights of Publicity, Violation of California Civil Code § 3344)**

79.     Plaintiff incorporates by reference all allegations in the foregoing paragraphs.

80.     Defendant knowingly and intentionally utilized and continues to utilize the names, images, and likenesses of Plaintiff and Class members for commercial

purposes without their consent, including the advertisement and sale of images to the general public.

81.     This conduct has occurred in and emanated from California, specifically T3Media's licensing facility in Los Angeles.

82.     As a result of Defendant's misappropriation of their publicity rights, Plaintiff and class members have been injured and Defendant has received profits attributable to such misappropriation.

## SECOND CAUSE OF ACTION

### (Violation of Rights of Publicity, California Common Law)

83.     Plaintiff incorporates by reference all allegations in the foregoing paragraphs.

84.     Defendant utilized and continues to utilize the names, images, and likenesses of Plaintiff and Class members without their consent and for Defendant's own commercial advantage.

85.     As a result of Defendant's misappropriation of their publicity rights, Plaintiff and Class members have been injured.

## THIRD CAUSE OF ACTION

### (Violation of the Unfair Competition Act,
### California Business & Professions Code § 17200 *et seq.*)

86.     Plaintiff incorporates by reference all allegations in the foregoing paragraphs.

87.     Defendant's conduct, as alleged above, constituted and constitutes unfair, unlawful, and fraudulent business practices in violation of Section 17200 *et seq.* of the California Business and Professions Code.

88.     The conduct is unlawful because it violates California Civil Code § 3344.

89.     The conduct is unfair because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to

student athletes, which harm greatly outweighs any benefit associated with the business practice.

90.   The conduct is misleading because the NCAA and certain NCAA member institutions permit Defendant Paya.com to use archival photographs of student-athletes and to use NCAA-related trademarks despite strict NCAA rules explicitly prohibiting the NCAA itself and its member institutions from commercially exploiting the names, images, and likenesses of NCAA student-athletes.

91.   The Named Plaintiff has standing to pursue this claim because he has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.

92.   Plaintiff and the Class are entitled to relief, including full restitution, which may have been obtained by Defendant as a result of such business acts or practices, and an injunction against Defendant to cease and desist from engaging in the practices described herein.

93.   Defendant's conduct further caused and is causing irreparable injury to Plaintiff and Class members. Plaintiff and Class members are accordingly entitled to restitutionary disgorgement of Defendant's profits and injunctive relief, plus interest and attorneys' fees, under California Code of Civil Procedure § 1021.5, and request the following injunctive relief: (a) Defendant be ordered to cease and desist from continuing to unlawfully utilize Plaintiff's and Class members' names, images, and likenesses; (b) Defendant make restitutionary disgorgement all profits obtained from the utilization of Plaintiff's and Class members' names, images, and likenesses; and (c) Defendant pays for the costs of notifying all Class members of the wrongful conduct and available remedies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant:

1      A.     Certification of the action as a Class Action pursuant to the Federal

2  Rules of Civil Procedure, and appointment of Plaintiff as the Class Representative

3  and his counsel of record as Class Counsel;

4      B.     Actual damages, statutory damages, punitive damages, and such other

5  relief as provided by the statutes cited;

6      C.     Prejudgment and post-judgment interest on such monetary relief;

7      D.     Equitable relief in enjoining future unauthorized use of the names,

8  images, or likenesses of Plaintiff and class members in connection with photos and

9  related products, and declaring null, void, and/or unenforceable any contractual

10  provisions or NCAA rules purporting to limit the right of Plaintiff and Class

11  members to receive compensation for their injuries;

12      E.     Seizure and destruction of all copies of any images in the possession,

13  custody, or control of Defendant or third parties (to the extent permitted by law) that

14  infringe upon Plaintiff's and Class members' rights of publicity;

15      F.     The costs of suit, including reasonable attorneys' fees; and

16      G.     All other relief to which Plaintiff and Class members may be entitled at

17  law or in equity.

18

19               **IX.   JURY TRIAL DEMANDED**

20      Plaintiff demands a trial by jury on all issues triable of right by jury.

21

22      RESPECTFULLY SUBMITTED this 27th day of June, 2014.

23

                 HAGENS BERMAN SOBOL SHAPIRO LLP

24

25                   By:   /s/ Elaine T. Byszewski
                 *elaine@hbsslaw.com*

26                   Elaine T. Byszewski (SBN 222304)
                 301 North Lake Avenue, Suite 203

27                   Pasadena, CA  91101
                 Telephone: (213) 330-7150

28                   Facsimile: (213) 330-7152

CLASS ACTION COMPLAINT               23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert B. Carey (*Pro Hac Vice* pending)
*rob@hbsslaw.com*
Leonard W. Aragon (*Pro Hac Vice* pending)
*leonard@hbsslaw.com*
John M. DeStefano (*Pro Hac Vice* pending)
*johnd@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

Steve W. Berman (*Pro Hac Vice* pending*)*
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Attorneys for Plaintiff and the Proposed Class*