**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
    kellisager@dwt.com
KAREN A. HENRY (State Bar No. 229707)
    karenhenry@dwt.com
DIANA PALACIOS (State Bar No. 290923)
    dianapalacios@dwt.com

Attorneys for Defendant
T3MEDIA, INC. d/b/a PAYA.COM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

PATRICK MALONEY, on behalf of himself and all others similarly situated, TIM JUDGE, on behalf of himself and all others similarly situated,

                            Plaintiffs,

        vs.

T3MEDIA, INC. d/b/a PAYA.COM, a Colorado corporation,

                            Defendant.

Case No. **14-CV-05048-AB (VBKx)**

Assigned to the Hon. André Birotte Jr.

**DEFENDANT'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES (C.C.P. § 425.16)**

Hearing Date:  November 24, 2014
Time:                10:00 a.m.
Courtroom:       790

[Declarations Of Ernest M. Weiser With Exhibits A-M And Karen A. Henry With Exhibits N-U In Support Of Special Motion To Strike; Application To Seal Exhibit B; Declaration Of Ernest M. Weiser In Support Of Application To Seal; And Notice Of Lodging Of Digital Video Disc Filed Concurrently]

[[Proposed] Order Granting Motion To Seal Lodged Concurrently]]

Action Filed: June 27, 2014

1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 24, 2014, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 790 of the above-entitled court, located at 255 East Temple Street, Los Angeles, CA 90012, defendant T3Media, Inc. d/b/a Paya.com ("T3Media") will and hereby does move this Court, pursuant to Code of Civil Procedure § 425.16, for an order striking the First Amended Complaint ("FAC") and each of the causes of action brought by Plaintiffs Patrick Maloney and Tim Judge on behalf of themselves and a purported "class" of current and former NCAA student-athletes.[1]

Plaintiffs' lawsuit purports to arise from T3Media's dissemination of photographs of college athletes taken during championship competitions sponsored by the National Collegiate Athletic Association (the "NCAA").  Although Plaintiffs do not – and cannot – claim to own any copyright interest in the photographs, they claim that T3Media, as the authorized agent of the copyright holders, has violated Plaintiffs' "publicity" rights under California law by displaying, reproducing, and licensing copyrights to the photographs, and by describing the contents of the photographs, including identifying the individuals depicted in the photos.  E.g., FAC ¶¶ 3, 30, 36.  Based on these allegations, Plaintiffs have asserted three claims – for statutory misappropriation under California Civil Code § 3344 (First Cause of Action); common law misappropriation (Second Cause of Action); and unfair competition pursuant to California Business & Professions Code § 17200 (Third Cause of Action).

---

[1] Plaintiffs allege that they are former members of the Catholic University basketball team that won a national championship in 2001.  FAC ¶ 72.  They would not be appropriate representatives of a class that purports to include "current" college athletes, nor is this matter otherwise suitable for class certification given the many different issues that would apply to each individual class member.  However, because the arguments raised in this Motion apply as a matter of law to the claims raised in the FAC, this Court need not address class certification issues to conclude that the entire lawsuit should be dismissed with prejudice.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Because each of these claims arise from T3Media's conduct in furtherance of the exercise of free speech about a matter of public interest, they fall within the scope of California Civil Procedure Code § 425.16 (the "SLAPP statute").  Consequently, under that statute, the burden shifts to Plaintiffs to establish a probability that they will prevail on each of their claims.  See C.C.P. § 425.16(b)(1); Memorandum of Points and Authorities, Section IV.  Plaintiffs cannot meet their burden for each of the following reasons:

1.     All of Plaintiffs' claims are preempted by federal copyright law, because the photographs at issue clearly fall within the subject matter of the Copyright Act, and the rights Plaintiffs seek to control are equivalent to the rights granted to copyright holders under the Act.  17 U.S.C. §§ 102(a), 301(a); Memorandum of Points and Authorities, Section IV(A).

2.     All of Plaintiffs' claims fail because T3Media's conduct in displaying, reproducing, and disseminating photographs involving matters of public interest is protected by the First Amendment.  Memorandum of Points and Authorities, Section IV(B).

3.     Plaintiff's statutory and common law misappropriation claims independently fail because T3Media's conduct in displaying, reproducing, and disseminating the photographs at issue falls within California Civil Code § 3344's express exemption for  the alleged use of an individual's name or likeness in connection with "news, public affairs, or sports broadcast[s] or account[s]."  Memorandum of Points and Authorities, Section IV(C).

4.     Plaintiffs' Third Cause of Action for unfair competition pursuant to California Business & Professions Code § 17200 fails independently because it is duplicative of Plaintiffs' statutory and common law misappropriation claims and fails for the same reasons as those claims, and because it applies only to commercial

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

speech, not to the dissemination of expressive works, like photographs. Memorandum of Points and Authorities, Section IV(C).[2]

This Motion is based on this Notice; on the attached Memorandum of Points and Authorities; on the concurrently-filed Declarations of Ernest M. Weiser with Exhibits A-M and Karen A. Henry with Exhibits N-U; on any other matters of which this Court may take judicial notice; on all pleadings, files and records in this action; and on such argument as may be received by this Court at the hearing on this Motion. This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 16, 2014.  Declaration of Karen A. Henry, ("Henry Decl.") ¶ 2.

---

[2] If the Court finds that any of these claims can proceed, it nonetheless should strike the rest of the FAC.  Shekhter v. Financial Indem. Co., 89 Cal. App. 4th 141, 150 (2001) (motions brought under Section 425.16 may be granted as to some, even if not all, of the claims asserted).  See also Wallace v. McCubbin, 196 Cal. App. 4th 1169, 1209 (2011) ("in response to an anti-SLAPP motion brought as to an entire complaint containing several causes of action, a part of a cause of action could be struck because the plaintiff failed to establish a probability of prevailing as to that particular part.") (citing Taus v. Loftus, 40 Cal. 4th 683, 742-43 (2007)) (original emphasis); Cho v. Chang, 219 Cal. App. 4th 521, 527 (2013) ("[i]t would make little sense if the anti-SLAPP law could be defeated by a pleading … in which several claims are combined into a single cause of action, some alleging protected activity and some not").

SPECIAL MOTON TO STRIKE
DWT 24903792v11 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

For all the reasons stated, defendant T3Media respectfully requests this Court to strike Plaintiffs' First Amended Complaint in its entirety, with prejudice, and further requests this Court to find that T3Media is entitled to recover its attorneys' fees and costs incurred in defending against this meritless lawsuit.[3]

DATED:  October 24, 2014          DAVIS WRIGHT TREMAINE LLP
                                  KELLI L. SAGER
                                  KAREN A. HENRY
                                  DIANA PALACIOS

                                  By: / s / Kelli L. Sager
                                          Kelli L. Sager
                                  Attorneys for Defendant
                                  T3MEDIA, INC. d/b/a PAYA.COM

---

[3] The SLAPP statute mandates that a prevailing party on a SLAPP motion "shall" recover its attorneys' fees and costs.  C.C.P. § 425.16(c).  In addition, California's misappropriation statute, Civil Code § 3344(a), provides that "[t]he prevailing party in an action under this section shall also be entitled to attorney's fees and costs."  If the Court grants this Motion, T3Media will file a noticed motion to recover the fees and costs that it has incurred in defending against Plaintiffs' baseless claims.  See Ketchum v. Moses, 24 Cal. 4th 1122, 1131-1132 (2001).

SPECIAL MOTON TO STRIKE
DWT 24903792v11 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ................................................................... 1

II. STATEMENT OF FACTS ...................................................................... 3

    A. T3Media And Photographs Of NCAA Events. ................................. 3

    B. Plaintiffs' Allegations .................................................................... 4

III. THE SLAPP STATUTE APPLIES TO ALL OF PLAINTIFFS' CLAIMS. .............................................................................................. 5

    A. Plaintiffs' Claims Fall Within The Scope Of The SLAPP Statute. ..... 6

    B. The Photographs And Related Captions Involve Issues Of Public Interest. ........................................................................................ 7

IV. PLAINTIFFS CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON ANY OF THEIR CLAIMS. ......................................... 8

    A. Plaintiffs' Claims Are Preempted By Federal Copyright Law. ........... 9

        1. The Photographs Fall Within The Subject Matter of Copyright. ............................................................................. 9

        2. The Rights Invoked By Plaintiffs Are Equivalent To The Exclusive Rights Under Copyright Law. ......................... 11

    B. Plaintiffs' Claims Are Constitutionally Barred. ............................... 13

        1. Right Of Publicity Claims Are Content-Based Claims That Require Exacting Constitutional Safeguards. ........................................................................ 13

        2. Photographs Are Constitutionally Protected Expressive Works. ................................................................ 18

        3. The Substantial Public Interest In Sports Easily Outweighs Plaintiffs' Limited Publicity Rights. ..................... 19

        4. T3Media's Conduct Does Not Involve Commercial Speech. ................................................................................. 21

    C. Plaintiffs' Claims Independently Fail Because California Law Allows Uses Connected To "News," "Sports" And "Public Affairs." ....................................................................................... 23

    D. Plaintiffs' UCL Claim Independently Fails. ..................................... 24

i

SPECIAL MOTON TO STRIKE
DWT 24903792v11 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

<u>Aalmuhammed v. Lee,</u>
202 F.3d 1227 (9th Cir. 2000) ............................................................. 10

<u>Aldrin v. Topps Co.,</u>
2011 U.S. Dist. LEXIS 110800 (C.D. Cal. Sept. 27, 2011) .............................7, 22

<u>Anderson v. City of Hermosa Beach,</u>
621 F.3d 1051 (9th Cir. 2010) ............................................................. 19

<u>Ann-Margret v. High Soc'y Magazine, Inc.,</u>
498 F. Supp. 401 (S.D.N.Y. 1980) ........................................................ 16

<u>Arkansas Writers' Project v. Ragland,</u>
481 U.S. 221 (1987) ...................................................................... 14

