DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
KAREN A. HENRY (State Bar No. 229707)
  karenhenry@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com

Attorneys for Defendant
T3Media, Inc. d/b/a Paya.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| PATRICK MALONEY, on behalf of himself and all others similarly situated, TIM JUDGE, on behalf of himself and all others similarly situated<br><br>                Plaintiffs,<br><br>vs.<br><br>T3MEDIA, INC. d/b/a Paya.com, a Colorado corporation,<br><br>                Defendants. | Case No. **14-CV-05048-ABC (VBKx)**<br><br>**DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hearing Date: December 1, 2014<br>Time:       10:00 a.m.<br>Courtroom:  790<br><br>[Supplemental Declaration Of Ernest M. Weiser With Exhibit V; Supplemental Declaration Of Karen A. Henry With Exhibits W-DD; Ex Parte Application To Seal; Declaration Of Karen A. Henry In Support Of Ex Parte Application; Evidentiary Objections; And Notice of Manual Filing Filed Concurrently]<br><br>[[Proposed] Order Granting Ex Parte Application to Seal Lodged Concurrently]<br><br>Action Filed: June 27, 2014 |

      Defendant T3Media, Inc., d/b/a Paya.com ("T3Media") respectfully submits this Reply to Plaintiffs' Opposition ("Opp.") to T3Media's Special Motion To Strike Plaintiffs' First Amended Complaint ("Mot.")

# TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT ...................................................................... 1

II.   PLAINTIFFS FAILED TO DEMONSTRATE ANY PROBABILITY
      OF PREVAILING ON THEIR CLAIMS. ...................................................... 3

      A.    Plaintiffs' Claims Are Preempted By The Copyright Act. ................. 3

      B.    Plaintiffs' Claims Are Barred By The First Amendment.................... 6

            1.    T3Media Did Not Waive Its First Amendment
                  Rights. ..................................................................................... 7

            2.    The First Amendment Bars Plaintiffs' Claims As A
                  Matter Of Law.......................................................................... 10

            3.    Limitations On Commercial Speech And Advertising
                  Of Commercial Products Have No Application Here. ............ 16

      C.    Plaintiffs' Claims Independently Are Barred By Section 3344(d)'s
            Exemption for "Public Affairs" and "Sports Accounts.".................... 18

      D.    Plaintiffs' UCL Claim Also Is Constitutionally Barred..................... 20

III.  PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF
      JUSTIFYING DISCOVERY AT THIS STAGE.......................................... 21

i

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Abdul-Jabbar v. GMC,
    85 F.3d 407 (9th Cir. 1996) ................................................................... 19

Am. Acad. of Pain Mgmt. v. Joseph,
    353 F.3d 1099 (9th Cir. 2004) ............................................................... 20

Arenas v. Shed Media US Inc.,
    881 F. Supp. 2d 1181 (C.D. Cal. 2011) ................................................. 23

Armstrong v. Eagle Rock Ent't, Inc.,
    655 F. Supp. 2d 779 (E.D. Mich. 2009) .................................................. 5

Bantam Books, Inc. v. Sullivan,
    372 U.S. 58 (1963) ................................................................................ 17

Bery v. City of New York,
    97 F. 3d 689 (2nd Cir. 1996) ................................................................ 17

Bolger v. Youngs Drug Prods. Corp.,
    463 U.S. 60 (1983) ................................................................................ 20

Brae Transp., Inc. v. Coopers & Lybrand,
    790 F.2d 1439 (9th Cir. 1986) ............................................................... 22

C.B.C. Distribution v. Major League Baseball Advanced Media,
    505 F.3d 818 (8th Cir. 2007) ................................................................ 14

Cheng v. BMW of N. Am., LLC,
    2013 U.S. Dist. LEXIS 107580 (C.D. Cal. July 26, 2013) ...................... 1

City of Lakewood v. Plain Dealer Publ'g Co.,
    486 U.S. 750 (1988) .............................................................................. 17

Curtis Publ. Co. v. Butts,
    388 U.S. 130 (1967) .......................................................................... 8,14

ii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Cusano v. Klein,
  473 Fed. App'x 803 (9th Cir. 2012) ............................................5,6

Daly v. Viacom, Inc.,
  238 F. Supp. 2d 1118 (N.D. Cal. 2002) ....................................21,23

Dex Media West, Inc. v. City of Seattle,
  696 F.3d 952 (9th Cir. 2012) ......................................................20

Downing v. Abercrombie & Fitch,
  265 F. 3d 994 (9th Cir. 2001) .................................................*passim*

Dryer v. Nat'l Football League,
  – F. Supp. 3d –, 2014 WL 5106738 (D. Minn. Oct. 10, 2014)...................4,5,6,13

Erie Telecomm'ns, Inc. v. City of Erie, Pa.,
  853 F.2d 1084 (3d Cir. 1988)..........................................................7

Family Home & Fin. Ctr. v. Fed. Home Loan Mortg. Corp.,
  525 F.3d 822 (9th Cir. 2008) ....................................................22,23

Fraley v. Facebook, Inc.,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ........................................19

Fuentes v. Shevin,
  407 U.S. 67 (1972).................................................................8,23

Global Telemedia Int'l, Inc. v. Doe 1,
  132 F. Supp. 2d 1261 (C.D. Cal. 2001) ....................................22,24

Hilton v. Hallmark,
  599 F.3d 894 (9th Cir. 2010) ................................................11,17,21

Honolulu Weekly, Inc. v. Harris,
  298 F.3d 1037 (9th Cir. 2002) .....................................................17

In re NCAA Student-Athlete Name and Likeness Licensing Litigation,
  990 F. Supp. 2d 996 (N.D. Cal. Oct. 25, 2013) .............................12

In re TFT-LCD (Flat Panel) Antitrust Litig.,
  2011 U.S. Dist. LEXIS 55033 (N.D. Cal. May 9, 2011).......................1

Johnson v. Zerbst,
  304 U.S. 458 (1938).................................................................8

iii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Jordan v. Jewel Food Stores, Inc.,*
    743 F.3d 509 (7th Cir. 2014) ............................................................. 19

*Joseph Bursteyn, Inc. v. Wilson,*
    343 U.S. 495 (1952)............................................................. 11,13,17

*Jules Jordan Video, Inc. v. 144942 Canada Inc.,*
    617 F.3d 1146 (9th Cir. 2010) ........................................................... 5,6

*Keller v. Electronic Arts,*
    724 F.3d 1268 (9th Cir. 2013) ........................................................ 11,12

*Laws v. Sony Music Ent't,*
    448 F.3d 1134 (9th Cir. 2006) ......................................................... 4,5,6

*Leonard v. Clark,*
    12 F.3d 885 (9th Cir. 1993) .................................................................. 7

*Lewis v. Activision Blizzard, Inc.,*
    2012 WL 5199505 (N.D. Cal. Oct. 22, 2012) ...................................... 6

*Lightbourne v. Printroom Inc.,*
    CV13-876-JLS (RNBx), Docket No. 107
    (C.D. Cal. Sept. 8, 2014)........................................................... 5,16,19

*Manchester Resorts, L.P. v. Southwest Regional Council of Carpenters,*
    2003 U.S. Dist. LEXIS 2392 (S.D. Cal. 2003)................................... 25

*Manufactured Home Communities, Inc. v. County of San Diego,*
    655 F.3d 1171 (9th Cir. 2011) .............................................................. 3

*Martin v. City of Struthers,*
    319 U.S. 141 (1943)............................................................................ 17

*Metabolife Int'l v. Wornick,*
    264 F.3d 832 (9th Cir. 2001) ............................................................. 22

*Milo & Gabby, LLC v. Amazon.com,*
    2014 WL 1411849 (W.D. Wash. April 11, 2014) .............................. 5,6

*Mory v. City of Chula Vista,*
    2008 U.S. Dist. LEXIS 9911 (S.D. Cal. Feb. 11, 2008)...................... 24

*Muirbrook v. Skechers USA Inc.,*
    2012 WL 5456402 (C.D. Cal. Nov. 6, 2012).......................................... 4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Murphy v. DirecTV, Inc.,
    724 F.3d 1218 (9th Cir. 2013) .................................................................... 7

Nat'l Basketball Ass'n v. Motorola, Inc.,
    105 F.3d 841 (2d Cir. 1997).................................................................... 6

NCAA v. Bd. Of Regents of the Univ. of Okla.,
    468 U.S. 85 (1984)................................................................................ 14

New Kids on the Block v. Nat'l Enquirer,
    971 F. 2d 302 (9th Cir. 1992) ........................................................... 18,20

New.Net, Inc. v. Lavasoft,
    356 F. Supp. 2d 1090 (C.D. Cal. 2004) ................................................. 22

Nicosia v. DeRooy,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) .................................................. 24

