1   Elaine T. Byszewski (SBN 222304)
    elaine@hbsslaw.com
2   HAGENS BERMAN SOBOL SHAPIRO LLP
3   301 North Lake Avenue, Suite 203
    Pasadena, CA  91101
4   Telephone: (213) 330-7150
    Facsimile: (213) 330-7152
5
6   Robert B. Carey (*Pro Hac Vice*)
    rob@hbsslaw.com
7   Leonard W. Aragon (*Pro Hac Vice*)
    leonard@hbsslaw.com
8   John M. DeStefano (*Pro Hac Vice*)
    johnd@hbsslaw.com
9   HAGENS BERMAN SOBOL SHAPIRO LLP
10  11 West Jefferson Street, Suite 1000
    Phoenix, AZ  85003
11  Telephone: (602) 840-5900
    Facsimile: (602) 840-3012
12
13  *[Additional Counsel Listed on Signature Page]*

14  *Attorneys for Plaintiffs and the Proposed Class*

15
16              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
17                    WESTERN DIVISION

18  PATRICK MALONEY, on behalf of        No. 2:14-cv-05048-AB-VBK
    himself and all others similarly
19  situated, TIM JUDGE, on behalf of    **RESPONSE AND**
    himself and all others similarly     **MEMORANDUM OF POINTS**
20  situated,                            **AND AUTHORITIES IN**
                                         **OPPOSITION TO**
21                        Plaintiffs,    **DEFENDANT'S SPECIAL**
                                         **MOTION TO STRIKE**
         v.                              **PLAINTIFFS' FIRST AMENDED**
22                                       **COMPLAINT**
    T3Media, INC. D/B/A PAYA.COM,
23  a Colorado corporation,              **[PUBLIC REDACTED VERSION]**

24                        Defendant.     Hearing Date: December 1, 2014
                                         Time:              10:00 a.m.
25                                       Courtroom:     790

26
27
28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................. 1

II.  LEGAL STANDARD ......................................................... 3

III.  ARGUMENT ..................................................................... 3

    A.  Plaintiffs' Claims Are Not Preempted by the Copyright Act ......... 3

    B.  The Misappropriation by T3Media Is Not Protected by the First Amendment .................................................................. 8

        1.  The NCAA And By Extension T3Media Waived Their First Amendment Rights By Promising They Would Not Commercially Exploit Student-Athlete Likenesses ....... 8

        2.  The First Amendment Does Not Protect T3Media's Sale of NCAA Student-Athlete Likenesses .................................... 11

    C.  The Newsworthiness Exemption Does Not Apply to Defendant's Misappropriation of Student-Athletes' Likenesses ........................ 16

    D.  Defendants' Use Of Names And Likenesses To Promote Photograph Sales Is Commercial Speech Subject To The UCL .... 20

    E.  Rule 56(d) Requires Denial Of The SLAPP Motion Because Plaintiff Requires Additional Discovery To File A Full Opposition .......... 22

IV.  CONCLUSION ................................................................. 25

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Abdul-Jabbar v. GMC,*
    85 F.3d 407 (9th Cir. 1996) ................................................................. 18

5

*Aldrin v. Topps Co.,*
    2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) .............................. 14, 15

6

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,*
    805 F.2d 663 (7th Cir. 1986) ............................................................. 5, 6

7

8

*Brinkley v. Casablancas,*
    80 A.D.2d 428 (1981) ............................................................................ 7

9

*Brown v. Ames,*
    201 F.3d 654 (5th Cir. 1990) ................................................................. 6

10

11

*Browne v. McCain,*
    611 F. Supp. 2d 1062 (C.D. Cal. 2009) .................................... 3, 17, 22

12

*Cher v. Forum Int'l Ltd.,*
    692 F.2d 634 (9th Cir. 1982) ............................................................... 21

13

14

*Comedy III Prods., Inc. v. Gary Saderup, Inc.,*
    25 Cal. 4th 387, 106 Cal. Rptr. 2d 126 21 P.3d 797 (2001) ............... 16

15

*Conder v. Home Sav. of Am.,*
    680 F. Supp. 2d 1168 (C.D. Cal. 2010) ............................................... 21

16

17

*Cusano v. Klein,*
    473 Fed. App'x 803 (9th Cir. 2012) ...................................................... 6

18

*DaimlerChrysler Motors Co. v. Lew Williams, Inc.,*
    142 Cal. App. 4th 344 (2006) .............................................................. 10

19

20

*Dora v. Frontline Video Inc.,*
    15 Cal. App. 4th 526 (Cal. Ct. App. 1993) ..................................... 12, 13

21

*Downing v. Abercrombie & Fitch,*
    265 F.3d 944 (9th Cir. 2001) ................................................. 3, 4, 5, 6, 7

22

23

*Dryer v. NFL,*
    No. 09-2182, 2014 WL 5106738 (D. Minn. Oct. 10, 2014) .................. 5

24

*Erie Telecomms. v. Erie,*
    853 F.2d 1084 (3d Cir. 1988) ................................................................ 9

25

26

*Fleet v. CBS, Inc.,*
    50 Cal. App. 4th 1911 (Cal. App. 1996) ................................................ 6

27

28

*Fraley v. Facebook, Inc.*,
 830 F. Supp. 2d 785 (N.D. Cal. 2011).......................................................... 18

*Gionfriddo v. Major League Baseball*,
 94 Cal. App. 4th 400 (Cal. Ct. App. 2001).................................................. 13

*Hilton v. Hallmark Cards*,
 599 F.3d 894 (9th Cir. 2010)............................................................... 12, 21

*Jordan v. Jewel Food Stores, Inc.*,
 743, F.3d 509, 519-520 (7th Cir. 2014)....................................................... 18

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
 617 F.3d 1146 (9th Cir. 2010) .................................................................... 5

*Kasky v. Nike, Inc.*,
 45 P.3d 243 (Cal. 2002).......................................................................... 20, 21

*Laws v. Sony Music Ent., Inc.*,
 448 F.3d 1134 (9th Cir. 2006) ...................................................................... 6

*Leonard v. Clark*,
 12 F.3d 885 (9th Cir. 1993) .......................................................................... 9

*Lightbourne v. Printroom Inc.*,
 No. SACV-13-876, Dkt. No. 107 (C.D. Cal. Sept. 8, 2014).............. 5, 11, 15, 18

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
 2014 WL 1411849 (W.D. Wash. Apr. 11, 2014) ............................................ 6

*Muirbrook v. Skechers USA Inc.*,
 2012 WL 5456402 (C.D. Cal. Nov. 6, 2012) ................................................. 4

*Navellier v. Sletten*,
 29 Cal. 4th 82 (2002).................................................................................. 10