<u>Ashcroft v. ACLU,</u>
535 U.S. 564 (2002) ...................................................................... 14

<u>Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,</u>
805 F.2d 663 (7th Cir. 1986) .............................................................. 12

<u>Barrett v. Rosenthal,</u>
40 Cal. 4th 33 (2006) ..................................................................... 6

<u>Bartnicki v. Vopper,</u>
532 U.S. 514 (2001) ...................................................................... 14

<u>Bery v. City of New York,</u>
97 F.3d 689 (2d Cir. 1996) ............................................................7, 18, 19

<u>Braun v. Chronicle Publ'g,</u>
52 Cal. App. 4th 1036 (1997) .............................................................. 5

<u>Briggs v. Eden Council,</u>
19 Cal. 4th 1106 (1999) ................................................................... 5

<u>Brown v. EMA,</u>
131 S. Ct. 2729 (2001) .................................................................... 14

ii

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Burrow- Giles Lithographic v. Sarony,
    111 U.S. 53 (1884) .................................................................... 10

C.B.C. Distribution v. Major League Baseball Advanced Media,
    505 F.3d 818 (8th Cir. 2007) ..................................................... 21

CBS Interactive v. NFL Players Ass'n,
    259 F.R.D. 398 (D. Minn. 2009) ................................................ 21

Chaplinsky v. New Hampshire,
    315 U.S. 568 (1942) .................................................................. 14

Cher v. Forum Int'l, Ltd.,
    692 F.2d 634 (9th Cir. 1982) ........................................... 15, 16, 25

Comedy III Prods., Inc. v. Gary Saderup, Inc.,
    25 Cal. 4th 387 (2001) .................................................. 15, 17, 18

Computer Xpress v. Jackson,
    93 Cal. App. 4th 993 (2001) ........................................................ 6

Conder v. Home Sav. Of Am.,
    680 F. Supp. 2d 1168 (C.D. Cal. 2010) ....................................... 24

Curtis Publ. v. Butts,
    388 U.S. 130 (1967) (plurality opinion) ........................................ 8

Cusano v. Klein,
    473 Fed. App'x 803 (9th Cir. 2012) ............................................. 10

Daly v. Viacom, Inc.,
    238 F. Supp. 2d 1118 (N.D. Cal. 2002) .................................. 16, 22

Damon v. Ocean Hills Journalism Club,
    85 Cal. App. 4th 468 (2000) ......................................................... 7

Del Madera Props. v. Rhodes & Gardner, Inc.,
    820 F.2d 973 (9th Cir. 1987) ................................................ 11, 13

Dex Media W., Inc. v. City of Seattle,
    696 F.3d 952 (9th Cir. 2012) ...................................................... 22

Dora v. Frontline Video, Inc.,
    15 Cal. App. 4th 536 (1993) ......................................... 16, 21, 23, 24

iii

*Dryer et al. v. NFL,*
    2014 WL 5106738 (D. Minn. October 10, 2014) ..................................... 10, 11, 12

*Eastwood v. Superior Court,*
    149 Cal. App. 3d 409 (1983) .................................................................................. 23

*ETW Corp. v. Jireh Publishing,*
    332 F.3d 915 (6th Cir. 2003) ........................................................................ 18, 19

*Ex parte Thompson,*
    2014 WL 4627231 (Tex. Crim. App. Sept., 17, 2014) ........................................... 18

*Fleet v. CBS,*
    50 Cal. App. 4th 1911 (1996) .................................................................... 9, 10, 12, 13

*Four Navy Seals v. Associated Press,*
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) ..................................................................... 6

*Frazier v. Boomsma,*
    No. CV07-08040, 2007 WL 2808559 (D. Ariz. Sept. 27, 2007) .......................... 14

*Gilbert v. Sykes,*
    147 Cal. App. 4th 13 (2007) ...................................................................................... 6

*Gill v. Hearst Publishing Co.,*
    40 Cal. 2d 224 (1953) .............................................................................................. 20

*Gionfriddo v. Major League Baseball,*
    94 Cal. App. 4th 400 (2001) ..............................................................................*passim*

*Guglielmi v. Spelling-Goldberg Prods.,*
    25 Cal. 3d. 860(1979) ........................................................................................ 16, 22

*Guglielmi v. Spelling-Goldberg Prods.,*
    25 Cal. 3d. 860 (1979). ............................................................................................ 22

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (9th Cir. 2010) .............................................................................*passim*

*Hoffman v. Capital Cities/ABC, Inc.,*
    255 F.3d 1180 (9th Cir. 2001) ................................................................................. 22

*Hupp v. Freedom Communications, Inc.,*
    221 Cal. App. 4th 398 (2013) .................................................................................... 6

iv

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Jackson v. Bank of Hawaii,
    902 F.2d 1385 (9th Cir. 1990) ................................................................ 25

Joseph Burstyn, Inc. v. Wilson,
    343 U.S. 495 (1952) ................................................................................ 22

Jules Jordan Video, Inc. v. 144942 Canada Inc.,
    617 F.3d 1146 (9th Cir. 2010) ........................................................... 10, 11

Kabehie v. Zoland,
    102 Cal. App. 4th 513 (2002) .................................................................. 11

Kaplan v. California,
    413 U.S. 115 (1973) ................................................................................ 18

Kasky v. Nike, Inc.,
    79 Cal. App. 4th 165 (2000) .................................................................... 25

Keimer v. Buena Vista Books, Inc.,
    75 Cal. App. 4th 1220 (1999) .................................................................. 25

Keller v. Electronic Arts,
    724 F.3d 1268 (9th Cir. 2013) ....................................................... 17, 23, 24

Kelly v. Arriba Soft Corp.,
    336 F.3d 811 (9th Cir. Cal. 2003) ............................................................ 19

KNB Enters. v. Matthews,
    78 Cal. App. 4th 362 (2000) .................................................................... 12

Kodadek v. MTV Networks, Inc.,
    152 F.3d 1209 (9th Cir. 1998) ............................................................. 9, 13

Laws v. Sony Music Entertainment,
    448 F.3d 1134 (9th Cir. 2006) ......................................................... 9, 10, 11

M.G. v. Time Warner, Inc.,
    89 Cal. App. 4th 623 (2001) ...................................................................... 7

Matthews v. Wozencraft,
    15 F.3d 432 (5th Cir. 1994) ..................................................................... 17

McGarry v. Univ. of San Diego,
    154 Cal. App. 4th 97 (2007) ...................................................................... 8

v

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Meeropol v. Nizer,
   560 F.2d 1061 (2d Cir. 1977)......................................................................16

Melchior v. New Line Prods., Inc.,
   106 Cal. App. 4th 779 (2003) ..................................................................9, 11

Milo & Gabby, LLC v. Amazon.com,
   – F. Supp. 2d –, 2014 WL 1411849 (W.D. Wash. April 11, 2014)......................10

Mindy's Cosmetics v. Dakar,
   611 F.3d 590 (9th Cir. 2010) ........................................................................5

Montana v. San Jose Mercury News,
   34 Cal. App. 4th 790 (1995) ...........................................................16, 20, 23, 24

Moore v. University of Notre Dame,
   968 F. Supp. 1330 (N.D. Ind. 1997) ...............................................................8

Motown Records v. George A. Hormel & Co.,
   657 F. Supp. 1236 (C.D. Cal. 1987) ..............................................................12

Navellier v. Sletten,
   29 Cal. 4th 82 (2002) ..............................................................................5, 6, 9

NCAA v. Bd. of Regents of the Univ. of Okla.,
   468 U.S. 85 (1984)...................................................................................8, 17

New Kids on the Block v. News America Publ.,
   971 F.2d 302 (9th Cir. 1992) .....................................................................23, 24

New.net, Inc. v. Lavasoft,
   356 F. Supp. 2d 1090 (C.D. Cal. 2004) ..........................................................25

Newsham v. Lockheed Missiles & Space Co.,
   190 F.3d 963 (9th Cir. 1999) ........................................................................5

Nygard v. Uusi-Kerttula,
   159 Cal. App. 4th 1027 (2008) ......................................................................7

Page v. Something Weird Video,
   960 F. Supp. 1438 (1996) ...........................................................................23

Peckarsky v. ABC,
   603 F. Supp. 688 (D.D.C. 1984)....................................................................9

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

People v. Chen,
    860 N.Y.S. 2d 845 (N.Y. Crim. Ct. Mar. 26, 2008) ............................................. 19

People v. Fogelson,
    21 Cal. 3d 158 (1978) ........................................................................................... 23

R.A.V. v. City of St. Paul,
    505 U.S. 377 (1992) .............................................................................................. 14

RAR, Inc. v. Turner Diesel Ltd.,
    107 F.3d 1272 (7th Cir. 1997) .............................................................................. 17

Ray v. ESPN,
    2014 WL 2766187 (W.D. Mo. April 8, 2014) ..................................................... 12

Reno v. ACLU,
    521 U.S. 844 (1997) ................................................................................................ 6

Rezec v. Sony Pictures Ent., Inc.,
    116 Cal. App. 4th 135 (2004) ............................................................................... 25

Robertson v. Rodriguez,
    36 Cal. App. 4th 347 (1995) ................................................................................... 8

Rogers v. Grimaldi,
    875 F.2d 994 (2d Cir. 1989) ................................................................................. 17

Rosemont Enterprises, Inc. v. McGraw-Hill Book Co.,
    85 Misc. 2d 583, 380 N.Y.S.2d 839 (N.Y. Sup. 1975) ........................................ 17

Ruffin-Steinback v. dePasse,
    82 F. Supp. 2d 723 (E.D. Mich. 2000) ................................................................. 16

Sable Comm'ns of Calif., Inc. v. FCC,
    492 U.S. 115 (1989) .............................................................................................. 14

Sarl Louis Feraud Int'l v. Viewfinder,
    406 F.Supp.2d 274 (S.D.N.Y. 2005), vacated on other grounds, 489
    F.3d 474 (2d Cir. 2007) ........................................................................................ 18