Novalogic, Inc. v. Activision Blizzard,
    2013 U.S. Dist. LEXIS 188298 (C.D. Cal. June 18, 2013) ................... 25

OSU Student Alliance v. Ray,
    699 F. 3d 1053 (9th Cir. 2013) .............................................................. 17

Paragould Cablevision, Inc. v. City of Paragould, Ark.,
    930 F.2d 1310 (8th Cir. 1991) ................................................................ 7

Pooley v. Nat'l Hole-In-One Ass'n,
    89 F. Supp. 2d 1108 (D. Ariz. 2000) ..................................................... 12

Ray v. ESPN,
    2014 WL 2766187 (W.D. Mo. April 8, 2014).......................................5,6

Roberts v. McAfee, Inc.,
    660 F.3d 1156 (9th Cir. 2011) ................................................................. 3

Sarver v. Hurt Locker LLC,
    2011 U.S. Dist. LEXIS 157503 (C.D. Cal. Oct. 13, 2011).................13,23

Saunders v. Equifax Info. Servs., L.L.C.,
    469 F. Supp. 2d 343, 353 n.14 (E.D. Va. 2007) ...................................... 6

Smith v. California,
    361 U.S. 147 (1959).............................................................................. 17

v

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Somerson v. McMahon,
   956 F. Supp. 2d 1345 (N.D. Ga. 2012) ..................................................5,6,14

Speyer v. Avis Rent a Car System, Inc.,
   415 F. Supp. 2d 1090 (S.D. Cal. 2005) ..........................................................1

Stutzman v. Armstrong,
   2013 U.S. Dist. LEXIS 129204 (E.D. Cal. Sept. 9, 2013)...........................20,21

Toney v. L'Oreal USA, Inc.,
   406 F.3d 905 (7th Cir. 2005) ........................................................................5

Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC,
   2010 U.S. Dist. LEXIS 105497 (S.D. Cal. Oct. 4, 2010) ...................................24

William O'Neil & Co. v. Validea.com Inc.,
   202 F. Supp. 2d 1113 (C.D. Cal. 2002) .......................................................21

Winters v. New York,
   333 U.S. 507 (1948) ....................................................................................13

Young v. AmeriGas Propane, Inc.,
   2014 U.S. Dist. LEXIS 144123 (S.D. Cal. Oct. 9, 2014) ....................................1

**State Cases**

DaimlerChrysler Motors Co. v. Lew Williams, Inc.,
   142 Cal. App. 4th 344 (2006) ......................................................................7

Dora v. Frontline Video, Inc.,
   15 Cal. App. 4th 536 (1993) ..................................................................18,19

Fleet v. CBS,
   50 Cal. App. 4th 1911 (1996) .......................................................................5

Gionfriddo v. Major League Baseball,
   94 Cal. App. 4th 400 (2001) ..............................................................13,14,18

Guglielmi v. Spelling-Goldberg Prods.,
   25 Cal. 3d 860 (1979) ................................................................................13

Montana v. San Jose Mercury News,
   34 Cal. App. 4th 790 (1995) .............................................................2,14,18,19

vi

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

_Navellier v. Sletten,_
    29 Cal. 4th 82 (2002) ............................................................. 7

_Paterno v. Superior Court,_
    163 Cal. App. 4th 1342 (2008) ............................................ 24

_Polydoros v. Twentieth Century Fox Film Corp.,_
    67 Cal. App. 318 (1997) .............................................. 17,25

_Tattered Cover, Inc. v. City of Thornton,_
    44 P.3d 1044 (Co. 2002) ..................................................... 17

_Taus v. Loftus,_
    40 Cal. 4th 683 (2007) ......................................................... 3

_Timed Out, LLC v. Youabian,_
    229 Cal. App. 4th 1001 (2014) ......................................... 4,5

_Wells v. Chattanooga Bakery, Inc.,_
    2014 WL 1259153 (Tenn. Ct. App. Mar. 25, 2014) .......... 6

_Welton v. City of Los Angeles,_
    18 Cal. 3d 497 (1976) ........................................................ 17

_Winter v. DC Comics,_
    30 Cal. 4th 881 (2003) ....................................................... 13

**State Statutes**

Cal. Civ. Code § 1639 ................................................................... 7

Civ. Code § 3344(d) ............................................................. 2,18,19

**Rules**

F.R.C.P. 56(d) ..................................................................... 22,24

Fed. R. App. P. 32.1 ...................................................................... 6

Rule 12.5.1.9 ............................................................................. 10

REPLY BRIEF
DWT 25412543v7 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# I.  SUMMARY OF ARGUMENT

Plaintiffs concede, as they must, that the SLAPP statute applies to their claims – all of which arise from the displaying, reproducing, and disseminating of photographs involving matters of public interest.[1]  Thus, the burden shifted to Plaintiffs to demonstrate a probability of prevailing on each of their claims.  Mot. at 8-9; Section II.  They did not come close to meeting that burden.

Instead, Plaintiffs' Opposition relies on the faulty premise that the dissemination of constitutionally-protected expressive works[2] somehow becomes "commercial" if those works are sold or licensed for a profit.  That premise ignores decades of controlling law (Mot. at 22), and defies common sense:  newspapers, books, magazines, and other protected forms of expression all are "sold" for a profit, but that does not change their constitutional protection, nor does it change the scope of rights granted to copyright owners.  Id. at 21-23, 25.  Similarly, the allegation that T3Media charges a fee for limited copyright licenses of photographs does not alter its rights under the federal Copyright Act or the First Amendment.  This Court should reject the dramatic expansion of the right-of-publicity tort that Plaintiffs seek here, which is wholly inconsistent with those rights.

---

[1] Plaintiffs do not dispute that the four photographs of Mr. Maloney and Mr. Judge that were on the Paya.com site involve a matter of public interest.  Because the purported "class" has not been certified, allegations concerning photographs of other putative class members are irrelevant.  See Cheng v. BMW of N. Am., LLC, 2013 U.S. Dist. LEXIS 107580, *10 (C.D. Cal. July 26, 2013) ("in ruling on a motion to dismiss a class action complaint prior to class certification, courts generally consider only the claims of the named plaintiff"); Speyer v. Avis Rent a Car System, Inc., 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005) (same); Young v. AmeriGas Propane, Inc., 2014 U.S. Dist. LEXIS 144123, *11 (S.D. Cal. Oct. 9, 2014) ("[a] class action may not proceed unless the plaintiff who represents the class can show that he personally has been injured, 'not that injury has been suffered by other, unidentified members of the class'"); see also In re TFT-LCD (Flat Panel) Antitrust Litig., 2011 U.S. Dist. LEXIS 55033, *28-29 (N.D. Cal. May 9, 2011) ("putative class members are not parties to an action prior to class certification").

[2] Plaintiffs do not dispute that photographs are expressive works that are fully protected under the First Amendment (Opp. at 12), nor could they reasonably do so.  Mot. at 18-19.  Nor can this case be distinguished from claims that could be made against professional photographers who license their copyrighted photos.

REPLY BRIEF
DWT 25412543v7 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

<u>First</u>, Plaintiffs' claims are preempted by copyright law. Their strained assertion that these claims are not within the "subject matter" of copyright relies entirely on inapposite cases in which the plaintiffs alleged a "use" of their names and likenesses in an advertisement, not merely the publication of a photograph. (Opp. 3-5.) The latter falls squarely within the subject matter of copyright. Because Plaintiffs do not dispute that the rights they seek to control are equivalent to the rights conferred by copyright law, the second prong of the test also is met, and the claims are preempted. Mot. at 11-12; Section II.A.

<u>Second</u>, Plaintiffs' claims independently are barred by the First Amendment. Their Opposition ignores the constitutional framework that requires application of a strict scrutiny test to right-of-publicity claims, effectively conceding that they cannot meet these stringent requirements. Nor have they cited <u>a single case</u> where the dissemination of a photograph about a matter of public interest has been found to give rise to such claims. The assertion that T3Media somehow "waived" its constitutional rights, based on a contract with a third party that gives it the right to license copyrights in the photographs, is baseless. Section II.B.1.

<u>Third</u>, California law expressly exempts the alleged "use" of a name or likeness where, as here, it is connected to sports accounts or public affairs. Civ. Code § 3344(d). The California Court of Appeal held that this provision barred a professional football player from stating a claim for misappropriation based on the sale of a poster depicting him after his team won a national championship. <u>Montana v. San Jose Mercury News</u>, 34 Cal. App. 4th 790, 793 (1995). Plaintiffs' contrived attempt to avoid this analogous case, and similar cases involving publications by for-profit enterprises, is wholly without support. Section II.B.2.