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation*,
 990 F. Supp. 2d 996 (N.D. Cal. Oct. 25, 2013).......................................... 11

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation
 (Keller v. Electronic Arts)*,
 724 F.3d at 1283 ................................................................................... 11, 16

*New.Net, Inc. v. Lavasoft*,
 356 F. Supp. 2d 1090 (C.D. Cal. 2004)....................................................... 22

*Newcombe v. Adolf Coors Co.*,
 157 F.3d 686 (9th Cir. 1998)....................................................................... 20

*Page v. Something Weird Video*,
 960 F. Supp. 1438 (1996) ........................................................................... 16

*Paragould Cablevision, Inc. v. Paragould*,
 930 F.2d 1310 (8th Cir. 1991) .................................................................... 10

*People v. Fogelson,*
21 Cal. 3d 158 (1978) ........................................................................ 16

*Pooley v. Nat'l Hole-In-One Ass'n,*
89 F.Supp.2d 1108 (D. Ariz. 2000) ................................................... 11

*Ray v. ESPN, Inc.,*
2014 WL 2766187 (W.D. Mo. Apr. 8, 2014) ...................................... 6

*Rezec v. Sony Pictures Entm't, Inc.,*
116 Cal. App. 4th 135, 10 Cal. Rptr. 3d 333 (2004) .......................... 21

*Schwartz v. At The Cove Mgmt. Corp.,*
No. 12CV3077-GPC WVG, 2013 WL 1103479 (S.D. Cal. Mar. 14,
2013) ................................................................................................ 22

*Somerson v. McMahon,*
956 F. Supp. 2d 1345 (N.D. Ga. 2012) .......................................... 6, 15

*Somerson v. World Wrestling Entertainment, Inc.,*
956 F. Supp. 2d 1360 (N.D. Ga. 2013) ............................................ 15

*Stutzman v. Armstrong,*
No. 2:13-CV-00116-MCE, 2013 WL 4853333 (E.D. Cal. Sept. 10,
2013) ................................................................................................ 21

*Timed Out LLC v. Youabian Inc.,*
177 Cal. Rptr. 3d 773 (Cal. App. 2014) ............................................. 4

*Toney v. L'Oreal USA, Inc.,*
406 F.3d 905 (7th Cir. 2005) .............................................................. 6

*William O'Neil & Co. v. Validea.com Inc.,*
202 F. Supp. 2d 1113 (C.D. Cal. 2002) ............................................ 21

*Zacchini v. Scripps-Howard Broadcasting Co.,*
33 U.S. 562 (1977) ............................................................................. 7

**Statutes**

Cal. Civ. Code § 3344 ............................................................ 16, 17, 18, 19

Cal. Civ. Code § 17200 ............................................................................ 20

Cal. Civ. Proc. Code § 425.16(b)(1) ........................................................ 3

Rule 12(b)(6), Fed R. Civ. P. ................................................................. 23

Rule 56, Fed. R. Civ. P. ..................................................................... 22, 25

**Other Authorities**

1 NIMMER ON COPYRIGHT § 1.01[B][1][c] (2007 rev.) ................................ 6

1

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 46, comment i, at 536
   (1995)...................................................................................................................... 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant T3Media has marketed and sold digital photographs of student-athletes to consumers for "personal use," limited to "desktop wallpaper, poster art, etc." and "non-commercial art use," on its website at www.Paya.com.  The retail sale of these photographs is a commercial use of the student-athletes' valuable names, images, and likenesses (for convenience, collectively "likenesses").  As such it violates their rights of publicity.

The student-athletes are all amateurs who agreed to forgo profiting from their likenesses in order to compete in NCAA–sanctioned events. (Nov. 10, 2014 Declaration of John DeStefano ("DeStefano Decl.") ¶¶ 2-4 & Ex. A-C.) The NCAA and its member institutions also agreed not to use NCAA student-athletes' likenesses for commercial purposes. (DeStefano Decl. ¶¶ 2-4 & Ex. A-C.) ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ (Dkt. No. 45, Def. First Am. Ans. ¶ 32; Dkt. No. 36-1, Declaration of Ernest M. Weiser in Support of Defendant's Notice of Motion to Strike Plaintiffs' First Amended Complaint ("Weiser Decl."), Ex. B.)

T3Media's Special Motion to Strike ignores that it is acting as an agent for a principal that has promised not to commercially exploit the likeness rights of the collegiate athletes and does not purport to convey likeness rights when it sells its own intellectual property.  T3Media instead characterizes its role as that of a media organization peddling sports reporting.  From this contrived posture, T3Media attempts to force Plaintiffs' allegations into a series

of ill-fitting legal doctrines by arguing (1) that Plaintiffs' claims are preempted by the federal Copyright Act; (2) that the First Amendment protects the retail sale of student-athlete likenesses as a matter of public interest; (3) that T3Media's sales are exempt from the right of publicity statute because they constitute "news," "public affairs," or a "sports account"; and (4) that T3Media's marketing of student-athlete likenesses does not constitute commercial speech under the California Unfair Competition Law ("UCL").

T3Media's arguments crumble under even the slightest scrutiny, as does T3Media's premature and unsupported request that the Court strike Plaintiffs' class allegations.  It is well settled that the copyright in a photograph, as opposed to a musical or dramatic performance, does not preempt an individual's right to control the commercial exploitation of his image. T3Media can claim no First Amendment right to sell photographs of Plaintiffs and the class because the NCAA and T3Media waived their right to use their images commercially.  Regardless, the First Amendment would not protect this use because the use is not transformative and there is no public interest exception for the retail sale of athlete photographs.

As to the statutory exemptions, T3Media's statements and agreements confirm that it is engaging in the retail sales of photographs, not the reporting exception covered under the "news," "public affairs," or "sports account" exceptions. The possibility that images may have informational value in some other context does not change the nature of T3Media's commercial use, which is simply to profit from the retail sale of the likenesses for personal use as mousepads and desktop wallpaper.  Nor does it change the fact that many of the photographs were taken outside of the game context.  Finally, T3Media's commercial marketing and sale of the images constitutes commercial speech for purposes of the UCL.

## II.    LEGAL STANDARD

To meet their burden under the SLAPP statute, Plaintiffs must demonstrate a probability of prevailing on their claim.  *See* CAL. CIV. PROC. CODE § 425.16(b)(1).  Courts interpret the term, "probability," as meaning "a mere possibility that an event will occur."  *See Browne v. McCain*, 611 F. Supp. 2d 1062, 1069 (C.D. Cal. 2009) (quoting OXFORD ENGLISH DICTIONARY (2005)). To show a "probability" of prevailing under § 425.16, a "plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Browne* thus concluded that the more lenient meaning of "possibility" is the better approach "because it would require that the plaintiff show a mere possibility of success and only a plaintiff's suit that lacks even minimal merit will be unable to satisfy this standard."  *Id*.  Plaintiffs' claims easily meet this standard.