Seale v. Gramercy Pictures,
    949 F. Supp. 331 (E.D. Pa. 1996) ......................................................................... 17

Seelig v. Infinity Broad.,
    97 Cal. App. 4th 798 (2002) ................................................................................... 7

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Selby v. New Line Cinema,
   96 F. Supp. 2d 1053 (C.D. Cal. 2000) ................................................................ 11

Silva v. Sunich,
   2006 WL 6116645 (C.D. Cal. 2006) .................................................................. 13

Simmons v. Allstate,
   92 Cal. App. 4th 1068 (2001) ............................................................................. 8

Somerson v. McMahon,
   956 F. Supp. 2d 1345 (N.D. Ga. 2012) ........................................................ 12, 20

Stewart v. Rolling Stone LLC,
   181 Cal. App. 4th 664 (2010) ............................................................................ 16

Stromback v. New Line Cinema,
   384 F.3d 283 (6th Cir. 2004) ............................................................................ 11

Stutzman v. Armstrong,
   No. 2:13–CV–00116, 2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) .................. 25

United States v. Alvarez,
   132 S. Ct. 2537 (2012) ...................................................................................... 14

United States v. Stevens,
   559 U.S. 460 (2010) .......................................................................................... 14

Wages v. I.R.S.,
   915 F.2d 1230 (9th Cir. 1990) .......................................................................... 25

White v. City of Sparks,
   500 F.3d 953 (9th Cir. 2007) .......................................................................... 7, 18

White v. Samsun Elecs. America, Inc.,
   989 F. 2d 1512 (9th Cir. 1993) (Kozinski, J. dissenting) ................................... 15

William O'Neil & Co. v. Validea.com, Inc.,
   202 F. Supp. 2d 1113 (C.D. Cal. 2002) ............................................................. 25

Winter v. DC Comics,
   30 Cal. 4th 881 (2003) ................................................................................. 15, 17

Xerox v. Apple Computer,
   734 F. Supp. 1542 (N.D. Cal. 1990) ................................................................. 12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

<u>Zacchini v. Scripps-Howard Broadcasting</u>,
    433 U.S. 562 (1977) ..................................................................... 17, 18

**Statutes**

17 U.S.C.
    § 102(a) ........................................................................................ 9
    § 301(a) ........................................................................................ 9
    § 503(b) ...................................................................................... 13

California Business & Proffesions Code § 17200 .......................... 2, 3, 24, 25

California Civil Code
    § 3344(d) ..................................................................................... 2
    § 3344(d) ................................................................... 15, 23, 24

California Code of Civil Procedure
    § 425.16 .................................................................................... 2, 5
    § 425.16(a) ................................................................................. 5
    § 425.16(b) ................................................................................ 2
    § 425.16(b)(1) ..................................................................... 5, 6, 8
    § 425.16(e) ................................................................................ 5
    § 425.16(e)(3) .................................................................... 6, 8
    § 425.16(e)(4) .................................................................. 6, 7, 8

**Constitutional Provisions**

United States Constitution, First Amendment ....................................... *passim*

**Other Authorities**

E. Volokh, <u>Freedom of Speech and the Right of Publicity</u>, 40 Hous. L.
    Rev. 903, 912 n. 35 (2003) ...................................................... 14

H.R. Rep. No. 94-1476 at 30 ......................................................... 9

1 J. Thomas McCarthy, <u>The Rights of Publicity and Privacy</u> (2d ed.
    2000)
        ........................................................................... 15, 16, 17

Press Release, Assem. John Vasconcellos, "Deceptive Advertising and
    Contests" (Mar. 8, 1971) (on file in Cal. State Archives, 1971 reg.
    sess., Assem. B. 826, Author's File) .................................. 15

SPECIAL MOTON TO STRIKE
DWT 24903792v11 0101261-000001

ix

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

<u>Restatement (Third) of Unfair Competition</u>, § 46 ...................................................... 17

Senate Bill 613 ............................................................................................................ 15

SPECIAL MOTON TO STRIKE
DWT 24903792v11 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# I.    SUMMARY OF ARGUMENT

Plaintiffs are former members of the Catholic University basketball team that won the NCAA national championship for its division in 2001.  They now seek to control the dissemination of photographs depicting scenes from that championship game – even though they do not own the copyrights to those photos – based on an incredibly expansive interpretation of state right-of-publicity law.  The premise for Plaintiffs' claims is that photographs of individuals participating in events of significant public interest may not be licensed or sold without that individual's consent.[4]  Based on this faulty premise, under which both copyright law and the First Amendment are trumped by individual rights of publicity, Plaintiffs claim T3Media violated their statutory and common law publicity rights by displaying and licensing copyrights for digital photographs of NCAA events.

The implications of permitting this kind of claim are staggering.  This is not a case involving the use of an individual's name or likeness on merchandise, or in an advertisement for a commercial product.  Stripped of hyperbole and inflammatory anti-NCAA rhetoric, what Plaintiffs seek is an effective monopoly on any use of photographs depicting them during NCAA championship games.  But taken to its logical conclusion, Plaintiffs' theory also would bar professional photographers from selling or licensing the rights to any copyrighted photograph that depicts an identifiable person – whether it shows an athlete participating in a national sporting event, a flood victim clinging to the roof of his house, or a political candidate caught in an embarrassing gaffe.  The ability of the public to view and access photographs depicting matters of public importance – and the ability of photojournalists to report on such matters – effectively would be stymied.

Fortunately, California law provides a mechanism for dealing with meritless

---

[4] If this case were to proceed, T3Media would demonstrate that Plaintiffs and other members of the purported "class" impliedly and/or expressly consented to the taking and dissemination of photographs of them participating in NCAA events.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

claims that target expressive conduct.  Under C.C.P. § 425.16 (the "SLAPP" statute), claims arising from conduct in furtherance of the exercise of free speech about matters of public interest are subject to immediate dismissal.  Because T3Media's conduct in displaying, reproducing, and distributing expressive works plainly is in furtherance of free-speech rights, and the subject matter of the photographs is of considerable public interest, the SLAPP statute applies here.  See Section IV, infra.  Thus, the burden shifts to Plaintiffs to establish a "probability" of prevailing on the merits of their claims.  C.C.P. § 425.16(b).  They cannot satisfy their burden.

First, as a threshold matter, all of Plaintiffs' claims are preempted by federal copyright law because the works at issue – photographs – fall within the subject matter of copyright, and each of Plaintiffs' claims arises from acts equivalent to the exclusive rights granted under the Copyright Act – namely, the display, reproduction, and distribution of copyrighted works.  See Section IV(A), infra.

Second, all of Plaintiffs' claims independently fail because T3Media's conduct in displaying, reproducing, and disseminating photographs involving matters of public interest is constitutionally protected.  It is well established that individuals may not control speech through the artifice of a right-of-publicity claim; courts in California and elsewhere consistently have applied these First Amendment principles in rejecting attempts by athletes to control the dissemination of information (including photographs) about their athletic endeavors.  See Section IV(B), infra.

Third, Plaintiffs' misappropriation claims fail because the California Legislature expressly enacted an exemption that precludes any misappropriation claims arising from the use of individuals' names, likenesses, or other aspects of their "personas" in connection with news, "public affairs," or sports accounts.  Cal. Civ. Code § 3344(d).  Photographs that visually chronicle NCAA competitions clearly fall within this exemption.  Section IV(C), infra.

Finally, Plaintiffs' unfair competition claim (Cal. Bus. & Prof. Code §17200) duplicates their misappropriation claims, and fails for the same reasons as those

claims; additionally, Section 17200 only applies to "commercial speech," and T3Media's conduct in displaying, reproducing, and licensing expressive works is not "commercial speech." See Section IV(D), infra. Thus, Plaintiffs' lawsuit should be stricken, and T3Media should be awarded its fees and costs incurred in its defense.

## II.    STATEMENT OF FACTS

**A.    T3Media And Photographs Of NCAA Events.**

T3Media provides digital hosting and licensing services for a wide variety of content, including news coverage, motion pictures, and photographs and footage of sports events, among other things. Declaration of Ernest M. Weiser ("Weiser Decl.") ¶ 3. Through agreements with the copyright owners, T3Media displays and licenses copyrighted works to third parties, using an online distribution network. Upon request, T3Media also assists licensees who are interested in obtaining additional rights to use the licensed content. Id. ¶ 9.

In or about January 2012, T3Media entered into an agreement with the NCAA to store, host, and license a collection of photographs for which the NCAA owns or controls the copyright (the "NCAA Photo Library"). Id. ¶ 5. The collection includes thousands of photographs that visually chronicle more than 70 years of NCAA sports history, focusing on championship games involving almost two dozen sports. Id. A handful of photographs in the Library depict Plaintiffs and others during the 2001 Championship, including a photograph of the winning team. Id. ¶ 10; Ex. E.

From approximately January 1, 2013 to August 1, 2014, T3Media operated a website, Paya.com, through which members of the public could view photographs in the NCAA Photo Library and obtain non-exclusive copyright licenses that permitted them to download a copy of a photograph for their own personal use. Id. ¶ 6. To illustrate the content of the Library, Paya.com displayed digital samples of the photographs, along with brief descriptions of the events depicted in the photographs. Id.; see also Ex. J. The Paya.com site only provided limited, non-exclusive copyright

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

licenses for the photographs in the NCAA Photo Library.[5]  Prospective licensees interested in using photographs for any other use – including advertising – had to obtain any necessary rights from the individuals depicted.  See Ex. D § 8.  Upon request, a separate division of T3Media assisted prospective licensees in obtaining these additional rights, or the licensee could do so itself.  Id. ¶ 9.