<u>Finally</u>, Plaintiffs' UCL claim fails for the same reasons as their other claims, and also fails because the statute indisputably applies only to "commercial speech." Section II.D. For all of these reasons, T3Media respectfully requests that this Court grant its Motion and strike each of Plaintiffs' claims, with prejudice.

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.    PLAINTIFFS FAILED TO DEMONSTRATE ANY PROBABILITY OF PREVAILING ON THEIR CLAIMS.

There is no dispute that T3Media met its burden of demonstrating that Plaintiffs' claims all fall within the broad scope of the SLAPP statute (Mot. at 5); consequently, the burden shifted to Plaintiffs to establish a probability of prevailing on each of their claims. Id. at 8-9.  This required more than mere allegations, or a bare "possibility" of eventual success.  Under controlling Ninth Circuit law, a plaintiff's burden on a SLAPP motion is "'similar to the standard used in determining motions for nonsuit, directed verdict, or summary judgment.'" Manufactured Home Communities, Inc. v. County of San Diego, 655 F.3d 1171, 1177 (9th Cir. 2011); Roberts v. McAfee, Inc., 660 F.3d 1156 (9th Cir. 2011) (same).  This standard requires the plaintiff to "state[] and substantiate[] a legally sufficient claim." Taus v. Loftus, 40 Cal. 4th 683, 714 (2007).  Plaintiffs therefore may not rely on the bare allegations of their own pleading; instead, they must "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff[s] is credited." Manufactured Home Communities, 655 F.3d at 1176 (emphasis added).  Plaintiffs have not come close to meeting their burden.

### A.    Plaintiffs' Claims Are Preempted By The Copyright Act.

There is no disagreement about the two-part test this Court should apply to evaluate whether Plaintiffs' claims are preempted by federal copyright law; nor have Plaintiffs disputed that the second prong of the preemption analysis is satisfied here – the rights asserted by Plaintiffs to control the publication and sale of photographs are "equivalent to" the exclusive rights under the Copyright Act. Mot. at 11-12. But Plaintiffs assert that the first prong of the preemption test is not satisfied, claiming that publicity rights are "categorically" outside the subject matter of copyright. Opp. at 4 (citing Downing v. Abercrombie & Fitch, 265 F.3d 994, 999 (9th Cir. 2001).) Neither Downing nor any other authority has established such a "categorical" rule.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

To the contrary, courts have made clear that a person depicted in a copyrighted work cannot use their alleged "publicity rights" to prevent a copyright holder from exercising its legal right to distribute that work. Mot. at 11-12. Courts analyzing preemption have distinguished between situations where the plaintiff's claim seeks to prevent the use of his name and likeness to promote and/or sell unrelated commercial products, and situations where – as here – the plaintiffs are trying to prevent the display, reproduction, and/or distribution of copyrighted works. Thus, as the district court explained just last month in Dryer v. Nat'l Football League, – F. Supp. 3d –, 2014 WL 5106738, *17 (D. Minn. Oct. 10, 2014), "a claim for a violation of the right of publicity against a copyrighted work will lie only if that work is used for advertising, not in an expressive work." (Emphasis added.)

The cases Plaintiffs rely on here – all of which involved the use of the plaintiffs' names and likenesses to sell commercial products and services – are inapposite. See, e.g., Downing, 265 F.3d at 999 (clothing retailer used plaintiffs' names and likenesses to advertise clothing in a catalog);[3] Muirbrook v. Skechers USA Inc., 2012 WL 5456402, *3 (C.D. Cal. Nov. 6, 2012) (defendants' use of model's photograph to market its products allegedly exceeded the scope of the license plaintiff granted); Timed Out, LLC v. Youabian, 229 Cal. App. 4th 1001, 1004 (2014) (use of models' photographs to market defendants' cosmetic surgery

---

[3] Plaintiffs assert that the Downing decision was not dependent on the fact that the photographs at issue were being used to advertise commercial products; but that claim is belied by the Ninth Circuit's own description of its rationale. As another panel later explained, although "the photograph [in Downing] itself was within the subject matter protected by the Copyright Act[,] … Abercrombie had not merely published the photograph. Rather, it published the photo in connection with a broad surf-themed advertising campaign, identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo." It was "not the publication of the photograph itself, as a creative work of authorship, that [was] the basis for [plaintiffs'] claims, but rather, it [was] the use of the [plaintiffs'] likenesses and their names pictured in the published photograph." Laws v. Sony Music Ent't, 448 F.3d 1134, 1142-1143 (9th Cir. 2006). Here, in contrast, the only thing at issue is the dissemination of photographs depicting Plaintiffs.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

business);[4] <u>Toney v. L'Oreal USA, Inc.</u>, 406 F.3d 905, 910 (7th Cir. 2005) (use of a model's image to advertise hair care products); <u>Lightbourne v. Printroom Inc.</u>, CV13-876-JLS (RNBx), Docket No. 107 at 2 (C.D. Cal. Sept. 8, 2014) (defendant allegedly used college athletes' names and likeness on products, including picture frames and calendars). In those cases, it was the unauthorized use of the plaintiffs' respective personas in advertising products that formed the basis for the plaintiffs' claims, not merely the copying, display, or licensing of a copyrighted work.

In contrast, in the cases cited by T3Media, the plaintiffs were attempting to control the reproduction and/or distribution of copyrighted works – just like Plaintiffs are here. <u>See</u>, <u>e.g.</u>, <u>Laws</u>, 448 F.3d at 1142-1143 (right of publicity claims were within subject matter of copyright where singer tried to prevent distribution of sound recording of her vocal performance); <u>Jules Jordan Video, Inc. v. 144942 Canada Inc.</u>, 617 F.3d 1146, 1154-1155 (9th Cir. 2010) (same; actor sued based on distribution of DVDs in which his performance was fixed);[5] <u>Dryer</u>, 2014 WL 5106738 at *16 (athletes' right of publicity claims arising from distribution of videos depicting their athletic performances were preempted); <u>Milo & Gabby, LLC v. Amazon.com</u>, 2014 WL 1411849, *5 (W.D. Wash. April 11, 2014) (plaintiffs' right of publicity claims arising from distribution of photographs were preempted);[6] <u>Cusano v. Klein</u>, 473

---

[4] The court in <u>Timed Out</u> also recognized that right of publicity claims are preempted where the only act alleged is the authorized distribution of a copyrighted work. But unlike this case, the defendant there did not hold the copyright to the photographs at issue. 229 Cal. App. 4th at 1013 n.8.

[5] Contrary to Plaintiffs' contention, preemption is not reserved for cases in which the right of publicity claim is accompanied by a copyright-infringement claim; courts repeatedly have found right of publicity claims to be preempted without corresponding copyright claims. <u>See</u>, <u>e.g.</u>, <u>Fleet v. CBS</u>, 50 Cal. App. 4th 1911 (1996); <u>Dryer</u>, 2014 WL 5106738, *16; <u>Ray v. ESPN</u>, 2014 WL 2766187 (W.D. Mo. April 8, 2014); <u>Somerson v. McMahon</u>, 956 F. Supp. 2d 1345, 1355 (N.D. Ga. 2012); <u>Armstrong v. Eagle Rock Ent't, Inc.</u>, 655 F. Supp. 2d 779 (E.D. Mich. 2009).

[6] Plaintiffs criticize <u>Milo & Gabby</u> and <u>Cusano</u> because those decisions did not discuss <u>Downing</u>. (Opp. at 6.) But <u>Downing</u> applies <u>only</u> where the defendant used the plaintiff's name or likeness to advertise other, unrelated products. <u>Laws</u>, 448 F.3d at 1142-1143. Neither <u>Milo & Gabby</u> nor <u>Cusano</u> involved advertisements for unrelated products; thus, <u>Downing</u> was inapposite.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Fed. App'x 803, 804 (9th Cir. 2012) (suit by KISS band-member concerning reproduction of still and video footage of his performances and appearances was preempted);[7] Ray, 2014 WL 2766187 at *5 (athletes' right of publicity claims arising from reproduction and distribution of films depicting their wrestling performances were within subject matter of copyright); Somerson, 956 F. Supp. 2d at 1355 (same).[8]

Similarly, Plaintiffs' claims here do not involve any use of their names or likenesses to sell some unrelated commercial product. Instead, their claims purport to arise from T3Media's display of thumbnail images of copyrighted works on Paya.com, and its licensing of non-exclusive copyrights in those pictorial works. Thus, Plaintiffs' claims fall squarely within the subject matter of copyright, just like the claims in the cases cited above and in the Motion.[9] This Court should strike Plaintiffs' claims, with prejudice, for this reason alone.