## III.    ARGUMENT

### A.    Plaintiffs' Claims Are Not Preempted by the Copyright Act

T3Media argues that Plaintiffs' right-of-publicity claims are preempted by the Copyright Act because the unauthorized use of their names and likeness appear in a copyrightable photograph. This argument fails under *Downing v. Abercrombie & Fitch*, 265 F.3d 944 (9th Cir. 2001), controlling Ninth Circuit precedent distinguishing between the unauthorized use of a name or likeness in a photograph and the use of a copyrightable "performance." T3Media does not so much as cite, let alone distinguish, this precedent adverse to its position.

As the Ninth Circuit outlined in *Downing,* a successful copyright preemption defense requires that two conditions be met: (1) "the content of the protected right must fall within the subject matter of copyright as

described in [Sections 102 and 103 of the Copyright Act]," and (2) "the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of [the Act]." 265 F.3d at 1003. The Court went on to explain that a right-of-publicity claim based on the use of a plaintiff's name or likeness in a copyrighted photograph does not fall within the "subject matter of copyright" because "it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for [the] claims, but rather, it is the use of the [plaintiffs'] likenesses and their names pictured in the published photograph." *Id.*

*Downing* held that a right-of-publicity claim based on the unauthorized use of a name or likeness is *categorically not preempted* by the Copyright Act because "[a] person's name or likeness *is not* a work of authorship within the meaning of [the Act] . . . . notwithstanding the fact that [plaintiffs'] names and likenesses are embodied in a copyrightable photograph." 265 F.3d at 1004 (emphasis added); *see also Muirbrook v. Skechers USA Inc.*, 2012 WL 5456402 at *3 (C.D. Cal. Nov. 6, 2012) ("The fact that [p]laintiff's right of publicity has allegedly been misappropriated via publication of a copyrighted work does not transmute this action into an issue over the ownership or infringement of a copyrighted work.").  The California Court of Appeals reaffirmed this distinction just months ago, holding that (1) right of publicity claim for the unauthorized use of likenesses is not preempted by the Copyright Act even though likenesses are embodied in a copyrightable work such as a photograph, and (2) state right of publicity laws do not fall with in the subject matter of copyright. *Timed Out LLC v. Youabian Inc.*, 177 Cal. Rptr. 3d 773, 783 (Cal. App. 2014) ("[I]t is not the publication of the photographs themselves that is the basis for Plaintiff's claims. Rather, it is Defendants' use of the Models' likenesses pictured in the photographs to promote Defendants'

business that constitutes the alleged misappropriation." (citing 1 NIMMER ON COPYRIGHT, § 1.01 [B][1][c] (2013))).

*Downing*'s holding and its application in this case is clear, and none of the authorities relied upon by T3Media tell otherwise. This district has already rejected the preemption defense in a similar case involving the sale of NCAA student-athlete photographs.  (DeStefano Decl. ¶ 5 Ex. D, Civil Minutes - General, *Lightbourne v. Printroom Inc.*, No. SACV-13-876, Dkt. No. 107 (C.D. Cal. Sept. 8, 2014)).  As Judge Staton explained in *Lightbourne*, a putative nationwide class action alleging that defendants unlawfully used photos of NCAA student-athletes on the website Printroom.com, "it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for [right of publicity] claims, but rather, it is the use of the [plaintiffs'] likenesses and their names pictured in the published photograph." *Id.* at 12 (quoting *Downing*, 265 F.3d at 1003-04).

Indeed, most of T3's citations are wholly inapplicable because they involve the use of copyrightable *performances*, and many of them specifically distinguish those performance-based claims from claims, like Plaintiffs', involving photographs.  T3Media makes much of the holding of *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146 (9th Cir. 2010), but *Jules Jordan* found preemption of an actor's publicity rights claims associated with a recorded performance—where the actor himself also brought a copyright claim relating to the performance.  Similarly, *Dryer v. NFL*, No. 09-2182, 2014 WL 5106738 (D. Minn. Oct. 10, 2014) addressed dramatically narrated video montages, edited for purposes of storytelling and opinion, rather than photographs.[1]  *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (Cal. App. 1996),

---

[1] To the extent it holds or implies that an athletic performance itself is copyrightable, *Dryer* conflicts with the weight of authority and commentary. T3Media cites *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805

1
2
3
4
5
6
7
8
9

involved claims based on dramatic performances, so the *Downing* court held that case to be "clearly distinguishable from this case where the Appellants' claim is based on the use of their names and likenesses, which are not copyrightable." 265 F.3d at 1005 n.4.  Similarly, in *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006), the court found preemption of a copyrightable vocal performance.  Out-of-circuit cases such as *Somerson v. McMahon*, 956 F. Supp. 2d 1345 (N.D. Ga. 2012), and *Ray v. ESPN, Inc.*, 2014 WL 2766187 (W.D. Mo. Apr. 8, 2014), concern video recordings of dramatic wrestling-entertainment performances rather than photographs.

10
11
12
13
14
15
16
17
18

T3Media presents only a small handful of cases involving photographs, and these cases make no attempt to distinguish *Downing*, the controlling Ninth Circuit precedent.  *See Milo & Gabby, LLC v. Amazon.com, Inc.*, 2014 WL 1411849 (W.D. Wash. Apr. 11, 2014) (finding preemption where plaintiff had brought both copyright and right of publicity claims, and "[p]laintiffs' right of publicity claim replicates [p]laintiffs' copyright infringement claim"); *Cusano v. Klein*, 473 Fed. App'x 803 (9th Cir. 2012) (non-precedential unpublished opinion mentioning "stills" from video footage, but making no attempt to address *Downing*).

19
20

Photographs routinely support valid right-of-publicity claims notwithstanding the Copyright Act.  T3Media attempts to limit those to

21
22
23
24
25
26
27
28

F.2d 663 (7th Cir. 1986) for the same premise, but that decision "has been heavily criticized for holding that a baseball game is a protectable work of authorship simply because the performance was recorded on videotape that was itself copyrightable." *Brown v. Ames*, 201 F.3d 654, 659 (5th Cir. 1990); *see also Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 911 (7th Cir. 2005) (narrowing scope of *Baltimore Orioles*); 1 NIMMER ON COPYRIGHT § 1.01[B][1][c] (2007 rev.) (criticizing *Baltimore Orioles*); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 46, comment i, at 536 (1995) (rejecting *Baltimore Orioles* and noting that "ownership of copyright in a work that embodies the likeness or other indicia of a person's identity will not prevent the imposition of liability . . . if the copyrighted work is used in a manner that infringes the person's right of publicity."). Its holding has never been adopted by the Ninth Circuit and cannot be reconciled with the Ninth Circuit's decision in *Downing*, as discussed above.