**B.     Plaintiffs' Allegations.**

Plaintiffs are former college athletes who played on the Men's Basketball Team at Catholic University in 2001.  FAC ¶¶ 6-7.  The FAC references two photographs that were displayed and made available for copyright licensing through the Paya.com site:  one photograph captured a moment during the Championship when guard Horace Jenkins of William Paterson University drove past Plaintiff Maloney; the other photograph depicted the Catholic University team posing with their championship trophy after the Championship game.  See FAC ¶ 73 (Figures III and IV).  All of the photographs depicting the 2001 Championship game – including the photographs depicting Plaintiffs – are included in the NCAA Photo Library, and the NCAA owns or controls the copyright in those photographs.  Weiser Decl., ¶ 5; Ex. B.  The only allegation made by Plaintiffs with respect to the photographs of them is that T3Media displayed and "sold" the photographs (more accurately described as selling a license for limited purposes).

Plaintiffs also purport to represent a class consisting of "[a]ny current or former NCAA student-athlete who appears in a photograph that is or was publically available on Paya.com or whose name is or was used on Paya.com."  FAC, ¶ 94.

---

[5]  Although the FAC refers repeatedly to the "sale" of photographs depicting college athletes (e.g., FAC ¶ 4, 31, 44, 77), the conduct at issue is T3Media's display, reproduction, and licensing of copyrights for photographs through the Paya.com website for the end user's personal use.  The terms and conditions of the licenses were set forth in an agreement that made clear that only a limited non-exclusive copyright license was being purchased; it did not grant "any right or license to use the name or likeness of any individual (including any athlete, announcer, or coach) appearing in the Content in connection with or as an express or implied endorsement of any product or service."  Weiser Decl., ¶ 8; Ex. D § 3.7.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### III.    THE SLAPP STATUTE APPLIES TO ALL OF PLAINTIFFS' CLAIMS.

In 1992, the California Legislature enacted Code of Civil Procedure § 425.16 "to nip SLAPP litigation in the bud[,]" by quickly disposing of meritless claims that target the exercise of free-speech rights.  Braun v. Chronicle Publ'g, 52 Cal. App. 4th 1036, 1042 (1997).  Under the statute, any "cause of action against a person arising from any act … in furtherance of the person's right of … free speech … in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  C.C.P. § 425.16(b)(1).[6]  Reacting to court rulings that interpreted the statute too narrowly, the Legislature amended the statute in 1997 to ensure that it "shall be construed broadly."  C.C.P. § 425.16(a); Briggs v. Eden Council, 19 Cal. 4th 1106, 1120-1121 (1999).  In evaluating whether the conduct giving rise to a claim involves the exercise of free speech, the Ninth Circuit noted that under California law, "[i]t seems to suffice … that the defendant's activity is communicative[.]"  Hilton v. Hallmark Cards, 599 F.3d 894, 903- 904 (9th Cir. 2010).  Thus, to meet its initial burden under Section 425.16, a defendant only needs to show that the plaintiff's claims arise from the defendant's "communicative" or speech activity, or from acts in furtherance of that activity.

The statute sets forth a "two-step process" for determining whether a claim must be stricken under Section 425.16.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity."  Navellier v. Sletten, 29 Cal. 4th 82, 88 (2002); Mindy's Cosmetics v. Dakar, 611 F.3d 590, 595 (9th Cir. 2010).  To make this showing, the defendant must demonstrate that the alleged conduct "underlying the plaintiff's cause [of action] fits one of the categories spelled out … in section 425.16, subdivision (e)."  Navallier, 29 Cal. 4th at 88.  Those categories include:

---

[6] The Ninth Circuit has held that the SLAPP statute applies in federal court. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 973 (9th Cir. 1999).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

> (3) any written or oral statement or writing made in … a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right... of free speech in connection with a public issue or an issue of public interest.

C.C.P. § 425.16(e)(3)-(4).

Second, if the claim arises from protected conduct, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." <u>Navellier</u>, 29 Cal. 4th at 88.  Where, as here, Plaintiffs cannot meet this burden, the claim must be stricken.  <u>Id.</u>; C.C.P. § 425.16(b)(1).

**A.     Plaintiffs' Claims Fall Within The Scope Of The SLAPP Statute.**

Plaintiffs' claims arise solely from T3Media's display, reproduction, and licensing of copyrighted photographs depicting NCAA student-athletes participating in championship games, and editorial captions for each photograph describing its content.  <u>E.g.</u>, FAC ¶¶ 103, 107, 111.  This conduct easily falls within the protections of C.C.P. §§ 425.16(e)(3) and (e)(4).

<u>First</u>, T3Media's display of photographs and editorial captions on its websites falls under Section 425.16(e)(3)'s protection for publications made in a public forum in connection with a matter of public interest.  As the United States Supreme Court has recognized, websites are public fora because they "provide[] relatively unlimited, low-cost capacity for communications of all kinds."  <u>Reno v. ACLU</u>, 521 U.S. 844, 870 (1997).  <u>See also Four Navy Seals v. Associated Press</u>, 413 F. Supp. 2d 1136, 1146 (S.D. Cal. 2005) (photographs and an article posted on a website fell within subsection (e)(3)); <u>Computer Xpress v. Jackson</u>, 93 Cal. App. 4th 993, 1006-1007 (2001) (defendant's website was a "public forum" under statute).[7]

<u>Second</u>, Plaintiffs' claims fall under (e)(4), which applies to "conduct in furtherance of the exercise of the … constitutional right of free speech in connection

---

[7] <u>See also Barrett v. Rosenthal</u>, 40 Cal. 4th 33, 41 n.4 (2006) ("[w]eb sites accessible to the public … are 'public forums' for purposes of the anti-SLAPP statute"); <u>Hupp v. Freedom Communications, Inc.</u>, 221 Cal. App. 4th 398, 404 (2013) (same); <u>Gilbert v. Sykes</u>, 147 Cal. App. 4th 13, 23 (2007) (same).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

with a public issue or an issue of public interest." The types of conduct that fall within this part of the statute are expansive. See, e.g., Hilton, 599 F.3d at 904 (greeting card depicting photograph of Paris Hilton's head with cartoon character body on a greeting card fell within subsection (e)(4)); Aldrin v. Topps Co., 2011 U.S. Dist. LEXIS 110800, *7-8 (C.D. Cal. Sept. 27, 2011) (use of a photograph on a trading card was an act in furtherance of free speech); M.G. v. Time Warner, Inc., 89 Cal. App. 4th 623, 629 (2001) (using a photograph to illustrate an article in a magazine and a television report was an act in furtherance of free speech).

T3Media's conduct in displaying and licensing photographs and describing them on its website falls easily within the scope of Section 425.16(e)(4). See, e.g., White v. City of Sparks, 500 F.3d 953 (9th Cir. 2007) (dissemination of visual works is expression that is constitutionally protected) (quoting Bery v. City of New York, 97 F.3d 689, 696 (2d Cir. 1996)) ("photographs … always communicate some idea or concept to those who view [them], and as such are entitled to full First Amendment protection"). T3Media's website also facilitates other protected uses, such as editorial uses, and thereby engages in additional conduct "in furtherance of" free speech. M.G., 89 Cal. App. 4th at 629.

**B.**    **The Photographs And Related Captions Involve Issues Of Public Interest.**

As the court explained in Nygard v. Uusi-Kerttula, 159 Cal. App. 4th 1027, 1043 (2008), an issue of public interest "is any issue in which the public is interested." (Emphasis added.) "In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." Id.[8] The Ninth Circuit has held that courts "must construe … 'issue of public interest' … broadly" to include any "topic of widespread, public interest" or

---

[8] See also Seelig v. Infinity Broad., 97 Cal. App. 4th 798, 807 (2002) (radio show host's criticism of reality show contestant involved matter of public interest); Damon v. Ocean Hills Journalism Club, 85 Cal. App. 4th 468, 481 (2000) (public interest "include[s] … private conduct that impacts a broad segment of society.")

"person … in the public eye."  <u>Hilton</u>, 599 F.3d at 906-907.  Thus, the Court held that a greeting card depicting Paris Hilton met the standard.  <u>Id.</u>

The photographs and editorial captions at issue, which depict moments in NCAA sports history, easily fall within the broad definition of "public interest" under Sections 425.16(e)(3) and 425.16(e)(4).  Collegiate sports undeniably are topics of widespread public interest.  <u>See</u>, <u>e.g.</u>, <u>Curtis Publ. v. Butts</u>, 388 U.S. 130, 154-155 (1967) (plurality opinion) (finding public interest in an article concerning college football and players); <u>McGarry v. Univ. of San Diego</u>, 154 Cal. App. 4th 97, 110 (2007) (in SLAPP context, holding college football coach was a public figure and his firing was "a topic of widespread public interest").  This is especially true for championship games, where teams compete on a national stage.[9]  <u>See</u> <u>also</u> cases cited in Section IV(B)(3), <u>supra</u>.[10]  Thus, Plaintiffs' claims arising from T3Media's dissemination of the photographs and captions fall under the SLAPP statute.

## IV.   PLAINTIFFS CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON ANY OF THEIR CLAIMS.

Because T3Media has met its initial burden, the burden shifts to Plaintiffs to establish a probability of prevailing on each of their claims.  C.C.P. § 425.16(b)(1).  They must "'state and substantiate a legally sufficient claim,'" <u>Hilton</u>, 599 F.3d at 908 (citations omitted), and "meet [T3Media's] constitutional defenses."  <u>Robertson v. Rodriguez</u>, 36 Cal. App. 4th 347, 359 (1995).  This "requires an evidentiary showing[,]" "like a summary judgment motion."  <u>Simmons v. Allstate</u>, 92 Cal. App.

---

[9] Catholic University's national championship was the subject of extensive news reports, including in 2011, when the University celebrated the 10th anniversary of the "greatest achievement in Catholic University sports history."  Exs. P-U.