**B.    Plaintiffs' Claims Are Barred By The First Amendment.**

Plaintiffs concede that the photographs at issue are constitutionally protected. Opp. at 12. Because they have not and cannot overcome the strong First Amendment

---

[7] Plaintiffs' characterization of Cusano as "non-precedential" ignores Fed. R. App. P. 32.1, which permits parties to cite unpublished federal court decisions that were published on or after January 1, 2007. See also Saunders v. Equifax Info. Servs., L.L.C., 469 F. Supp. 2d 343, 353 n.14 (E.D. Va. 2007) (same).

[8] See also Lewis v. Activision Blizzard, Inc., 2012 WL 5199505, *4 (N.D. Cal. Oct. 22, 2012) (plaintiff's right of publicity and unjust enrichment claims preempted by copyright law where claims arose from allegedly unauthorized use of her voice recordings in a sound recording); Wells v. Chattanooga Bakery, Inc., 2014 WL 1259153, *6 (Tenn. Ct. App. Mar. 25, 2014) (right of publicity claim based on use of plaintiff's photograph was preempted by copyright law); Mot. at 9-11.

[9] Plaintiffs' assertion that T3Media's cases are distinguishable because they involved "performances" that were independently copyrightable (Opp. at 5) is untrue. There was no performance at issue in Milo & Gabby, and the athletic performances in Dryer, Ray, and Somerson were not independently protected by copyright, as Plaintiffs acknowledge. See Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 847 (2d Cir. 1997); Opp. at n.1. Moreover, the courts in Laws and Jules Jordan made clear that the right of publicity claims there fell within the subject matter of copyright because the plaintiffs in those cases were trying to use their "publicity rights" to prevent the copyright holders from exercising their lawful rights under Section 106. Laws, 448 F.3d at 1144; Jules Jordan, 617 F.3d at 1155.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

protection for publication of expressive works involving matters of public interest, their claims must be stricken for this independent reason.

### 1.    T3Media Did Not Waive Its First Amendment Rights.

As a threshold matter, Plaintiffs claim that T3Media "waived" its First Amendment rights because the Agreement between T3Media and the NCAA incorporates the NCAA Rules restricting "commercial use" of current students' names and likenesses.[10] This argument fails.

First, Plaintiffs are not parties to the T3Media/NCAA Agreement;[11] consequently, even if it provided some limitation on T3Media's constitutional rights (which it does not), Plaintiffs have no legal basis for enforcing those limitations. Murphy v. DirecTV, Inc., 724 F.3d 1218, 1233-1234 (9th Cir. 2013).  Moreover, even a third-party beneficiary of a contract may enforce only those rights that the written agreement indicates that it confers on the third party. Id. at 1234; see also Cal. Civ. Code § 1639 ("[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible").  The T3Media/

---

[10] Plaintiffs misstate the contents of T3Media's First Amended Answer ("FAA"), claiming that T3Media "admit[ted]" that it "did not obtain clearances." Opp. at 9.  In fact, the FAA states, after an objection, only that neither of the two named plaintiffs "expressly requested T3Media to license or promote the sale of student-athlete photographs."  Docket No. 45, ¶ 32.

[11] In each waiver case cited by Plaintiffs, the litigant arguing waiver was a party to the contract.  See e.g., Erie Telecomm'ns, Inc. v. City of Erie, Pa., 853 F.2d 1084, 1085 (3d Cir. 1988) (plaintiff challenged franchise agreements on grounds they infringed its First Amendment rights; defendant argued waiver); Leonard v. Clark, 12 F.3d 885, 889-890 (9th Cir. 1993) (union and its members sought to invalidate provision in collective bargaining agreement with city; city argued waiver); Paragould Cablevision, Inc. v. City of Paragould, Ark., 930 F.2d 1310, 1312 (8th Cir. 1991) ( plaintiff brought breach of contract and constitutional violation claims based on a cable television franchise agreement it entered into with defendant; defendant argued waiver); Navellier v. Sletten, 29 Cal. 4th 82, 94 (2002) ("a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract") (emphasis added); DaimlerChrysler Motors Co. v. Lew Williams, Inc., 142 Cal. App. 4th 344, 353-354 (2006) (plaintiff sued defendant for breach of contract for protesting after expressly agreeing not to do so; defendant argued provision was invalid, but Court held defendant had waived its right to protest).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

NCAA Agreement does not even imply, let alone state, that it is intended to benefit Plaintiffs.  To the contrary, their entire lawsuit is premised on the assertion that the Agreement (and the underlying NCAA Rules) operate to their detriment.  See generally, Docket No. 29.  Because Plaintiffs have not offered any legal theory under which they would be entitled to enforce the provisions of the T3Media/NCAA Agreement, their waiver argument fails.

Second, Plaintiffs have not demonstrated ███████████████████████, let alone a waiver of T3Media's constitutional right to disseminate expressive works.  See Motion at IV(B)(2); Opp. 12 (conceding photographs are expressive works entitled to First Amendment protection).  Because freedom of speech "is the matrix, the indispensable condition, of nearly every other form of freedom," the United States Supreme Court has held that waiver of that right cannot be found "in circumstances which fall short of being clear and compelling." Curtis Publ. Co. v. Butts, 388 U.S. 130, 145 (1967) (citation and quotation marks omitted).  The courts must "indulge every reasonable presumption against waiver," and require a showing that a purported waiver was knowing and intentional. Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (citations omitted; emphasis added).  But courts "need not concern [them]selves with the involuntariness or unintelligence of a waiver when the contractual language relied upon does not, on its face, even amount to a waiver." Fuentes v. Shevin, 407 U.S. 67, 95 (1972) (emphasis added). Nothing on the face of the T3Media/NCAA Agreement meets this strict standard.

Indeed, Plaintiffs' suggestion that the Agreement prohibits T3Media from licensing the photographs in the NCAA Photo Library, or restricts its ability to describe the content of the photographs to promote such licenses, makes no sense.

███████████████████████████████████████████████████

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 ████████████████████████████ Plaintiffs' flawed interpretation of

2 the T3Media/NCAA Agreement cannot withstand scrutiny.

3     Third, even if the Court looks beyond the face of the Agreement and examines

4 the NCAA Rules, Plaintiffs have not met their burden of proving a waiver.  Indeed,

5 Plaintiffs have not even provided copies of the applicable rules.  For example, they

6 attach a copy of the 2000-2001 NCAA Division III Manual, which was effective

7 from August 1, 1999 to July 31, 2001;[12] it expired long before the events alleged in

8 the FAC, and more than ten years before the operative date in the Agreement.[13]  See

9 DeStefano Decl. at Ex. B.  The other manual Plaintiffs submit – the 2013-2014

10 NCAA Division I Manual – is similarly inapposite; it applies only to Division I

11 players and schools.  See id. at Ex. B, § II ("Divisions I, II, and III each have a

12 separate Manual that contains legislation specific to the applicable division...").  Mr.

13 Maloney and Mr. Judge allege that they played for a Division **III** school, and all of

14 the photographs of Plaintiffs at issue here were taken at the 2001 Men's Division III

15 Basketball Championship.  See Weiser Decl., ¶ 10; Docket No. 29 at ¶¶ 72-75.[14]

16     Although the burden was entirely on Plaintiffs to prove that T3Media waived

17 its First Amendment rights, T3Media has provided the NCAA Manuals for the

18

19     [12] The 2001-2002 NCAA Division III Manual became effective on August 1,

20 2001.  DeStefano Decl. at Ex. A.

21     [13] ███████████████████████████████████████ Plaintiffs allege that T3Media acquired the right to license

22 copyrights for photographs in the NCAA Photo Library in January 2012.  Docket No. 29 at ¶ 16.

23     [14] None of the provisions in the NCAA Rules submitted by Plaintiffs would

24 apply to T3Media.  For example, Plaintiffs assert that the Rules prohibit use of student-athletes' images for "sale or use of a commercial product or service

25 ...." (Opp. at 9.)  But the display, dissemination, and licensing of copyrighted works is not a "commercial product or service."  See Section II(C), infra.  Plaintiffs also

26 identify a provision limiting what "member institutions" can do with "trading cards." (Opp. at 9.)  But T3Media is not a "member institution," and the photographs in the

27 NCAA Photo Library are not "trading cards."  Discovery responses from a third party in prior, unrelated litigation have no bearing whatsoever on T3Media's

28 responsibilities, if any, under the NCAA Rules.  Id.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  relevant time period and Division for the Court's review.[15]  Each of these manuals

2  contains a provision that expressly provides that the NCAA may designate and give

3  written approval to an agency to license and distribute photographs of student-

4  athletes, just as the Agreement gives to T3Media.  Rule 12.5.1.9.[16]

5         Plaintiffs have not alleged, nor did they submit any admissible evidence to

6  demonstrate, that T3Media violated any restrictions contained in the Rules with

7  respect to them.  Indeed, T3Media did not acquire licensing rights from the NCAA

8  until long after Plaintiffs had graduated.  See Docket No. 29, ¶ 71 (alleging Plaintiffs

9  graduated in 2001).  In any event, T3Media displayed thumbnail images on Paya.com

10  to demonstrate the content and quality of the photographs in which Plaintiffs are

11  depicted (Weiser Decl., ¶ 14) – an activity that is expressly permitted by Rule

12  12.5.1.9, since Plaintiffs were not enrolled student-athletes at the time.