"[c]ases involving the use of a photograph in an advertisement, or in connection with an unrelated product." (Mot. at 11 n.12.)   But *Downing*'s holding did not rely on the fact that the photographs at issue were published as part of an advertising campaign, or that their use insinuated the plaintiffs' endorsement of the defendants' products. Indeed, *nowhere* in the opinion's discussion of copyright preemption does the Court even mention the fact that the photographs were used in an advertising context—much less does it rely on that fact in holding that copyright preemption does not apply to right-of-publicity claims based on the use of names and likenesses. *See* 265 F.3d at 1003–1005.[2]   To accept T3Media's argument would nullify name and likeness rights that have coexisted with the Copyright Act and been enforced for decades.  *See, e.g.*, *Zacchini v. Scripps-Howard Broadcasting Co.*, 33 U.S. 562, 575-76 (1977) (recognizing that the right of publicity protects interests parallel, but not identical, to patent and copyright laws); *Brinkley v. Casablancas*, 80 A.D.2d 428, 438-442 (1981) (holding that an unauthorized distribution of a poster containing a model's likeness is actionable).

Finally, there is no merit to T3Media's argument that Plaintiffs' UCL claim is preempted.  T3Media concedes that "Plaintiffs' UCL claim derives from the same premise as their right-of-publicity claims." (Mot. at 13.) Because Plaintiffs' likenesses do not fall within the subject matter of Copyright Law, a UCL claim founded upon the misuse of those likenesses is similarly not preempted.

---

2   The *Downing* Court did discuss the issue of whether the photographs at issue could be construed as the plaintiffs' "endorsement" of the defendant's products, but that discussion was only in the context of the plaintiffs' Lanham Act claims, which require proof of likelihood of confusion—not the plaintiffs' right-of-publicity claims, which have no such requirement. *See* 265 F.3d at 1007–1009.

**B.** **The Misappropriation by T3Media Is Not Protected by the First Amendment**

    **1.** **The NCAA And By Extension T3Media Waived Their First Amendment Rights By Promising They Would Not Commercially Exploit Student-Athlete Likenesses**

While T3Media insists that the First Amendment grants it a right to misappropriate student-athletes' likenesses, T3Media's contract with the NCAA actually governs. ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ ██████████████████

Ostensibly to preserve the "amateurism" model of the multibillion dollar intercollegiate athletics industry, NCAA Rules prohibit T3Media from selling photographs of current NCAA student-athletes on its website for commercial purposes, and even prohibit current student-athletes from granting consent to have their photos sold on the website.  (FAC ¶¶ 58-59; DeStefano Decl., at Ex. B, 2013-2014 NCAA Constitution, § 2.9, 2.15, (defining the principle of amateurism and declaration that student-athletes should be protected from exploitation by professional and commercial enterprises); DeStefano Decl. Ex. A, 2000-2001 Division III NCAA Bylaws, Article 12 (defining amateurism and carefully delineating when a student-athletes' likeness may be used, none of which apply to T3 Media's use); DeStefano Decl. Ex. B, 2013-2014 Division I NCAA Bylaw Article 12 (same).

For example, NCAA Bylaw 12.5.2 governing Division III athletes who played in the 2000-2001 timeframe, such as Plaintiffs, broadly prohibits a student-athlete or an NCAA member institution from permitting "the use of [a student-athlete's] name or picture to advertise, recommend or promote

directly the sale or use of a commercial product or service of any kind."
(DeStefano Decl. Ex. A at p.65-66.)  Similarly, Bylaw 12.5.1.1.3 states that
NCAA member institutions "may distribute but may not sell player/trading
cards that bear a student-athlete's name or picture."  (DeStefano Decl. Ex. A at
p. 63.)  Bylaw 12.5.1.10 provides that a student-athlete's picture "may appear
in a poster that promotes an NCAA championship" (DeStefano Decl. Ex. A at
p.65) but the NCAA admits that championship promotion extends no farther
than the promotion of the event itself and does not include commercial uses.
(DeStefano Decl. Ex. C, NCAA's Feb. 16, 2011 Resp. to Antitrust Plaintiffs'
First Set of Interrogatories, *In re NCAA Student-Athlete Name & Likeness
Licensing Litig.*, at 17-18.) In its sworn discovery responses from the
*Keller/O'Bannon* litigation, the NCAA even stated that it "does not license, sell,
use, display, or monetize current NCAA student-athletes' Names, Images or
Likenesses in connection with participation in intercollegiate athletics."
(DeStefano Decl. Ex. C at 10-11.)

██████████████████████████████████████████

T3Media cannot now claim its First Amendment rights are now being
infringed.  *Leonard v. Clark*, 12 F.3d 885, 889-90 (9th Cir. 1993) (affirming
district court decision not to reach the issue of whether a labor union's free-
speech rights had been violated where the district court had first determined
that the union waived its First Amendment protections in a collective
bargaining agreement); *Erie Telecomms. v. Erie*, 853 F.2d 1084, 1096 (3d Cir.
1988) ("constitutional rights, like rights and privileges of lesser importance,
may be contractually waived").

        To be sure, T3Media could have obtained clearances from student-
athletes *after* they left school.  But T3Media admits it did not obtain clearances.
(Dkt. No. 45, Def. First Am. Ans. ¶ 32.) ████████████████████████

1 ███████████████████████████████████████████

2 █████████████████████████████████████████

3 ██████████████████████████████████████████████

4 ██████████████████████████████████

5 ████████ T3Media cannot now turn to the First Amendment to "recapture

6 surrendered rights." *See Paragould Cablevision, Inc. v. Paragould*, 930 F.2d 1310,

7 1314 (8th Cir. 1991). Nor does the anti-SLAPP statute aid T3Media in

8 recovering a waived right. "[A] defendant who in fact has validly contracted

9 not to speak or petition has in effect 'waived' the right to the anti-SLAPP

10 statute's protection in the event he or she later breaches that contract."

11 *Navellier v. Sletten*, 29 Cal. 4th 82, 94 (2002).

12       Accordingly, where a party waives a First Amendment right by contract,

13 the party's breach of that contract "alone is likely sufficient minimum proof to

14 overcome an anti-SLAPP motion." *See DaimlerChrysler Motors Co. v. Lew*

15 *Williams, Inc.*, 142 Cal. App. 4th 344, 352 (2006). The court affirmed the denial

16 of an anti-SLAPP motion where defendant asserted the motion based on its

17 exercise of a potential constitutional right that it had relinquished by contract.