[10] <u>See also</u> <u>NCAA v. Bd. of Regents of the Univ. of Okla.</u>, 468 U.S. 85, 117 (1984) (discussing "public interest in intercollegiate athletics"); <u>Moore v. University of Notre Dame</u>, 968 F. Supp. 1330, 1337 (N.D. Ind. 1997) ("football, … is a matter of public interest").  National broadcasts, extensive newspaper and magazine coverage, and even entire books published about college sports make clear that it is a subject of enormous public interest.  <u>See</u>, <u>e.g.</u>, Declaration of Karen A. Henry, ("Henry Decl."),¶¶ 4-5; Exs. N-O.  <u>See</u> <u>also</u> FAC ¶ 72.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

4th 1068, 1073 (2001).  See also Hilton, 580 F.3d at 902 ("anti-SLAPP inquiry … is similar to the one courts make on summary judgment, though not identical"); Navellier, 106 Cal. App. 4th at 773 (the plaintiff's "burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment").  Plaintiffs cannot meet this burden.

**A.    Plaintiffs' Claims Are Preempted By Federal Copyright Law.**

The Copyright Act expressly preempts all state law claims that are "equivalent to" rights under copyright law.  17 U.S.C. § 301(a).  By enacting Section 301, Congress intended "to preempt and abolish any rights under the common law or statutes of a state that are equivalent to copyright and that extend to works coming within the scope of the Federal copyright law."  H.R. Rep. No. 94-1476 at 30.  This "broad statutory preemption scheme" promotes uniformity and ensures that the free flow of ideas is not inhibited.  Peckarsky v. ABC, 603 F. Supp. 688, 695 (D.D.C. 1984).  The Ninth Circuit uses a two-part test to determine when Section 301(a) preempts a state law claim.  First, the work at issue must fall within the "subject matter" of the Copyright Act, as a work of authorship that is "fixed in a tangible medium of expression."  Second, the court examines whether the claims are "equivalent" to a copyright owner's exclusive rights to use or to authorize the use, reproduction, or distribution of the work.  Fleet v. CBS, 50 Cal. App. 4th 1911, 1919 (1996); Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998).[11] Where, as here, both tests are met, the claims must be dismissed.  Id.

**1.    The Photographs Fall Within The Subject Matter of Copyright.**

The subject matter of copyright extends protection to "original works of authorship fixed in any tangible medium of expression…." 17 U.S.C. § 102(a). Plaintiffs allege that T3Media violated their rights of publicity and engaged in unfair competition by displaying and licensing photographs depicting them, with descriptive

---

[11] Accord Laws v. Sony Music Entertainment, 448 F.3d 1134, 1137-38 (9th Cir. 2006); Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 791 (2003).

9

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

captions containing their names.  FAC ¶¶ 103, 107.

Photographs are fixed in a tangible medium of expression, and are pictorial works that are within the subject matter of copyright.  See Milo & Gabby, LLC v. Amazon.com, – F. Supp. 2d –, 2014 WL 1411849, *5 (W.D. Wash. April 11, 2014). See also Jules Jordan Video, Inc. v. 144942 Canada Inc., 617 F.3d 1146, 1154-1155 (9th Cir. 2010) (performances fixed in video were within subject matter of copyright); Fleet, 50 Cal. App. 4th at 1919-20 (once performances were fixed on film, they fell within subject matter of copyright); Dryer et al. v. NFL, 2014 WL 5106738, *16 (D. Minn. October 10, 2014) (football players' misappropriation suit based on use of video of them playing in games was within subject matter of copyright law); Cusano v. Klein, 473 Fed. App'x 803, 804 (9th Cir. 2012) (publicity claims based on depictions of musical performances preempted because plaintiff sought to control use of copyrightable work).  The copyrights are owned by the photographer or his licensee, not the subject.  Burrow- Giles Lithographic v. Sarony, 111 U.S. 53, 60 (1884) (posed photograph of Oscar Wilde was original work of authorship protected by copyright); Aalmuhammed v. Lee, 202 F.3d 1227, 1232-34 (9th Cir. 2000).

Courts evaluating right of publicity claims that arise from copyrighted works repeatedly have held that the first prong of the preemption analysis is satisfied, despite a plaintiff's assertion that the claim is about his or her "persona," rather than about a copyrighted work.  For example, in Laws, the court rejected plaintiff's argument that her claim involved duplication of her "voice" and "vocal performance" rather than a copyrighted work.  The court held that the defendant was not exploiting Laws' voice, only the copyrighted recording of that voice, which was plainly an original, fixed, work of authorship, within the subject matter of copyright.  Laws, 448 F.3d at 1142-43. Similarly, in Jules Jordan Video, the court applied the same principles in coming to the "obvious conclusion" that an actor's claim regarding duplication of his "dramatic performance," once fixed in videos, was within the subject matter of copyright.  617 F.3d at 1153.  See also Dryer at 32-33 (finding claims preempted).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, the subject matter of Plaintiffs' claims are images <u>fixed</u> in each of the photographs in which they appear; thus, the claims are within the subject matter of copyright.[12]  Because Plaintiffs' claims arise from T3Media's display and licensing of copyrighted photographs, they fall within the subject matter of copyright.

**2. The Rights Invoked By Plaintiffs Are Equivalent To The Exclusive Rights Under Copyright Law.**

Section 106 of the Copyright Act affords copyright holders certain exclusive rights, including the rights to (1) display their works to the public; (2) reproduce their works; and (3) distribute copies of their works by sale or other transfer.  It is T3Media's exercise of those rights – displaying photographs from the NCAA Photo Library on its website, and reproducing/distributing the photographs by licensing the rights – that Plaintiffs contend violates their right of publicity.  Because the rights they seek to control are equivalent to copyright rights, Plaintiffs' claims satisfy the second part of the preemption test.  <u>Jules Jordan Video</u>, 617 F.3d at 1155; <u>Laws</u>, 448 F.3d at 1144.  <u>See</u> <u>also</u> <u>Del Madera Props. v. Rhodes & Gardner, Inc.</u>, 820 F.2d 973, 976-77 (9th Cir. 1987) (to survive preemption, claim "must protect  rights which are qualitatively different from … copyright rights").[13]

The recent decision in the <u>Dryer</u> case illustrates this principle.  There, former NFL football players sued for misappropriation based on the use of clips depicting them playing in NFL games, which were later used in NFL Film productions.  The district court relied on two other recent decisions involving claims by athletes about

---

[12] Cases involving the use of a photograph in an advertisement, or in connection with an unrelated product, are distinguishable from the circumstances here.  <u>See</u>, <u>e.g.</u>, <u>Laws</u>, 448 F.3d at 1141-1142.

[13] Where the only conduct by the copyright holder is the exercise of rights afforded it under copyright law, state law claims are preempted.  <u>See</u>, <u>e.g.</u>, <u>Selby v. New Line Cinema</u>, 96 F. Supp. 2d 1053, 1062 (C.D. Cal. 2000) (breach of implied contract claim based on ideas embodied within a screenplay preempted); <u>Melchoir</u>, 106 Cal. App. 4th at 792 (conversion and unjust enrichment claims preempted); <u>Stromback v. New Line Cinema</u>, 384 F.3d 283, 306-07 (6th Cir. 2004) (interference claim preempted); <u>Kabehie v. Zoland</u>, 102 Cal. App. 4th 513, 520 (2002) (same).

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the use of footage and photographs from prior competitions, holding that claims based on those works were preempted: "a claim for a violation of the right to publicity against a copyrighted work will lie only if that work is used for advertising, not in an expressive work." Dryer, 2014 WL 5106738, at *17 (emphasis added).

Likewise, in Somerson v. McMahon, 956 F. Supp. 2d 1345, 1355 (N.D. Ga. 2012), the federal court held that wrestler Douglas Duane Somerson's right of publicity claims were preempted because they were based on conduct equivalent to the exclusive rights granted under the Copyright Act. The WWE had reproduced video recordings depicting Somerson's wrestling matches, prepared derivative works based on those video recordings, and distributed copies of the video recordings to the public on websites. See id. at 1355.[14] Like the claims in Dryer, Ray, and Somerson, Plaintiffs' claims are equivalent to the rights in Section 106, and are preempted.

Courts also have found that UCL claims involving the alleged misuse of copyrighted works generally are preempted. For example, in Xerox v. Apple Computer, 734 F. Supp. 1542, 1550 (N.D. Cal. 1990), Xerox claimed that Apple's registration of copyrights in certain programs that Xerox allegedly had created was an unfair business practice under the UCL. But the court found that any purported confusion about the source or ownership of the programs was functionally indistinguishable from Xerox's claim that Apple violated its rights under the Copyright Act; thus, the state-law claim was preempted. See also Motown Records v. George A. Hormel & Co., 657 F. Supp. 1236, 1239-1241 (C.D. Cal. 1987) (court

---

[14] See also Ray v. ESPN, 2014 WL 2766187, *5 (W.D. Mo. April 8, 2014) (right of publicity claims of wrestler Steve "Wild Thing" Ray were preempted because they arose from ESPN's telecast of previously recorded wrestling matches); Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 666, 677 (7th Cir. 1986) (baseball players' claim that broadcasts of baseball games violated their publicity rights was preempted); KNB Enters. v. Matthews, 78 Cal. App. 4th 362, 372 (2000) ("[a]s between the exclusive copyright holder and any actor, performer, model, or person who appears in the copyrighted work, the latter may not preclude the former from exercising the rights afforded under the exclusive copyright by claiming a violation of the right of publicity"); Fleet, 50 Cal. App. 4th at 1920 (actors' right of publicity claim based on exploitation of copyrighted film preempted).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

dismissed false advertising and unfair competition claims arising from defendant's use in a commercial of a parodic version of the plaintiff's well-known song "Baby Love"; Court held claims preempted because there was no qualitative difference between the claims and the exclusive rights conferred under the Copyright Act); Kodakek, 152 F.3d at 1212-1213 (unfair competition claim preempted); Del Madera, 820 F.2d at 977 (same); Silva v. Sunich, 2006 WL 6116645 (C.D. Cal. 2006) (same).