13         In short, there is no basis whatsoever upon which Plaintiffs can claim that

14  T3Media "waived" its First Amendment rights.  This argument is a red herring.

15         **2.      The First Amendment Bars Plaintiffs' Claims As A Matter Of Law.**

16         Plaintiffs make clear that they do not dispute the constitutional protection

17  given to photographs; indeed, they dismissively refer to T3Media's briefing on this

18  point as "proving the obvious:  that photographs are expressive works and that they

19  receive constitutional protection."  Opp. at 12.  Yet having conceded this "obvious"

20  point, Plaintiffs fail to grasp that they have no legal basis for limiting constitutional

21  protection to non-profit publications, any more than they could prohibit newspapers,

22  magazines, book publishers, or movie studios from making a profit on the sale or

23

24  [15] Based on the operative date of the Agreement, and the allegations in the
25  FAC, the relevant NCAA Rules (if any) would be reflected in the NCAA's Division
    III Manuals for the years 2011-2012 (effective 8/1/2011), 2012-2013 (effective
    8/1/2012), 2013-2014 (effective 8/1/2013), and 2014-2015 (effective 8/1/2014).  See
26  Weiser Decl. at Ex. B; Henry Decl. at Exs. W-Z.

27  [16] ██████████████████████████████████████████████████████████████████
28  ███████████████████████████████████████████████████████████████████████

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  dissemination of their constitutionally-protected works.

2  Therein lies the fundamental flaw in Plaintiffs' lawsuit: the premise that a
3  constitutionally protected work loses its protection if it is "sold" or "licensed" for a
4  profit has been thoroughly and consistently rejected, including by the United States
5  Supreme Court. Mot. at 22; citing, inter alia, Joseph Bursteyn, Inc. v. Wilson, 343
6  U.S. 495, 501 (1952) ("[t]he fact that books, newspapers, and magazines are
7  published and sold for profit does not prevent them from being a form of expression
8  whose liberty is safeguarded by the First Amendment"). Consequently, no matter
9  how many times Plaintiffs repeat the buzzwords of "commercial use" or
10  "merchandise," the irrefutable fact is that the sale or licensing of expressive works
11  (like photographs) is neither, and the constitutional protections that attach to the
12  dissemination of such works (including photographs) are not impacted in the slightest
13  by the fact that they are "published and sold for profit." Id.

14  Caught up in the fallacy that "sale" converts fully-protected speech into
15  "commercial speech," Plaintiffs ignore the Motion's discussion of strict scrutiny,
16  thereby conceding that right-of-publicity claims are content-based restrictions on
17  speech that are presumptively invalid: where, as here, expressive works are
18  involved, application of strict scrutiny forbids a finding of liability except in
19  extraordinary cases. Mot. at 13-17. Applying the correct constitutional standard
20  makes Plaintiffs' discussion of "transformative use" irrelevant; although it is true that
21  a "transformative" use of an individual's name and likeness is protected, as the
22  California Supreme Court has recognized, that test cannot and does not define the
23  limit of constitutional protection for expressive works. Id. at n.21.

24  The Ninth Circuit has been careful to make this clear, despite Plaintiffs'
25  inaccurate assertion to the contrary. Indeed, in recent cases, the Court has expressly
26  stated that it was not foreclosing the existence of a broader First Amendment
27  protection for expressive works beyond what is protected under the "transformative
28  use" test. See, e.g., Keller v. Electronic Arts, 724 F.3d 1268 (9th Cir. 2013); Hilton

11

REPLY BRIEF
DWT 25412543v7 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

v. Hallmark, 599 F.3d 894, 912 (9th Cir. 2010).[17] Decades of jurisprudence supports this broader right: courts consistently hold that so-called "publicity" rights cannot limit the publication of expressive works involving matters of public interest. Mot. at 10; see also Henry Decl., Ex. AA, pp. 1-3.

But even without Plaintiffs' concession, there could be no serious doubt that the photographs at issue fall within this broad spectrum of constitutional protection, because they clearly involve matters of significant public interest.[18] The four photographs from the Paya.com site that depict either of Plaintiffs – which are the only photographs at issue here[19] – all involve their participation in the NCAA's 2001 Men's Division III Basketball Championship ("2001 Championship Game"), in which the Cinderella team from Catholic University clinched its first national title in any sport. See Henry Decl. at ¶¶ 7-10 and Exs. P-T. That win marked the 100th victory for Pat Maloney and his other senior teammates, and the 177th win for the team's coach – making him the winningest coach in Catholic University's then-90 year history. See Henry Decl. at ¶ 7 and Exs. Q and T. The victory made sports headlines across the nation, and is still being celebrated by the University a decade later. See Henry Decl. at ¶¶ 7-10 and Exs. P-U.

---

[17] Thus, Plaintiffs' bare citation to Keller and to In re NCAA Student-Athlete Name and Likeness Licensing Litigation ("NCAA Litigation"), 990 F. Supp. 2d 996, 1007 (N.D. Cal. Oct. 25, 2013), does not foreclose First Amendment protection here. Indeed, in a later stage of the NCAA Litigation proceedings, the district court rejected the plaintiffs' argument that "full-game broadcasts are not protected by the First Amendment because they constitute commercial speech." See 2014 WL 1410451, *9 (N.D. Cal. April 11, 2014).

[18] Similarly, Pooley v. Nat'l Hole-In-One Ass'n, 89 F. Supp. 2d 1108 (D. Ariz. 2000), which Plaintiffs rely upon, is inapposite here. That case – where the court found the defendant improperly used an athlete's image to promote its fundraising program – stands for the uncontroversial principle that the unauthorized use of a person's name and likeness in commercial advertisements for unrelated products or services may violate the person's right of publicity. There is no such claim here.

[18] Plaintiffs ignore the section of the Motion that discusses "public interest" as it is defined under the SLAPP statute; as those cases make clear, the subject matter – college athletics – is of substantial public interest. Mot. at 7-8.

[19] See note 1, supra.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Notably, Plaintiffs do not claim that this event was not a matter of public interest, nor do they claim that the four photographs depicting it, and the celebration that followed, did not involve matters of public interest. Indeed, they barely mention these four photographs. Instead, they make broad references to "other" photographs involving members of the putative class that were on the Paya.com site, and attempt to construct artificial limits on the constitutional protections for photographs that are wholly unsupported by controlling law.

For example, Plaintiffs' assertion that disseminating photographs of an event is somehow distinguishable from "reporting" on it or "publishing" about it is nonsensical. Opp. at 11. But as the cases cited in the Motion pointed out, photographs have routinely been recognized as "expressive" works, regardless of whether they include descriptive text, and irrespective of whether the picture conveys a particular "message." Mot. at 18-19.[20]

Moreover, on their face,[21] the four photographs of Plaintiffs convey information – both in the visual depiction, and in the accompanying captions. For example, both Plaintiffs are shown in the Team Photograph, which depicts the

---

[20] The fact that the photographs at issue involve sporting events also does not lessen their constitutional protection. As the United States Supreme Court long ago determined, the "line between the informing and the entertaining is too elusive" to serve as the basis for the disparate constitutional treatment of expressive works. Winters v. New York, 333 U.S. 507, 510 (1948).  See also Joseph Burstyn, 343 U.S. at 501 (reaffirming that a work's constitutional protection "is not lessened by the fact that [it is] designed to entertain as well as to inform"); Guglielmi v. Spelling-Goldberg Prods., 25 Cal. 3d 860, 867 (1979) (in rejecting a right-of-publicity claim, the California Supreme Court agreed that "entertainment is entitled to the same constitutional protection as the exposition of ideas").