18 The court blasted defendant's attempt to invoke the anti-SLAPP statute's

19 protections for its contract breach:

20     … Keil waived the very constitutional right it seeks to
vindicate with this motion.… Keil waived its right to

21     protest, then duplicitously protested. It should not be
allowed to shield itself from liability under cloak of a

22     statute designed to protect a right Keil voluntarily
relinquished in return for economic benefits it now

23     holds.
[*Id.* at 354.]

24

25 █████████████████████████████████████████

26 ████████████████████████████████████████████

27 ████████████████████████████████████████████

28

1

2   ██████████████████████████████████████████ Hence, the facts and

3   allegations support the possibility that a jury could find that any First

4   Amendment protection for the sale of the images was waived.

5         **2.   The First Amendment Does Not Protect T3Media's Sale of NCAA Student-Athlete Likenesses**

6

7         Waiver aside, it is well-settled that the First Amendment does not permit

8   corporations to exploit amateur NCAA student-athletes' likenesses for

9   commercial purposes. *In re NCAA Student-Athlete Name & Likeness Licensing*

10  *Litigation (Keller v. Electronic Arts)*, 724 F.3d at 1283 (rejecting videogame

11  manufacturer's claim that use of student-athletes' likenesses in videogames

12  was protected by the First Amendment); *In re NCAA Student-Athlete Name &*

13  *Likeness Licensing Litigation*, 990 F. Supp. 2d 996, 1007 (N.D. Cal. Oct. 25, 2013)

14  (rejecting claim that First Amendment protected defendants' use of NCAA

15  student-athletes' likenesses in broadcasts of NCAA football and basketball

16  games, including "promotional highlight films and stock footage sold to

17  advertisers, because it was used primarily for commercial purposes"); *see also*

18  *Pooley v. Nat'l Hole-In-One Ass'n*, 89 F.Supp.2d 1108, 1110 (D. Ariz. 2000)

19  (holding that First Amendment did not bar right of publicity claim by

20  professional golfer against private company for using footage of golfer's hole-

21  in-one to promote fundraising events).

22        T3Media nonetheless argues that it can use student-athletes' photos

23  because they "depict and describe events that involve matters of public

24  interest." (Mot. at 17.)  T3Media's argument fails because "the images of

25  student-athletes sold by [T3Media] are not used to report on, publish and

26  express matters in the public interest."  (DeStefano Decl. Ex. D, *Lightbourne*,

27

28

C.D. Cal. No. SACV-13-876, Dkt. No. 107, at 7.)  Instead, they are sold as on-demand merchandise to retail consumers and others.

T3Media devotes several pages of briefing to proving the obvious: that photographs are expressive works and that they receive First Amendment protection. Plaintiffs do not challenge the First Amendment right to take photographs.[3]  Plaintiffs challenge T3Media's bald commercialization of their names and likenesses by marketing those photographs for sale ████████ ████████████████████████████████████████████████████████████ ████  T3Media cites dozens of cases with no relevance here because the use of the likenesses clearly involved news and commentary on public affairs in various forms—not the sale of a photographic likeness on its own. (Mot. at 16-17 & n.20.)  In *Dora v. Frontline Video Inc.*, 15 Cal. App. 4th 526, 545 (Cal. Ct. App. 1993), for example, the court held that the public affairs exception applied to a documentary film regarding surfing. A film about surfing is unlike a commercial website selling photographs as decorative on-demand merchandise.

*Downing* provides the better comparison.  In *Downing*, surf legends sued a clothing retailer under § 3344 for misappropriating their names and likenesses in the company's spring catalogue.  The retailer argued that the use was in the public interest because surfing was immensely popular and "influenced speech, behavior, dress, and entertainment among other things." 265 F.3d at 1002.  The Ninth Circuit rejected the argument because "there was

---

[3] In footnote 21 of its Motion, T3Media concedes that the photographs are not "transformative" as to the likeness of the individual such that they would qualify for the protections of California's transformative-use test. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 909 (9th Cir. 2010).  The Court need not join T3Media in speculating as to how the transformative use test might apply to a photograph in a different case.  *Hilton* entertained—and rejected—a public interest defense independently of the transformative-use test.  *Id.* at 912 ("Hallmark cannot employ the 'public interest' defense because its birthday card does not publish or report information.").

a tenuous relationship between [the photos] and the theme [surfing] presented." *Id.* The photos were being used to sell clothing, not convey information that could be construed as news or public affairs, and were thus used "essentially used as window-dressing to advance the catalog's surf-theme." *Id.* at 1002-1003. *Downing* distinguished *Dora* because a documentary film is different from a commercial advertisement. *Downing*, 265 F.3d at 1002. Here, T3Media is selling photographs as retail merchandise—not conveying information about NCAA athletics.

In *Montana v. San Jose Mercury News*, quarterback Joe Montana sued the San Jose Mercury News for reproducing and distributing newspaper pages containing his likeness following his team's fourth Super Bowl championship. 34 Cal. App. 4th 790, 793-94 (1995). Montana conceded that the original newspaper accounts were protected, but challenged reproducing the newspaper pages. *Id.* at 794. The court held that the reproductions of newspaper accounts of the Super Bowl created within two weeks of the original printing were entitled to the same protection as the original newspaper accounts of the Super Bowl broadcast. *Id.*  Here, T3Media is not selling any news accounts; it only purports to sell the image itself, and T3Media has produced no evidence that it used or marketed the photographs for reporting purposes.

Similarly, in *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 406, 416 (Cal. Ct. App. 2001), retired *professional* baseball players filed suit against Major League Baseball and others under § 3344 for using their likenesses in various media about baseball history. *Id.* at 410. The court held that by archiving and displaying baseball history, Major League Baseball was "simply making historical facts available to the public through game programs, Web

1    sites and video clips" with "recitation and discussion of factual data

2    concerning the athletic performance of [the] plaintiffs."

3         T3Media does no such thing by selling the photographs at issue here.

4    █████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ███████████████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████████

8    T3Media's disingenuous claim that it "make[s] money disseminating

9    information to the public" (Mot. at 22) conflicts with its own agreement with

10   the NCAA, ████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████████

14   █████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████

17   █████████████████████████████    The sample Paya.com user invoice T3Media

18   has submitted states "Thank you for purchasing a photo on paya.com" and

19   sets forth "Usage Rules" stating, "Use of this photo is governed by the

20   paya.com Web site terms and conditions." (Dkt. No. 36-1, at 86.)  An objective

21   reading of the contract and sale documents makes plain that the objective of

22   the agreement was to monetize the photo library, not report on teams'

23   practices or events.