Plaintiffs' UCL claim derives from the same premise as their right-of-publicity claims – that T3Media violated their rights by displaying and distributing copyrighted photographs, and licensing the copyrights. FAC ¶ 111. Because the gravamen of the claim is synonymous with the exclusive rights to use and to authorize use of creative work – rights equivalent to those of copyright owners under § 106 – the UCL claim is preempted and also must be dismissed.[15]

**B.   Plaintiffs' Claims Are Constitutionally Barred.**

Claims based on the content of a First Amendment-protected work, like the photographs at issue here, are subject to the highest level of constitutional scrutiny. Courts consistently have held that First Amendment rights must take precedence over publicity rights in cases involving the publication of information about matters of public interest, absent extraordinary circumstances that are not present here.

### 1.   Right Of Publicity Claims Are Content-Based Claims That Require Exacting Constitutional Safeguards.

As a matter of federal constitutional law, content-based regulations of speech are presumptively invalid and subject to strict constitutional scrutiny. See, e.g.,

---

[15] The remedies sought by Plaintiffs further demonstrate preemption: they include an injunction to prevent any future "use of the names, images, or likenesses of Plaintiffs and class members" in connection with the photographs and copyright licenses, and seek "seizure and destruction of all copies of any images in the possession, custody, or control" of T3Media that "infringe upon" Plaintiffs' rights of publicity. These are copyright remedies. See 17 U.S.C. §503(b); see also Fleet, 50 Cal. App. 4th at 1919 (where plaintiff's misappropriation claims sought "to prevent CBS from reproducing and distributing their performances in the film, their claims must be preempted by federal copyright law").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992); accord Ashcroft v. ACLU, 535 U.S. 564, 573 (2002); Sable Comm'ns of Calif., Inc. v. FCC, 492 U.S. 115, 126 (1989) (content-based speech restrictions must be narrowly drawn to serve a compelling government interest).  The Supreme Court repeatedly has re-affirmed the presumptive protection against content-based restrictions on speech, refusing to expand the few limited exceptions even where significant public interests are at stake.  See United States v. Alvarez, 132 S. Ct. 2537, 2547 (2012) (false speech about medal of honor); United States v. Stevens, 559 U.S. 460, 482 (2010) (depictions of animal cruelty); Brown v. EMA, 131 S. Ct. 2729, 2741 (2001) (violent videogames).[16]

Right of publicity claims that target expressive works clearly fall within this category of content-based restrictions on speech.  As the Supreme Court has explained, a regulation is content-based when it cannot be "justified without reference to the content of the speech," Bartnicki v. Vopper, 532 U.S. 514, 526 (2001), or where "authorities must necessarily examine the content" of the publication to determine whether it is subject to the regulation, Arkansas Writers' Project v. Ragland, 481 U.S. 221, 230 (1987).  A right of publicity claim requires a court to examine the content of an expressive work – the gist of the claim is that a defendant's work incorporates the plaintiff's name or likeness without permission.  As one legal scholar observed, "[t]he right of publicity is clearly content-based:  It prohibits the unlicensed use of particular content (people's name or likenesses)."  E. Volokh, Freedom of Speech and the Right of Publicity, 40 Hous. L. Rev. 903, 912 n.35 (2003).  See also Frazier v. Boomsma, No. CV07-08040, 2007 WL 2808559 at *15 (D. Ariz. Sept. 27, 2007) (same).

---

[16] The Court has recognized a few historic categories of expression that it has deemed to be "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."  Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942).  These categories include obscenity, defamation, fraud, fighting words, and true threats.  But the Court has held that no new categories of speech can be deemed exempt "from the normal prohibition on content-based restrictions" absent "persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription."  Alvarez, 1332 S. Ct. at 2547.  See also EMA, 131 S. Ct. at 2734.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Moreover, right of publicity claims are not of constitutional dimension; they arise either by statute or under the common law. "[E]ssentially [it is] an economic right … to prevent others from misappropriating the economic value generated by the celebrity's fame through the merchandising of the 'name, voice, signature, photograph, or likeness' of the celebrity." Comedy III Prods., Inc. v. Gary Saderup, Inc., 25 Cal. 4th 387, 403 (2001) (citations omitted). As a "relatively raw and brash newcomer" in American jurisprudence,[17] the right of publicity is not exempt from the normal prohibition on content-based restrictions. Indeed, courts long have cautioned that "[t]he right of publicity has a potential for frustrating" constitutionally protected speech. Comedy III, 25 Cal. 4th at 397. To prevent the right of publicity from "overprotecting" the value of a celebrity's image[18] – and concomitantly devaluing and burdening expression – courts must "subject[] the 'right of publicity' under California law to a narrowing interpretation which accords with First Amendment values." Cher v. Forum Int'l, Ltd., 692 F.2d 634, 638 (9th Cir. 1982); see also Winter v. DC Comics, 30 Cal. 4th 881, 888 (2003).[19]

---

[17] 1 J. Thomas McCarthy, The Rights of Publicity and Privacy (2d ed. 2000). Right of publicity claims were generally not recognized until the 1950s, and even then, the claims focused on the use of individuals' names and likenesses in connection with advertisements for commercial products. Id. § 4:44.

[18] See also White v. Samsun Elecs. America, Inc., 989 F. 2d 1512, 1514 (9th Cir. 1993) (Kozinski, J. dissenting).

[19] The legislative history of Section 3344 makes clear that it was intended to address manufacturers' and retailers' practices of hawking goods and services by deceptively suggesting a celebrity endorsement. See S. Comm. on Judiciary, Analysis of "AB 826 (Vasconcellos) as amended October 20," at 3 (Oct. 20, 1971) (on file in Cal. State Archives, 1971 reg. sess., Assem. B. 826, S. Comm. on Judiciary File). The bill's author repeatedly explained that it "was prompted by abuse of the unsolicited use of a person's name in a magazine promotional mailing," and was part of a legislative package intended "to halt certain deceptive, mass-mailing advertising practices." Letter from Christine Minnehan, Senior Assistant to Assem. John Vasconcellos, to Don D. Sessions (on file in Cal. State Archives, 1971 reg. sess., Assem. B. 826, Author's File); Press Release, Assem. John Vasconcellos, "Deceptive Advertising and Contests" (Mar. 8, 1971) (on file in Cal. State Archives, 1971 reg. sess., Assem. B. 826, Author's File). Senator William Campbell, who introduced Senate Bill 613 to make the right of publicity under Section 3344 descendible, similarly emphasized that "the primary focus of the right of publicity is commercial use of names and likenesses, not freedom of expression." Sen. William Campbell,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

> If the law mandated that the permission of every living person … must be
> obtained to include mention of them in news and stories, both in
> documentary and docudrama telling, then they would have the right to refuse
> permission unless the story was told "their way."  That would mean that
> those who are the participants in news and history could censor and write the
> story and their descendants could do the same.  This would be anathema to
> the core concept of free speech and a free press.

McCarthy, Thomas J., 2 Rights of Publicity & Privacy § 8:64 (2d ed.).

Not surprisingly, therefore, courts consistently have held that individuals may not control the publication of information about them through the artifice of a right-of-publicity claim.  See, e.g., Guglielmi v. Spelling-Goldberg Prods., 25 Cal. 3d. 860, 871-72 (1979) (docudrama about actor's life was constitutionally protected); Cher, 692 F.2d at 638 (republication of interview in magazine protected); Daly v. Viacom, Inc., 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (dismissing misappropriation claim arising from reality television program on First Amendment grounds); Gionfriddo v. Major League Baseball, 94 Cal. App. 4th 400, 411, 416 (2001) (use of information about former MLB players was protected); Montana v. San Jose Mercury News, 34 Cal. App. 4th 790, 793 (1995) (resale of photographs depicting pro football player on poster was protected); Dora v. Frontline Video, Inc., 15 Cal. App. 4th 536, 542-44 (1993) (documentary film about surfing protected); Stewart v. Rolling Stone LLC, 181 Cal. App. 4th 664, 692 (2010) (reference to independent bands in magazine article protected).[20]  This is consistent with the Restatement, which limits liability for

---

Letter to Ms. Marjorie C. Swartz and Ms. Daphne L. Macklin dated March 5, 1984, at 2, Material from the Legislative Bill File of Senator William Campbell on Sen. Bill No. 613 (1983-84 Reg. Sess.)

[20] See also Ruffin-Steinback v. dePasse, 82 F. Supp. 2d 723, 730 (E.D. Mich. 2000) (right of publicity does not prohibit unauthorized depictions of life story); Ann-Margret v. High Soc'y Magazine, Inc., 498 F. Supp. 401, 404-05 (S.D.N.Y. 1980) (First Amendment protected magazine's reprinting of photograph from a movie scene); Meeropol v. Nizer, 560 F.2d 1061, 1066-67 (2d Cir. 1977) (alleged fictionalized account of Julius and Ethel Rosenberg trial not actionable under misappropriation theory; both "historical" and "fictional" works are fully protected by the First

SPECIAL MOTION TO STRIKE
DWT 24903792v11 0101261-000001

16

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

violating the right of publicity to the unauthorized appropriation of the commercial value of a person's identity "for purposes of trade."  Restatement (Third) of Unfair Competition, § 46.  The term "for purposes of trade" does not ordinarily include the use of a person's identity in "news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses."  Id. § 47.[21]

As discussed below, the photographs at issue here are expressive works that are constitutionally protected; and because they depict and describe events that involve matters of public interest, the constitutional protections for their dissemination trumps Plaintiffs' economic interest in their names and images.[22]

---

Amendment); Matthews v. Wozencraft, 15 F.3d 432, 439 (5th Cir. 1994) (First Amendment protects use of persona in novel, including plaintiff's "character, occupation, and the general outline of his career, with many incidents of his life"); Rogers v. Grimaldi, 875 F.2d 994, 1004 (2d Cir. 1989) ("fictional and semi-fictional book[s] or movie[s]" are constitutionally protected); Seale v. Gramercy Pictures, 949 F. Supp. 331, 337 (E.D. Pa. 1996) (use of plaintiff's persona in dramatized film about Black Panthers was protected expression); Rosemont Enterprises, Inc. v. McGraw-Hill Book Co., 85 Misc. 2d 583, 587, 380 N.Y.S.2d 839 (N.Y. Sup. 1975) (unauthorized biography of Howard Hughes could not provide the basis for a misappropriation claim).