[21] Winter v. DC Comics, 30 Cal. 4th 881, 891-892 (2003) ("courts can often resolve the [First Amendment] question as a matter of law simply by viewing the work in question …. Because of these circumstances, an action presenting this issue is often properly resolved on summary judgment or, if the complaint includes the work in question, even demurrer"); Sarver v. Hurt Locker LLC, 2011 U.S. Dist. LEXIS 157503, *25 (C.D. Cal. Oct. 13, 2011) (plaintiff's misappropriation claim "barred by the First Amendment as a matter of law); Gionfriddo v. Major League Baseball, 94 Cal. App. 4th 400, 410 (2001) (court must evaluate the works at issue); Dryer, 2014 WL 5106738, *4 -*6 (examining content of films at issue).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

winning team after it secured the 2001 NCAA national title.  See Weiser Decl., Ex. E.  Two men hold a large sign reading, "NCAA Basketball Championship 2001 National Champions Salem, VA."  Id.  Mr. Maloney also is shown in the foreground of the photograph, seated next to a large trophy; both he and Mr. Judge, who is shown kneeling behind Mr. Maloney, are smiling and extending their right index finger to signify the number one.  Id.  The editorial caption that accompanied this image on the Paya.com site reads: "17 MAR 2001: Catholic University poses with their championship trophy after defeating William Paterson University during the Men's Division 3 Basketball Championship held at the Salem Civic Center in Salem, VA.  Catholic University defeated William Paterson University 76-62 for the championship title.  Andres Alonso/NCAA Photos."  See concurrently-filed Supplemental Declaration of Ernest M. Weiser ("Suppl. Weiser Decl."), Ex. V; Docket No. 29, ¶ 73.  Even without the caption, the photograph conveys the message that Catholic University won an NCAA men's basketball championship game in Salem, VA in 2001; the caption expands upon that information.  There is no arbitrary minimum number of words that must be published for a photograph to obtain constitutional protection – nor are any words required at all.  But the Team Photograph and caption plainly "report" on a matter of public interest.[22]

The three remaining photographs depict Mr. Maloney, and each conveys information about what happened during the championship game.  For example, Mr. Maloney appears in one photograph with a competitor from William Paterson

---

[22] NCAA v. Bd. Of Regents of the Univ. of Okla., 468 U.S. 85, 117 (1984) (discussing public interest in intercollegiate athletics); Curtis Publ., 388 U.S. at 154-155 (finding public interest in article about college football); Gionfriddo, 94 Cal. App. 4th at 411, 415 (dissemination of information about baseball and baseball players protected by First Amendment); Montana, 34 Cal. App. 4th at 794 (dissemination of information about football protected by First Amendment); Somerson, 2013 U.S. Dist. LEXIS 106028 at *19 (dissemination of information about wrestling protected by First Amendment); C.B.C. Distribution v. Major League Baseball Advanced Media, 505 F.3d 818, 823 (8th Cir. 2007) (MLB players, names, biographies, and statistics were matters of public interest).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

University ("Maloney Photograph"). <u>See</u> Weiser Decl., Ex. F.  In this photograph, Mr. Maloney's competitor uses his right forearm to keep Mr. Maloney away from a basketball emblazoned with the acronym, "NCAA," which the competitor is dribbling with his left hand as both players charge down the court. <u>Id.</u>  The corresponding caption reads: "17 MAR 2001: Guard Horace Jenkins (15) of William Paterson drives past guard Pat Maloney (21) of Catholic University during the Men's Division 3 Basketball Championship held at the Salem Civic Center in Salem, VA.  Catholic University defeated William Paterson University 76-62 for the championship title.  Andres Alonso/NCAA Photos." <u>See</u> Suppl. Weiser Decl., Ex. V.

Mr. Maloney also appears in a photograph depicting a teammate grabbing a rebound ("Rebound Photograph"). <u>See</u> Weiser Decl., Ex. G.  The editorial caption for this image reads: "17 MAR 2001: Center Kurt Zeisler (42) of Catholic University pulls down a rebound against William Paterson University during the Men's Division 3 Basketball Championship held at the Salem Civic Center in Salem, VA.  Catholic University defeated William Paterson University 76-62 for the championship title.  Andres Alonso/NCAA Photos." <u>See</u> Suppl. Weiser Decl., Ex. V.

In the last of the four photographs, Mr. Maloney is seated on the bench as Catholic University's then-coach, Mike Lonegan, stands on the sidelines calling a play ("Lonegan Photograph"). <u>See</u> Weiser Decl., Ex. H.  The editorial caption reads: "17 MAR 2001: Catholic University head coach Mike Lonegan calls out a play on the sidelines against William Paterson University during the Men's Division 3 Basketball Championship held at the Salem Civic Center in Salem, VA.  Catholic University defeated William Paterson University 76-62 for the championship title.  Andres Alonso/NCAA Photos." <u>See</u> Suppl. Weiser Decl., Ex. V.

Each of the photographs depict events during and after the historic NCAA championship game.  The photographs and corresponding editorial captions plainly convey information about the championship.  T3Media's use of Plaintiffs' names and likenesses to "report" about a newsworthy event is constitutionally protected.

REPLY BRIEF
DWT 25412543v7 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 3.    Limitations On Commercial Speech And Advertising Of Commercial Products Have No Application Here.

Virtually all of the cases cited by Plaintiffs in their response to T3Media's First Amendment argument involve commercial speech (in the form of advertising for unrelated products or services). For example, Plaintiffs rely heavily on the Ninth Circuit's decision in <u>Downing</u>, which involved the use of the plaintiffs' images "in a catalog to promote [the defendant's] clothing" – a use that the court found was distinguishable from the cases cited in T3Media's Motion because it was "commercial." 265 F.3d at 1002 & n.2. T3Media is not using Plaintiffs' images to sell some unrelated product; the only conduct at issue is the publication of the photographs themselves, which is <u>not</u> commercial speech. <u>See</u> Section II.D.[23]

Similarly, Plaintiffs rely heavily on the district court's decision in a pending case, <u>Lightbourne</u>, which alleged the sale of merchandise bearing the plaintiff's image (including picture frames, calendars, and related items) as well as standalone photographs. <u>See</u> DeStefano Decl., Ex. D. The district court denied CBS's motion to dismiss, but did so on the grounds that the plaintiff had alleged sufficient facts in the complaint to avoid dismissal. <u>Id.</u> But mere allegations are not enough for Plaintiffs here to meet their evidentiary burdens under the SLAPP statute.

Neither of these cases, nor the other cases cited in the Opposition involving advertisements (Opp. at 18-19), have any bearing on the Court's decision here, in a case involving allegations about the publication of constitutionally-protected works.[24]

---

[23] Although the defendant in <u>Downing</u> pointed to an "article" in its clothing catalogue about surfers and surfing, the Ninth Circuit found only a "tenuous" relationship between the photograph depicting the plaintiff and the article. <u>Id.</u> at 1002. The court explained that "[t]he catalog did not explain that Appellants were legends of the sport and did not in any way connect Appellants with the story preceding it." <u>Id.</u> "In fact," the court continued, "the catalog incorrectly identifies where and when the photograph was taken." The court's reasoning strongly suggests that if the retailer had properly identified the photograph, and appropriately referenced the appellants in the article, the outcome might well have been different, despite its placement in a clothing catalogue.

[24] Even if Plaintiffs had shown that T3Media used their names and likenesses

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Finally, to the extent Plaintiffs rely on the fact that T3Media licenses expressive works for a fee, that argument also fails. As explained in the Motion and above, constitutional protections are not vitiated by the fact that expressive works are published and sold for profit. See Motion, § IV(B)(4); Section II.D. Thus, courts across the nation have recognized a constitutionally guaranteed right to sell a variety of expressive works, including books and magazines,[25] newspapers,[26] motion pictures,[27] and pictures, photographs, sculptures and other expressive material.[28]

---

to advertise the content of the photographs, which they did not, that advertising activity is subject to the same constitutional protections as the publication itself. See Motion at § IV(B)(4)). Plaintiffs do not directly address this point, or any of the cases cited, beyond noting that an advertisement of an expressive work does not receive constitutional protection if the underlying work is not protected. (Opp. 16 n.5.) Because the photographs and captions on T3Media's site are fully protected, (see Section II(C)(1), supra), advertisements of those works also are protected.

[25] See Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 64-65 n. 6 (1963) ("[t]he constitutional guarantee of freedom of the press embraces the circulation of books as well as their publication"); Smith v. California, 361 U.S. 147, 150 (1959) ("dissemination of books and other forms of the printed word further very familiar applications of these constitutionally protected freedoms"; "[i]t is of course no matter that the dissemination takes place under commercial auspices"); Martin v. City of Struthers, 319 U.S. 141, 143 (1943) ("[t]he right of freedom of speech and press … embraces the right to distribute literature … and necessarily protects the right to receive it"); Tattered Cover, Inc. v. City of Thornton, 44 P.3d 1044, 1051 (Co. 2002).

[26] City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 768 (1988) ("the circulation of newspapers is constitutionally protected"; "liberty of circulating is as essential to freedom of expression as liberty of publishing; indeed, without the circulation, the publication would be of little value"); OSU Student Alliance v. Ray, 699 F. 3d 1053, 1061 (9th Cir. 2013) ("[t]he circulation of newspapers is expressive conduct protected by the First Amendment"); Honolulu Weekly, Inc. v. Harris, 298 F.3d 1037, 1047 (9th Cir. 2002) ("it is beyond dispute that the right to distribute newspapers is protected under the First Amendment").