24         T3Media cites to *Aldrin v. Topps Co.*, 2011 WL 4500013, at *2 (C.D. Cal.

25   Sept. 27, 2011), for the proposition that "the use of a photograph on a trading

26   card was an act in furtherance of free speech." (Mot. at 7.) However, the

27   possibility that a use constitutes protected expression in one context does not

28

mean it does everywhere. The trading cards in *Aldrin* reported historical information related to the subject portrayed on the front of the cards, all of which were famous American "politicians, actors, athletes, scientists, organizations, artifacts, and events." The cards were part of a series discussing American history. Here, T3Media exploited student-athletes by selling photographs alone as retail merchandise; *Aldrin*, like similar cases cited by T3Media, is simply not factually analogous.[4]

Similarly, T3Media's citation to *Somerson v. World Wrestling Entertainment, Inc.*, 956 F. Supp. 2d 1360 (N.D. Ga. 2013), does not advance the analysis. *Somerson* concerned a professional wrestler, not a student-athlete, and the suit concerned website discussion of "professional accomplishment of plaintiff" rather than the sale of photographs. *Id.* at 1368. The Court pointed out that "the information on [Defendant's] websites is not photographs" and "there is no merchandise available related to plaintiff." *Id.* at 1369-70.

T3Media alludes to "the description in the accompanying captions" to the NCAA photographs, but some of the photographs have no caption or description whatsoever. (*E.g.*, DeStefano Decl. ¶ 6 Ex. E.) Even when a caption appears, it generally provides no more than the name of a competing athlete, the name of a competing school, and a general statement of the event—information designed to permit users to locate and identify a photograph, rather than to report on public affairs. (FAC ¶¶ 67-73; DeStefano Decl. Ex. D, *Lightbourne*, No. SACV-13-876, C.D. Cal. Dkt. No. 107, at 2, 7 (student-athlete photographs sold were "not used to report on, publish and express matters in the public interest" even though sales websites "permitted

---

[4] *See* Mot. at 21 n.28 (addressing claims regarding *professional* players' names, biographies, and statistics). Indeed, as already explained, the NCAA and T3Media waived any right to sell trading cards bearing photographs and statistics of student-athletes, so they cannot claim do be doing any such thing. (*See* Section III.B.1, above.)

consumers to browse and view photos by sport and year," to sort photos "by year and event")).  Many of the student-athlete photographs do not depict an athletic event.  (*E.g.*, DeStefano Decl. ¶ 6 Ex. F.)  And many of the captions do not even describe the photograph itself.  (*E.g.*, DeStefano Decl. ¶ 6 Ex. G.)  *See In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, 724 F.3d at 1283 (distinguishing *Montana*, *Dora*, and *Gionfriddo,* even though each case involved a popular sport, because defendant was not publishing or reporting factual data).  Identification and indexing of photos for purposes of sale is not a news or sports account, and any related dispute is a question of fact.  To the extent T3Media describes and displays photographs to promote the sale of the photograph alone, its use of names and likenesses receives no greater First Amendment protection than the unlawful use of the photograph itself, and therefore the use is not protected.  (Mot. at 22:17-19 (citing *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d at 871-72).)[5]

It is settled law that the use of a person's name and likeness for a commercial purpose is not protected by the First Amendment. *See, e.g.*, *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 106 Cal. Rptr. 2d 126 21 P.3d 797, 810 (2001). Plaintiffs' facts and allegations demonstrate the possibility that a reasonable jury could find it is more likely than not that T3Media was selling merchandise, not reporting.

**C.    The Newsworthiness Exemption Does Not Apply to Defendant's Misappropriation of Student-Athletes' Likenesses**

California's right of publicity statute prohibits the unauthorized use of a person's name, image, or likeness (collectively "likeness") for commercial purposes without their consent. Cal. Civ. Code § 3344(a). Consent is not required, however, when a likeness is used "in connection with any news,

_____

[5] This fact distinguishes the holdings of *Gulgielmi* as well as *Daly*, 238 F. Supp. 2d at 1122-23; *Page v. Something Weird Video*, 960 F. Supp. 1438, 1443 (1996); and *People v. Fogelson*, 21 Cal. 3d 158, 165 n.7 (1978).

public affairs, or sports broadcast or account," *id.* (the "newsworthiness exemption"). T3Media's attempt to apply this exemption to its use of student-athlete likenesses on the Paya website contorts the statutory language and ignores that the photographs at issue were used for purely commercial purposes—direct sale to consumers as digital merchandise.

T3Media briefly argues that the use and sale of the photographs is exempt because "'[p]ublic affairs' extends to works—whether informative, entertaining, or both—that relate to 'popular culture' and to 'real-life occurrences'" and because the "'photographs and captions are also 'sports accounts.'" In other words, T3Media argues that simply because the "work" at issue could be considered interesting, popular, or part of a newsworthy event at some point in time or in some manner, *any* use of that work is exempt from the statute's protections.

But the statute's plain language exempts only uses occurring ". . . *in connection with* any news, public affairs, or sports broadcast or account." Cal. Civ. Code § 3344(d) (emphasis added). The statute does not ask whether the *work* (*i.e.*, the photograph) *is* a newsworthy account—it asks whether the use of a person's likeness (here, a photograph) occurs "in connection with" such an account.

Assuming that the subjects of the photographs were originally newsworthy or constituted public affairs (and surely not all are),[6] the exemption does not apply when photos, as here, are used for commercial

---

6   There is no basis to hold as a matter of law that all the photographs are per se newsworthy or constitute public affairs. For example, many of the photographs are of class members celebrating or spending time in the locker room. (DeStefano Decl. Ex. E-G.) It is T3Media's burden to prove their affirmative defenses, and T3Media has not even attempted to show that all photographs are covered by the exemption because they appear with captions or convey information, or that even a material number are covered. This is yet another reason to deny the Motion to Strike. *See, e.g., Browne v. McCain*, 611 F. Supp. at 1071 (holding that it is defendant's burden to submit evidence that defeats plaintiff's claim as a matter of law).

rather than journalistic purposes. *See, e.g., Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 805 (N.D. Cal. 2011) (denying motion to dismiss where "even if the underlying actions taken by plaintiffs are newsworthy, [defendant's] *commercial* use of those actions . . . removes them from the scope of § 3344(d)'s newsworthy privilege," and noting that "even newsworthy actions may be subjects of § 3344 liability when published for commercial rather than journalistic purposes.") (emphasis in original).