[21]  In an effort to reconcile the tension between the First Amendment and the right of publicity, the California Supreme Court in 2001 articulated the "transformative-use" test, which purports to balance constitutional interests and publicity rights by evaluating how much an individual's persona has been "transformed" in a creative work.  Comedy III, 25 Cal. 4th at 404.  The test has proved difficult to apply; just two years after its adoption, the California Supreme Court had to revisit the test to reverse a unanimous intermediate appellate panel that had found a comic book parody of musicians Johnny and Edgar Winter, which depicted them as "half-worm" creatures, was not sufficiently "transformative." Winter, 30 Cal. 4th at 888-892.  Not surprisingly, the test has been subject to serious criticism.  See, e.g., 2 McCarthy, Rights of Publicity § 8:72.

Moreover, by its very nature, the transformative use test cannot rationally be applied to the alleged use of a "name" – which cannot be "transformed" – or to a photograph of a real individual at a public event.  This Court is not bound to apply state court articulations of federal constitutional law, particularly where, as here, doing so would not make rational sense, let alone comport with federal constitutional requirements.  See RAR, Inc. v. Turner Diesel Ltd., 107 F.3d 1272, 1276 & n.1 (7th Cir. 1997) (federal courts sitting in diversity therefore "are under no obligation to defer to state court interpretations of federal [constitutional] law").  Perhaps for this reason, the Ninth Circuit expressly has left open the question whether additional First Amendment defenses apply to right of publicity claims that are "broader than the transformative use or public interest defenses." Hilton, 599 F.3d at 909 n.11 (9th Cir. 2010); see also NCAA, 724 F.3d at 1273 (same).

[22]  The U.S. Supreme Court's only decision involving right of publicity claims, Zacchini v. Scripps-Howard Broadcasting, 433 U.S. 562 (1977), demonstrated the kind of "extraordinary" circumstance that is required to overcome the First

---

SPECIAL MOTION TO STRIKE
DWT 24903792v11 0101261-000001

## 2.       Photographs Are Constitutionally Protected Expressive Works.

Plaintiffs contend that T3Media violated their rights of publicity by displaying and licensing photographs from the NCAA Photo Library.  Courts consistently have held that photographs, paintings, and other visual depictions are entitled to full First Amendment protection.  Indeed, just last month, a court reaffirmed the inherently expressive nature of photographs, flatly rejecting the notion that a photograph's entitlement to First Amendment protection depends on whether it conveys a "particularized message."  <u>Ex parte Thompson</u>, 2014 WL 4627231, *4-*5 (Tex. Crim. App. Sept., 17, 2014).  The court observed that the United States Supreme Court has "mentioned pictures, films, paintings, drawings, and engravings in the same breath as oral utterance and the printed word in describing the protection conferred by the First Amendment."[23]  2014 WL 4627231 at *4.  The decision relied on many earlier court cases from around the country that have applied First Amendment protections to photographs and video recordings.  <u>Id.</u> at *5.  <u>See also</u> <u>Sarl Louis Feraud Int'l v. Viewfinder</u>, 406 F.Supp.2d 274, 283 (S.D.N.Y. 2005) (photographs on website were entitled to First Amendment protection; ""[a] picture, as the cliché would have it, is worth a thousand words, and the defendant's decision to forgo an effort to describe the designers' creations verbally in favor of a more efficient visual presentation does not defeat protection"), <u>vacated on other grounds</u>, 489 F.3d 474 (2d Cir. 2007); <u>White</u>, 500 F. 3d at 954-955 (in striking down vendor-permitting statute applied to visual artists, Ninth Circuit noted that "visual art is inherently expressive"); <u>Bery</u>, 97 F.3d at

Amendment protections.  There, the Court held that "[w]herever the line in particular situations is to be drawn between media reports that are protected and those that are not, we are quite sure that the First and Fourteenth Amendments do not immunize the media <u>when they broadcast a performer's entire act without his consent.</u>"  433 U.S. at 574-575 (emphasis added).  The California Supreme Court has recognized that "<u>Zacchini</u> was not an ordinary right of publicity case" because it involved "a species of common law copyright violation[,]" <u>Comedy III</u>, 25 Cal. 4th at 401.  See also <u>ETW</u>, 332 F.3d at 956 (<u>Zacchini</u> "is quite distinguishable from the unauthorized use of a person's identity, particularly when the unauthorized use is in the form of an expressive work[.]")  And even in <u>Zachini</u>, the Court held that the use of a <u>photograph</u> of the performer would have been protected.  433 U.S. at 576.

[23] <u>Kaplan v. California</u>, 413 U.S. 115 (1973).

SPECIAL MOTION TO STRIKE
DWT 24903792v11 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

696 ("paintings, photographs, prints and sculptures ... always communicate some idea or concept to those who view it, and as such are entitled to full First Amendment protection").[24]

Against this constitutional backdrop, it is clear that the photographs in the NCAA Photo Library are constitutionally protected expressive works.  Indeed, many photographs taken in the context of sporting events have become part of history.  See Exs. N, O.  Similarly, the photographs of Plaintiffs in the NCAA Photo Library were taken during the 2001 Championship Game, where Catholic University won its first (and only) NCAA title.  These photographs depict a historic moment for the school, and show the team posing for a photograph with their first ever NCAA championship trophy.  See Exs. E-H  Because the photographs are inherently expressive as a matter of law, they receive the highest level of constitutional protection.

### 3.     The Substantial Public Interest In Sports Easily Outweighs Plaintiffs' Limited Publicity Rights.

Courts repeatedly have held that the public's interest in sports mandates extending constitutional protections to the same type of information about athletes and games that Plaintiffs improperly attempt to monopolize here.  For example, a California appeals court rejected right of publicity claims brought by legendary quarterback Joe Montana against a newspaper that sold in poster form its commemorative front pages about the San Francisco 49ers' Super Bowl wins, which included photographs and an artist's rendition of Montana.  Id. at 792.[25]  The court

---

[24] See also Anderson v. City of Hermosa Beach, 621 F.3d 1051, 1063 (9th Cir. 2010) (process of tattooing, the tattoo itself, and the business of tattooing all are protected by the First Amendment, citing Bery); Kelly v. Arriba Soft Corp., 336 F.3d 811, 818 (9th Cir. Cal. 2003) (in evaluating copyright claim, court held that photographs are "artistic works intended to inform and to engage the viewer in an aesthetic experience"); ETW Corp. v. Jireh Publishing, 332 F.3d 915, 924 (6th Cir. 2003) ("[t]he protection of the First Amendment is not limited to written or spoken words, but includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures"); People v. Chen, 860 N.Y.S. 2d 845 (N.Y. Crim. Ct. Mar. 26, 2008) (paintings, photographs, prints and sculptures are presumptively entitled to First Amendment protection).
[25] The first image was a photograph of Montana celebrating on the field with

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

declared that the posters were entitled to the same level of First Amendment

protection as the newspaper accounts from which they were derived, because

"Montana's name and likeness appeared in the posters for precisely the same reason

they appeared on the original newspaper front pages: [] Montana was a major player

in contemporaneous newsworthy sports events." Id. at 794. [26]

Similarly, in Gionfriddo, the court held that the First Amendment permitted

Major League Baseball ("MLB") to use the names, photographs, and video clips of

four retired professional baseball players in game programs, rosters, videos and other

works without the players' permission. 94 Cal. App. 4th at 411. The court explained

that the right of publicity "does not provide relief for every publication of a person's

name or likeness." Id. at 409. Instead, "[t]he First Amendment requires that the right

to be protected from unauthorized publicity be balanced against the public interest in

the dissemination of news and information consistent with the democratic processes

under the constitutional guaranties of freedom of speech and of the press." Id.

(quoting Gill v. Hearst Publishing Co., 40 Cal. 2d 224 (1953)). The court evaluated

the precise information conveyed by the works at issue – "mere bits of baseball's

history: names of players included on All-Star and World Series rosters; descriptions

of memorable performances from former games included within All-Star and World

Series game programs []; photographs and video clips taken of plaintiffs" – which

were "made available to the public through Web sites, home videos, and other

programs presenting historic events from long ago." Id.   Noting the "substantial

public interest" in baseball generally and in "factual data concerning the athletic

performance of the plaintiffs" specifically, and the "negligible" economic interests of

---

[26] three other players after the San Francisco 49ers defeated the Cincinnati Bengals in Super Bowl XXIII.  34 Cal. App. 4th at 792.  The second image showed him "flying high in celebration" after a successful touchdown pass during Super Bowl XXIV.  Id. The third image was an artist's rendering of Montana from a special edition of the newspaper commemorating the team's Super Bowl championships.  Id.

[26] See also Somerson, 2013 U.S. Dist. Lexis 106028, *19 (citing Gionfriddo, court recognized defendant's constitutional right to disseminate name and persona of a retired and "highly successful professional wrestler and entertainer[]" on website).

20

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the plaintiffs, the court concluded that "the public interest favoring the free dissemination of information regarding baseball's history far outweigh[ed] any proprietary interests at stake."  94 Cal. App. 4th at 411, 415.