[27] Joseph Burstyn, 343 U.S. at 502 (fact that motion picture production is large-scale business conducted for private profit did not diminish First Amendment protection); Polydoros v. Twentieth Century Fox Film Corp., 67 Cal. App. 4th 318, 323-324 (1997) ("[f]ilm is a significant medium for the communication of ideas and, whether exhibited in theaters or on television is protected by constitutional guarantees of free speech").

[28] Hilton, 599 F.3d at 904-905 n. 7 (sale of greeting card featuring image of celebrity was conduct in furtherance of protected activity under Section 425.16(e)(4); Bery v. City of New York, 97 F. 3d 689, 695-696 (2nd Cir. 1996) (sale of pictures, photographs and sculptures protected by First Amendment; "[t]he sale of protected materials is also protected"); Welton v. City of Los Angeles, 18 Cal. 3d 497, 503 (1976) (sale of maps depicting addresses and routes to movie star homes protected by First Amendment);

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**C.    Plaintiffs' Claims Independently Are Barred By Section 3344(d)'s Exemption for "Public Affairs" and "Sports Accounts."**

Plaintiffs do not dispute that the subject matter of the photographs at issue are "public affairs" and "sports accounts" within the meaning of Section 3344(d).  But they attempt to read non-existent limitations into the statute.

For example, Plaintiffs assert that this Court should evaluate whether Section 3344's exemption applies by <u>ignoring</u> the content of the photographs, and imposing a requirement that their publication occur in connection with a separate "newsworthy account."  (<u>See</u> Opp. 17.)  Not surprisingly, Plaintiffs do not cite a single case to support this proposition.  Instead, courts routinely consider the content of the underlying works.  <u>See, e.g.,</u> <u>New Kids on the Block v. Nat'l Enquirer</u>, 971 F. 2d 302, 304 (9th Cir. 1992) (articles); <u>Gionfriddo</u>, 94 Cal. App. 4th at 406-407 (audiovisual works, photographs, and sports statistics); <u>Montana</u>, 34 Cal. App. 4th at 792 (posters); <u>Dora v. Frontline Video, Inc.</u>, 15 Cal. App. 4th 536, 540 (1993) (documentary).  Plaintiffs cite no authority even suggesting, let alone holding, that an expressive work about a newsworthy event must be incorporated into some other publication before it is eligible for Section 3344(d)'s exemption.  Indeed, <u>Montana</u> turns that ill-conceived notion on its head.  There, the court found exempt under Section 3344(d) the newspaper's sale in poster form of front pages commemorating the San Francisco 49ers' Super Bowl wins.[29]  34 Cal. App. 4th at 792.  Although the posters were standalone works, the court found they fell under Section 3344(d).

There is no rational distinction that can be made between the circumstances in <u>Montana</u> and the allegations here.  If anything, <u>Montana</u> demonstrates that photographs convey information by themselves, and any descriptive captions need not be literary masterpieces or even advance the discussion or debate of a

---

[29] These posters replicated photographs and an artist's rendition of Montana. <u>See</u> Henry Decl., Exs. CC and DD.

18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

newsworthy topic for the exemption to apply.  Instead, the California Court of
Appeal has made clear "the Legislature intended that the category of public affairs
[under Section 3344(d)] would include things that would not necessarily be
considered news," and should include works – whether informative, entertaining, or
both – that relate to "popular culture" and to "real-life occurrences."  Dora, 15 Cal.
App. 4th at 545-546 (emphasis added).[30]  If early-California surf culture satisfies
Section 3344(d) (id.), then works that convey information about newsworthy sporting
events in general (and an historic collegiate championship game in particular) easily
fall within the statute's exemption.[31]

The fact that T3Media sells copyright licenses for a profit does not change the
application of Section 3344(d).  Thus, this case is distinguishable from the cases cited
by Plaintiffs, which involve the use of the plaintiffs' names and likenesses to
advertise unrelated commercial products and services.[32]  Because the photographs
and editorial captions depicting and describing Plaintiffs' participation in a
newsworthy sporting event is exempted by Section 3344(d), Plaintiffs' right of

---

[30] Downing does not require a different conclusion.  In fact, the Downing Court did not even consider Section 3344(d)'s application.

[31] Relying on Lightbourne, Plaintiffs also contend that the photographs cannot constitute "sports accounts."  But as mentioned above, Lightbourne was decided in the context of a motion to dismiss, when the at-issue works were not before the court. Setting aside whether the Lightbourne decision was correct, it is clear that the photographs at issue here were displayed on Paya.com with descriptive captions that unquestionably convey factual information about a newsworthy sporting event.  As such, they constitute "sports accounts" within the meaning of Section 3344(d). Montana, 34 Cal. App. 4th at 794 (sale of posters exempt under 3344 (d); Montana's name and likeness appeared in posters "because [he] was a major player in contemporaneous newsworthy sports events").

[32] See Opp. at 18-19 (citing Fraley v. Facebook, Inc., 830 F. Supp. 2d 785, 792 (N.D. Cal. 2011) (use of Facebook members' photos in targeted advertisements to endorse third-party products and services); Abdul-Jabbar v. GMC, 85 F.3d 407, 409 (1996) (use of basketball star's former name in car advertisement); Jordan v. Jewel Food Stores, Inc., 743 F.3d 509, 519-20 (7th Cir. 2014) (use of basketball star's distinctive shoes in grocery store ad)).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

publicity claims must be dismissed.[33]

**D.     Plaintiffs' UCL Claim Also Is Constitutionally Barred**

Plaintiffs concede that the UCL is limited to the narrow category of commercial speech, and does not apply to expressive works. Opp. at 20-21. But they inaccurately claim that the photographs at issue are "commercial speech." Id. at 21-22.

The Ninth Circuit has adopted a three-prong test to determine whether speech is commercial. First, the court must consider whether the publication fits within the "core notion of commercial speech," which is speech that "does no more than propose a commercial transaction." Stutzman v. Armstrong, 2013 U.S. Dist. LEXIS 129204, *43-44 (E.D. Cal. Sept. 9, 2013) (quoting Dex Media West, Inc. v. City of Seattle, 696 F.3d 952 (9th Cir. 2012)). Second, in close cases, where the speech consists of "'mixed content'—that is, both commercial and non-commercial elements—the Ninth Circuit applies the Supreme Court's Bolger test." Id. In Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60 (1983), "the Supreme Court held that speech could properly be characterized as commercial when (1) the speech is admittedly advertising, (2) the speech references a specific product, and (3) the speaker has an economic motive for engaging in the speech." Id. (citing Am. Acad. of Pain Mgmt. v. Joseph, 353 F.3d 1099, 1106 (9th Cir. 2004)). Third, "even if the publication meets this threshold commercial speech classification," speech still receives full First Amendment protection, if the court determines that "commercial aspects of the speech are 'inextricably intertwined' with otherwise fully protected speech, such that the publication sheds its commercial character and becomes fully protected speech." Id. at *44-45.

Under this test, the photographs are not commercial speech. In Stutzman, for

---

[33] The exemption affords "a complete defense" to both statutory and common law right of publicity claims. New Kids, 971 F.2d at 310.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

example, the plaintiffs brought a UCL claim, among others, based on alleged misrepresentations in Lance Armstrong's books. Id. at *42.  Although the books were being sold for a profit, the court found that they were neither commercial products nor advertisements; consequently, the court found that the speech was not "commercial, and is afforded full First Amendment protection." Id. at *48.

Similarly, as Plaintiffs concede, the photographs at issue are expressive works depicting an historical sporting event.  Thus, disseminating them is not commercial speech.  See also Hilton, 599 F.3d at 905 n.7 (a card sold for profit "is not advertising the product; it is the product.  It is sold for a profit, but that does not make it commercial speech for First Amendment purposes") (emphasis in original).

Even if the photographs could be viewed as containing "mixed content" (which they clearly do not), they would be entitled to First Amendment protection, because any commercial aspects would be "inextricably intertwined" with the non-commercial aspect of the photographs.  E.g., Stutzman, 2013 U.S. Dist. LEXIS 129204 at *54 (promotional statements about Armstrong's books were protected speech because they "are inextricably bound to the non-commercial contents of the books."); see also William O'Neil & Co. v. Validea.com Inc., 202 F. Supp. 2d 1113, 1121 (C.D. Cal. 2002) (First Amendment barred UCL claim based on contents of non-fiction book); Henry Decl., Ex. BB, pp. 3-4.

Plaintiffs also do not dispute that their UCL claim is based on their statutory and common-law misappropriation claims, and must be dismissed if the underlying claims fail.  See, e.g., Daly v. Viacom, Inc., 238 F. Supp. 2d 1118, 1126 (N.D. Cal. 2002) (dismissing Plaintiff's UCL claim because her underlying claims, including the statutory and common-law misappropriation claims, failed).