As explained in Section III.B.2 above, T3Media's use of the photographs was not in connection with any news, public affairs, or sports broadcast or account.  While some photographs were accompanied by short captions, the Paya.com website generally displayed photographs of student-athletes for sale without narration, overarching story, theme, point of view, or historical perspective.  (DeStefano Decl. ¶ 9.)  The Paya.com website was organized as a repository that permitted consumers to search for photographs of NCAA student-athletes and to buy them.  (DeStefano Decl. ¶ 9.)  Thus, use of student-athletes' likenesses on Paya.com was for purely commercial purposes, namely, the sale of digital photographs as retail merchandise. (DeStefano Decl. Ex. D, Civil Minutes - General, *Lightbourne v. Printroom Inc.*, No. SACV-13-876, Dkt. No. 107, at 6 (C.D. Cal. Sept. 8, 2014) (holding that "sports account" exception to § 3344 does not extend to sales of photographs "in standalone form" or photographs unrelated to sporting events)).  The grouping of standalone photographs for sale does not create an "account" in any meaningful sense. Because T3Media's use does nothing more than promote a commercial transaction, the photos are not covered by the newsworthiness exemption. *See Abdul-Jabbar v. GMC*, 85 F.3d 407, 416 (9th Cir. 1996) (holding that even though basketball star's likeness may be newsworthy, automobile retailer's use in advertisement did not constitute news or sports account); *Jordan v. Jewel Food*

1    *Stores, Inc.*, 743, F.3d 509, 519-520 (7th Cir. 2014) (holding that grocery store ad

2    "congratulating" Michael Jordan for induction into the Pro Basketball Hall of

3    Fame —and conveniently including his iconic shoes and jersey number next to

4    the store's logo-- was unprotected commercial speech because, among other

5    things, the evidence supported a finding that the photograph served an

6    economic purpose.).

7            The Ninth Circuit's opinion in *Downing v. Abercrombie & Fitch*, 265 F.3d

8    994, is again instructive.  Just as the general public fascination with surfing

9    does not transform the commercial use of photographs into public affairs

10   entitled to First Amendment protection, it also does not transform the

11   commercial arrangement and display of photographs for sale into a "sports

12   account." *See id.* at 1002.  Here, T3Media is selling digital photographs of

13   student-athletes as merchandise—not conveying information about NCAA

14   athletics.

15           To call T3Media's use of the photographs an "account" or "broadcast"

16   would stretch the meaning of those terms beyond recognition.  *See* § 3344(d)

17   (allowing use in connection with a "sports broadcast or account").  The

18   exception would overwhelm the rule, in that every image of any person

19   engaged in sports would become exploitable without limit if T3Media's

20   position were adopted.  The Legislature carefully chose its words and easily

21   could have given the broad exemption T3Media suggests—but did not.   The

22   photographs are not organized, presented, sold, or intended to convey

23   information to the public regarding NCAA events.  The limited identification

24   of athletes, locations, and events in some fraction of the photographs serves no

25   informational purpose other than to promote the unlawful sale of the

26   underlying image. T3Media's reading is not supported by the statute's plain

27   language or case law interpreting the statute that makes it clear that an

28

account must be in connection with some aspect of reporting or journalistic activity. █████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

On these facts and allegations, it would be possible for a jury to find that it is more likely than not that T3Media is using the photos to make money only—not to convey information. For these reasons, the newsworthiness exemption does not apply.  Even if Defendant's use somehow qualified for the "sports broadcast or account" exemption, the statutory exemption does not apply to Plaintiffs' common law right of publicity claims. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691-92 (9th Cir. 1998).

**D.    Defendants' Use Of Names And Likenesses To Promote Photograph Sales Is Commercial Speech Subject To The UCL**

T3Media moves to strike Plaintiffs' Cal. Civ. Code § 17200 claim, arguing that the photographs at issue cannot support such a claim because they are not commercial speech.  However, T3Media has used Plaintiffs' and class members' names and likenesses to promote the unlawful sale of the underlying photographs.  Therefore, these uses constitute commercial speech and are subject to the UCL.

Commercial speech often "consists at its core of 'speech proposing a commercial transaction.'"  *Kasky v. Nike, Inc.*, 45 P.3d 243, 253 (Cal. 2002) (quoting *Central Hudson*, *supra*, 447 U.S. at p. 562, 100 S.Ct. 2343).  However, "the category of commercial speech is not limited to this core segment": It

extends to product labeling and identification.  *Id.*  Multiple factors bear upon the analysis, including "advertising format, product references, and commercial motivation."  *Id.* at 254.   All three of these factors show commercial speech here:  The speech at issue is "about a product or service by a person who is offering that product or service at a price, directed to persons who may want, and be willing to pay for, that product or service."  *Id.* at 255-56.  It is commercial in character in that it contains "representations of fact" about the product.  *Id.* at 256.  And T3Media admits it sells the photographs for profit.

T3Media cites cases that are not to the contrary.  The UCL claim is not duplicative of Plaintiffs' § 3344 claims because it captures the unlawful, unfair, and fraudulent dimension of T3Media's conduct, as a misleading violation of established restrictions on the commercial use of student-athlete names and likenesses.  Thus, *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010) does not apply.  *Cher v. Forum Int'l Ltd.*, 692 F.2d 634 (9th Cir. 1982), held that promotional language associated with a journalistic interview received First Amendment protection because the underlying article received First Amendment protection—*Cher* is distinguishable because here, the unlawful sale of Plaintiffs' likenesses receives no such protection, and even if it did, T3Media waived that protection.   *See also Stutzman v. Armstrong*, No. 2:13-CV-00116-MCE, 2013 WL 4853333, at *16 (E.D. Cal. Sept. 10, 2013) (promotional copy not commercial speech only because book protected by First Amendment); *William O'Neil & Co. v. Validea.com Inc.*, 202 F. Supp. 2d 1113, 1121 (C.D. Cal. 2002) (same); *Rezec v. Sony Pictures Entm't, Inc.*, 116 Cal. App. 4th 135, 144, 10 Cal. Rptr. 3d 333, 340 (2004) (false statements promoting movie not entitled to protection).  In *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2009),  the court held that speech in a greeting card did not

1  "promote a transaction" because it "was not advertising the product; it *is* the

2  product."  Here, however, T3Media's speech promotes the unlawful sale of a

3  product, and the product is not protected by the First Amendment.[7]

4  The evidence of record would support a finding, and *a fortiori* the

5  possibility of a finding, *see Browne v. McCain*, 611 F. Supp. 2d 1062, 1069 (C.D.

6  Cal. 2009), that the descriptions and use of sample photographs incorporating

7  student-athlete names and likenesses constituted commercial speech.

8  Therefore, the Court should reject T3Media's Motion to Strike the UCL claim.

9  **E.     Rule 56(d) Requires Denial Of The SLAPP Motion Because Plaintiff**
        **Requires Additional Discovery To File A Full Opposition**
10

11  Where Plaintiffs have need of discovery solely in the possession of the

12  defendant, the state law procedure is inconsistent with Rule 56(d), Fed. R. Civ.

13  P., and does not apply. *Id.* This Court's November 5, 2014 Minute entry

14  affirmed that Plaintiffs "are free to oppose the motion on that ground."  (Dkt.