The <u>Gionfriddo</u> court cited to <u>Montana</u> and to an earlier California decision involving surfing, noting the public's "enduring fascination" with sports and the athletes who play them.  94 Cal. App. 4th at 41.[27]  In that case, the court acknowledged surfing's "significant influence" on popular culture in rejecting right of publicity claims brought by an iconic figure in surfing against the producers of a documentary film about the advent of the Malibu surf culture in the 1950s.  <u>Id.</u> at 541.  The court noted that "[p]ublication of matters in the public interest … is not ordinarily actionable" <u>id.</u> at 542, and held that the plaintiff's claims were barred.[28]

Just as in <u>Gionfriddo</u>, <u>Dora</u>, and <u>Montana</u>, the information at issue here involves matters of significant public interest:  photographs of college athletes competing in national championships.  <u>See</u> Sections III(B), <u>supra</u>.  Indeed, in addition to the description in the accompanying captions, the visual depictions captured in the photographs independently convey information beyond what a literal description could provide.  Thus, Plaintiffs' publicity rights are clearly outweighed by the First Amendment.

### 4. T3Media's Conduct Does Not Involve Commercial Speech.

---

[27] This public interest was not diminished by the fact that the plaintiffs had retired from the sport.  As the court emphasized, "the public interest is not limited to current events; the public is also entitled to be informed and entertained about our history."  <u>Id.</u> at 411.

[28] Similarly, in <u>C.B.C. Distribution v. Major League Baseball Advanced Media</u>, 505 F.3d 818, 823 (8th Cir. 2007), the court held that MLB players' names, biographies, and statistics were matters of public interest and were insulated from right-of-publicity claims, even when disseminated through online fantasy-baseball-game websites.  <u>Id.</u> at 822-823.  The court explained that "the information used in C.B.C.'s fantasy baseball games is all readily available in the public domain, and it would be strange law that a person would not have a first amendment right to use information that is available to everyone."  <u>Id.</u> at 823.  <u>See</u> <u>also</u> <u>CBS Interactive v. NFL Players Ass'n</u>, 259 F.R.D. 398, 417 (D. Minn. 2009) ("the package of information used here [names, statistics, injury reports, pictures, images, and biographical data] comes within the ambit of the First Amendment").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiffs' FAC repeatedly makes reference to the alleged "sale" of photographs, as if the fact that T3Media (and the copyright owners) make money disseminating information to the public is somehow relevant. It is not. It is well established that "expressive activity does not lose its constitutional protection because it is undertaken for profit." See Aldrin, 2011 U.S. Dist. LEXIS 110800, *5. See also Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501 (1952) ("[t]he fact that "books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment"); Gionfriddo, 94 Cal. App. 4th at 410 (rejecting players' argument that the challenged uses constituted commercial speech, holding that "[p]rofit, alone, does not render expression 'commercial'"); Dex Media W., Inc. v. City of Seattle, 696 F.3d 952, 960 (9th Cir. 2012) ("economic motive in itself is insufficient to characterize a publication as commercial"); see also Hoffman v. Capital Cities/ABC, Inc., 255 F.3d 1180 (9th Cir. 2001) (article "meant to draw attention to the for-profit magazine in which it appears … does not fall outside of the protection of the First Amendment because it may help to sell copies").

Similarly, courts consistently have held that promotional materials describing or depicting the content of an expressive work enjoy the same constitutional protection as the work itself. For example, in Guglielmi, the California Supreme Court expressly held that the First Amendment protections that applied to defeat the use of actor Rudolph Valentino's name and likeness in a film applied equally to advertising for the film. Guglielmi v. Spelling-Goldberg Prods., 25 Cal. 3d. 860, 871-72. As the Court explained, the use of the actor's name and likeness to promote the film "was merely an adjunct to the exhibition of the film. … It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise. Since the use of Valentino's name and likeness in the film was not an actionable infringement of Valentino's right of publicity, the use of his identity in advertisements for the film is similarly not actionable." Id. See also Daly, 238 F.

Supp. 2d at 1122-23 (district court rejected right of publicity claims based on advertisements depicting plaintiff's appearance in a reality show); Page v. Something Weird Video, 960 F. Supp. 1438, 1443 (1996) (film catalog and video covers were protected speech); Montana, 34 Cal. App. 4th at 797 (rejecting right of publicity claims based on use of plaintiff's likeness in posters sold by publisher "to advertise the quality and content of its newspaper"); People v. Fogelson, 21 Cal. 3d 158, 165 n.7 (1978) ("commercial solicitation or promotion of constitutionally protected written works is protected as an incident to the First Amendment value of the underlying speech or activity").  Plaintiffs cannot evade the constitutional protections that attach to the dissemination of protected works by claiming that T3Media "promoted" the fact that photographs could be licensed.

**C.     Plaintiffs' Claims Independently Fail Because California Law Allows Uses Connected To "News," "Sports" And "Public Affairs."**

Section 3344(d) exempts from liability the "use of a … likeness in connection with any news, public affairs, or sports broadcast or account."  This statutory protection "is not coextensive with the First Amendment.  Rather, it is designed to avoid First Amendment questions in the area of misappropriation by providing extra breathing space for the use of a person's name in connection with matters of public interest."  New Kids on the Block v. News America Publ., 971 F.2d 302, 310 n.10 (9th Cir. 1992).[29]  Consistent with the legislative purpose (see note 19, infra), courts have interpreted this "public affairs" exemption expansively, recognizing that it applies to much more than just traditional news reports.[30]  In Dora, for example, the

---

[29] The Ninth Circuit had held that this defense applies to both statutory and common-law right-of-publicity claims, and that it affords even broader protection than the First Amendment.  New Kids, 971 F.2d at 310 n.10; see also Eastwood v. Superior Court, 149 Cal. App. 3d 409, 426 (1983).

[30] The Ninth Circuit declined to apply this provision in a case involving videogames about college athletics; the majority held that Section 3344(d)'s "public affairs" exemption was limited to "reporting" about actual newsworthy events, rather than creative expression like a videogame.  Keller v. Electronic Arts, 724 F.3d 1268, 1282 (9th Cir. 2013).  Although that is inconsistent with the statute's express

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

court rejected the argument that a film about surfing did not relate to "public affairs" within the meaning of Section 3344(d).  15 Cal. App. 4th at 546.  Noting that "Civil Code section 3344, subdivision (d) distinguishes between news and public affairs," the court held that "the Legislature intended that the category of public affairs would include things that would not necessarily be considered news."  Id. at 545.

Following Dora, the court in Montana held that NFL football involved "public affairs" within the meaning of Section 3344(d).  34 Cal. App. 4th at 801; see also Gionfriddo, 94 Cal. App. 4th at 416 (holding that, "[i]n view of baseball's pervasive influence on our culture," the defendants' game programs and web sites were "public affairs uses exempt from consent under Section 3344); New Kids, 971 F.2d at 310 (rejecting boy band's misappropriation claims arising from newspaper's use of band members' names and photos in connection with a 900-number telephone poll).

The photographs here also easily fall within the statute's broad exemption. "Public affairs" extends to works – whether informative, entertaining, or both – that relate to "popular culture" and to "real-life occurrences."  Dora, 15 Cal. App. 4th at 545-46.  The photographs and captions also are "sports accounts" under Section 3344(d), because they visually depict and describe sporting events.  Consequently, they are exempt under Section 3344(d).

**D.    Plaintiffs' UCL Claim Independently Fails.**

Plaintiffs' Section 17200 claim is based upon and derivative of Plaintiffs' statutory and common-law misappropriation claims, and must be dismissed as mere surplusage.  See, e.g., Conder v. Home Sav. Of Am., 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010) (dismissing UCL claim as duplicative of other claims).

In addition, Plaintiffs' Section 17200 claim fails because that statute only applies to commercial speech – not to expressive works like the photographs here,

---

language, it has no impact on this case, because the photographs and editorial descriptions at issue here satisfy even the stricter standard applied in Keller.

SPECIAL MOTION TO STRIKE
DWT 24903792v11 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

which are fully protected by the First Amendment.[31]  As discussed above, the fact that a particular work may be sold (or licensed) for profit does not convert it from core speech to "commercial" speech.  See Section IV(B)(4), infra; see also Cher, 692 F.2d at 638 (extending First Amendment protection to magazine headlines and cover displays).  As the Ninth Circuit has explained, a magazine "is not advertising the product; it *is* the product.  It is sold for a profit, but that does not make it commercial speech for First Amendment purposes."  Hilton, 599 F.3d at 905 n.7.

Because the conduct at issue here does not involve commercial speech, Plaintiffs' UCL claim is constitutionally barred.  Lavasoft, 356 F. Supp. 2d at 1110 (lawsuits premised on these statutes "are subject to being stricken because they are barred by the First Amendment where the speech complained of is not commercial speech"); Stutzman v. Armstrong, 2013 WL 4853333, at *14 (E.D. Cal. Sept. 10, 2013) (same) (citing multiple cases).

For all the reasons explained above, Plaintiffs respectfully request that the Court grant this motion and strike Plaintiffs' FAC without leave to amend.[32]

DATED:  October 24, 2014          DAVIS WRIGHT TREMAINE LLP


By:     / s / Kelli L. Sager
                    Kelli L. Sager
              Attorneys for Defendant

---

[31] See, e.g., New.net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1110 (C.D. Cal. 2004) ("[l]awsuits premised on section 17200 are subject to being stricken because they are barred by the First Amendment where the speech complained of is not commercial speech") (citing Kasky v. Nike, Inc., 79 Cal. App. 4th 165, 178 (2000)); accord William O'Neil & Co. v. Validea.com, Inc., 202 F. Supp. 2d 1113, 1121 (C.D. Cal. 2002) (section 17200 "does not seek to restrict noncommercial speech in any manner") (quoting Keimer v. Buena Vista Books, Inc., 75 Cal. App. 4th 1220, 1232 (1999)); Rezec v. Sony Pictures Ent., Inc., 116 Cal. App. 4th 135, 140 (2004).

[32] Where, as here, amendment is futile, leave to amend should be denied and plaintiff's claims dismissed.  See Wages v. I.R.S., 915 F.2d 1230, 1235 (9th Cir. 1990) (leave to amend should be denied where amendment is futile); see also Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990).

SPECIAL MOTION TO STRIKE
DWT 24903792v11 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899