### III.    PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF JUSTIFYING DISCOVERY AT THIS STAGE.

Plaintiffs' insinuation that they are entitled to discovery before the SLAPP Motion is adjudicated is simply untrue.  Federal courts regularly deny discovery until

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

after a court considers the merits of a pending SLAPP motion.  Where, as here, a SLAPP motion is based on legal deficiencies in the plaintiff's claims, there is no justification for conducting discovery.  <u>Global Telemedia Int'l, Inc. v. Doe 1</u>, 132 F. Supp. 2d 1261, 1271 (C.D. Cal. 2001).

Moreover, as the Ninth Circuit has held, applying analogous restrictions F.R.C.P. 56(d), discovery is not warranted before the adjudication of a SLAPP motion unless the plaintiff has established that the discovery is "essential" to oppose the motion.  <u>See</u> <u>Metabolife Int'l v. Wornick</u>, 264 F.3d 832, 846 (9th Cir. 2001); <u>New.Net, Inc. v. Lavasoft</u>, 356 F. Supp. 2d 1090, 1101 (C.D. Cal. 2004).[34]  Thus, plaintiffs seeking discovery must: "(1) set forth in affidavit form the <u>specific facts</u> that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are '<u>essential</u>' to resist the … motion." <u>Family Home & Fin. Ctr. v. Fed. Home Loan Mortg. Corp.</u>, 525 F.3d 822, 827 (9th Cir. 2008) (emphasis added).  <u>See also</u> <u>New.Net</u>, 356 F. Supp. 2d at 1101 (discovery showing requires particularity).

Plaintiffs failed to meet their burden.  No declaration identifies the <u>specific facts</u> that their counsel hopes to elicit through discovery. <u>Family Home</u>, 525 F.3d at 827.  Instead, Mr. DeStefano's declaration simply repeats almost verbatim the assertions in the Opposition.  <u>Compare</u> Opp. at 23-25 <u>with</u> DeStefano Decl., ¶ 11.  This alone justifies denial of the discovery request.  <u>Brae Transp., Inc. v. Coopers & Lybrand</u>, 790 F.2d 1439 (9th Cir. Cal. 1986).

Moreover, Plaintiffs fail to demonstrate why the facts sought are "essential" to oppose the Motion.  Plaintiffs simply offer broad topics for discovery, without any

---

[34] As the district court explained in <u>New.Net</u>, there is no practical difference between the "essential" standard of Rule 56(d) and the SLAPP statute's "good cause" standard.  365 F.3d at 1002.  "Both statutes confer discretion on the trial court to permit discovery in the face of a dispositive motion, in the appropriate case and upon a proper showing." <u>Id.</u>  Yet a Rule 56(d) motion may be granted only "where the nonmoving party has not had the opportunity to discover information that is <u>essential to its opposition</u>." <u>Id.</u> (original emphasis).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

explanation – let alone a particularized one – setting out why the specific facts sought are "essential" for them to oppose the SLAPP motion.

The reason for the lack of specificity is clear: no discovery can assist Plaintiffs in responding to the legal arguments raised in T3Media's Motion. Instead, courts regularly dismiss right of publicity claims at an early stage without discovery, based on arguments like those raised by T3Media here. See, e.g., Arenas v. Shed Media US Inc., 881 F. Supp. 2d 1181, *16-18 & n.1 (C.D. Cal. 2011) (striking plaintiff's right of publicity claim based, in part, on defendant's public interest defense); Sarver v. Hurt Locker LLC, 2011 U.S. Dist. LEXIS 157503, *16-25 (C.D. Cal. Oct. 13, 2011) (striking publicity claim on First Amendment grounds) (appeal pending); Daly., 238 F. Supp. 2d at 1123(dismissing publicity claims on grounds that reality TV program was an "expressive work"). Even assuming that the broad topics identified by Plaintiffs are "relevant" here, that does not demonstrate that discovery is "essential" for them to oppose the Motion.

For example, Plaintiffs' professed need for discovery concerning T3Media's agreements with the NCAA is not supported by any particularized showing. Family Home, 525 F.3d at 827 (upholding denial of motion for discovery because evidence sought was only "generically relevant" to the motion, and was not "essential" to opposing it). Plaintiffs already have a copy of the current Agreement; its only relevance to the Motion is to confirm that T3Media had the right to license copyrights to the at-issue photographs. Motion at § II. Plaintiffs offer no explanation whatsoever for how the negotiations or terms of the agreement are relevant, let alone "essential" to Plaintiffs' Opposition. See Fuentes, 407 U.S. at 95 (finding that only the agreement itself was relevant for waiver).

Similarly, Plaintiffs fail to establish that alleged "communications" between T3Media, the NCAA, and NCAA member institutions have any bearing on the issues raised in the Motion. None of these legal issues relies on T3Media's state of mind, nor the state of mind of the NCAA. Whether these communications would be

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

discoverable absent the SLAPP Motion is not the test, nor is a mere likelihood of uncovering new information a basis for justifying discovery.  See Nicosia v. DeRooy, 72 F. Supp. 2d 1093, 1111 (N.D. Cal. 1999) (court denied plaintiff's discovery request because the mere "possibility" that plaintiff could uncover new evidence did not satisfy strict requirements to take discovery during pendency of SLAPP motion).

Plaintiffs' alleged need for "discovery" into the NCAA rules is even more frivolous.  The rules are publicly available, as Plaintiffs demonstrated by submitting two different NCAA Manuals, from different time periods, in opposition.  Discovery is not justified where, as here, evidence is readily available from other sources.  See Paterno v. Superior Court, 163 Cal. App. 4th 1342, 1351 n.4 (2008) (failure to address threshold issue of whether information is "readily available from other sources or can be obtained through informal discovery" is grounds for denial of discovery under SLAPP statute); Mory v. City of Chula Vista, 2008 U.S. Dist. LEXIS 9911, *38 (S.D. Cal. Feb. 11, 2008) ("[c]ourts will deny 56(f) [now Rule 56(d)] motions if a party had prior opportunities to discover the information and if the information sought is irrelevant").

The remaining topics identified by Plaintiffs in their abbreviated discovery request are similarly irrelevant.  For example, although T3Media has provided the only four photographs of Plaintiffs that were available on Paya.com, Plaintiffs claim to need discovery into the contents of the website.  Opp. at 24.  Not surprisingly, Plaintiffs do not provide any explanation for how this information is "essential" to their opposition.  Global Telemedia, 132 F. Supp. 2d at 1271(denying request for discovery because it sought information that was irrelevant to the questions raised in the motion).

Plaintiffs also seek discovery about the reasons certain student-athletes were excluded from Paya.com.  But this is even more removed from the issues raised by the Motion.  Again, Plaintiffs offer no particularized showing of how this information even relates to their claims or the Motion.  Weiland Sliding Doors &

<u>Windows, Inc. v. Panda Windows & Doors, LLC</u>, 2010 U.S. Dist. LEXIS 105497, *2-5 (S.D. Cal. Oct. 4, 2010) (denying discovery because "scope of discovery is irrelevant to the anti-SLAPP motion").

Finally, whether or not T3Media negotiated or entered into agreements with other former athletes is irrelevant to the arguments in the Motion.  If such negotiations or agreements ever happened, they would not provide admissible evidence demonstrating a legal necessity to do so.  <u>See</u>, <u>e.g.</u>, <u>Novalogic, Inc. v. Activision Blizzard</u>, 2013 U.S. Dist. LEXIS 188298, *48 (C.D. Cal. June 18, 2013) ("[p]rior licensing activity is never an admission that a license is required"); <u>Polydoros</u>, 67 Cal. App. 4th at 326 ("obtaining 'clearance' establishes nothing, other than the unfortunate reality" that written releases help protect against "unmeritorious lawsuits such as this one").

In short, Plaintiffs have not met their burden of showing that the discovery they seek is even relevant, let alone "essential," to oppose T3Media's Motion.  Their failure to do so justifies denial of their request for discovery.  <u>See</u> <u>Manchester Resorts, L.P. v. Southwest Regional Council of Carpenters</u>, 2003 U.S. Dist. LEXIS 2392, at *19 (S.D. Cal. 2003) (where SLAPP motion is based on legal deficiencies found in plaintiff's claims, there is no justification for conducting discovery, because the court can evaluate the arguments as a matter of law).

DATED: November 17, 2014

By: _/s/ Kelli L. Sager_
         Kelli L. Sager
   Attorneys for Defendant
   T3Media, Inc. d/b/a Paya.com

REPLY BRIEF
DWT 25412543v7 0101261-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899