15  No. 58.)  Plaintiffs have already detailed why the present response period is

16  insufficient to address fully the argument and evidence presented by T3Media

17  at this early stage, particularly a central contract which Plaintiffs first received

18  three days after T3Media filed its Motion to Strike.  (Dkt. 49-1 ¶¶ 6-11.)

19  Because T3Media's Motion relies upon extensive evidence beyond the

20  pleadings, and because Plaintiffs have not determined—and do not agree—

21  that further discovery is unnecessary, the the SLAPP statute is inconsistent

22  with Rule 56 and does not apply. *See Schwartz v. At The Cove Mgmt. Corp.*, No.

23  12CV3077-GPC WVG, 2013 WL 1103479, at *1 (S.D. Cal. Mar. 14, 2013) ("[T]he

24  discovery-limiting provisions of [the anti SLAPP statute] collide with the

25  discovery-permitting provisions of Rule 56, and therefore are not available in

26  ───────────────────
   [7] Other caselaw cited by T3Media bears no factual comparison to this case.
27  *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1111 (C.D. Cal. 2004) (speech
   identifying software on user's hard-drive with an option to delete the software
28  not commercial speech).

federal court unless either (1) the factual basis of the case has been developed through discovery ... to the extent a motion for summary judgment would be appropriate; (2) the parties agree that further discovery is not necessary; or (3) the only issue presented by the motion is an issue of law and the motion is suitable for decision as a motion to dismiss pursuant to Rule 12(b)(6)." (alterations original)).

Specifically and as set forth in the accompanying DeStefano Declaration, ¶ 11, discovery into the following topics, at a minimum, is necessary for Plaintiffs to make a full response to T3Media's Motion and is not currently available to Plaintiffs:

**The NCAA Agreement:** T3Media executed this agreement *three days* before filing its Special Motion to strike and more than three months after Plaintiffs filed suit.  (*See* Weiser Decl. Ex. B.)  The Agreement purports to be retroactive to January 2012.  Plaintiffs have no information about the circumstances leading to the belated execution of the agreement; whether it is a sham agreement; whether other relevant agreements exist; whether previous agreements or drafts exist.  The full extent of T3Media's agreements with the NCAA is effectively unknown, unless the Court turns a blind eye to the manufacture of evidence in direct response to this lawsuit.  The nature of T3Media's agreements with the NCAA bear directly upon its First Amendment, public affairs, and UCL defenses.

**NCAA Communications:**  Plaintiffs require discovery into communications between T3Media, the NCAA, and NCAA member institutions concerning student-athlete name and likeness rights.  Such communications are likely to provide further evidence of the intent of T3Media, the NCAA, and NCAA member institutions regarding the non-editorial, commercial nature of the use and sale of student-athlete names and

likenesses by T3Media, bearing directly upon T3Media's First Amendment, public affairs, and UCL defenses.

**NCAA Rules**:  Plaintiffs contend that NCAA prohibitions on the commercial use of student-athlete names and likenesses restrict the commercial use of those names and likenesses by T3Media.  ███████████ ████████████████████████████████████████████ Plaintiffs contend that T3Media and the NCAA waived any First Amendment protection for their use of the names and likenesses and Plaintiffs therefore require discovery regarding the relevant NCAA rules at all times relevant to Plaintiffs' claims.

**Images On The Website:** To the extent T3Media's arguments turn on the character of the photograph database as a whole, Plaintiff requires additional discovery into the contents of the Paya.com website.  For unknown reasons, T3Media has discontinued sales of photographs on the Paya.com website, and the photographs cannot be viewed on the public website at this time.  (FAC ¶ 51.)  While Plaintiff has preserved some images formerly displayed on the site for purposes of investigating and maintaining this lawsuit, Plaintiff has been unable to examine the photograph archive as a whole since before T3Media filed its Answer and Motion to Strike.  Plaintiff requires discovery of the archive as a whole to make a complete response to the Motion to Strike because the character of the photo archive depends upon its contents, and Defendants' First Amendment, public affairs, and UCL defenses depend upon the character of the archive.

**Images Not On The Website:**  Full understanding of T3Media's conduct requires discovery into the reasons for exclusions of certain student-athletes from the Paya.com store and any communications and agreements between T3Media and athletes who were specifically excluded from the Paya.com

1  store.  Plaintiffs do not currently have access to this information, which bears

2  directly on T3Media's First Amendment, public affairs, and UCL defenses.

3      **Agreements with Student-Athletes:**  To the extent that T3Media or the

4  NCAA has compensated, negotiated or agreed with, or otherwise

5  communicated with any student-athletes regarding the use of their names and

6  likenesses on T3Media's websites, including without limitation Paya.com,

7  Plaintiffs require discovery of communications and agreements between

8  T3Media and those athletes.  Such communications would tend to prove the

9  commercial nature of the NCAA photo archive on Paya.com, bearing directly

10  upon T3Media's First Amendment, public affairs, and UCL defenses.

## IV.   CONCLUSION

12      For the foregoing reasons, T3Media's Motion to Strike should be denied.

13  In the alternative, the Court should deny or defer ruling upon T3Media's

14  Motion to Strike because Plaintiff has not yet received a full and fair

15  opportunity to obtain discovery relevant to disputed issues as required by

16  Rule 56(d).

17  DATED: November 24, 2014.      Respectfully Submitted,

18      HAGENS BERMAN SOBOL SHAPIRO LLP

19

20      By:   _/s/ John M. DeStefano_

21      Robert B. Carey (*Pro Hac Vice*)
    rob@hbsslaw.com

22      Leonard W. Aragon (*Pro Hac Vice*)
    leonard@hbsslaw.com

23      John M. DeStefano (*Pro Hac Vice*)
    johnd@hbsslaw.com

24      11 West Jefferson Street, Suite 1000

25      Phoenix, AZ  85003
    Telephone: (602) 840-5900

26      Facsimile: (602) 840-3012

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Elaine T. Byszewski (SBN 222304)
elaine@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA  91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

William S. Sowders (SBN 221687)
wsowders@rcdmlaw.com
RENAUD COOK DRURY MESAROS, PA
One North Central, Suite 900
Phoenix, Arizona 85004
Telephone: (602) 307-9900
Facsimile: (602) 307-5853

*Attorneys for Plaintiffs and the Proposed Class*

1

**<u>CERTIFICATE OF SERVICE</u>**

2
3
4
5
6
7

Pursuant to FRCP 5, I, John M. DeStefano, hereby certify that on November 24, 2014, a true and correct copy of the foregoing *Plaintiffs' Response and Memorandum of Points and Authorities in Opposition to Defendant's Special Motion to Strike Plaintiffs' First Amended Complaint [Public Redacted Version]* was filed electronically with the Clerk of Court at my direction using the CM/ECF system, which will send notification of such filing to all counsel of record.

8

9
<u>/s/ John M. DeStefano</u>

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28