JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No.:   CV 14-05048-AB (VBKx) | Date:   March 6, 2015 |

Title:   *Patrick Maloney et al. v. T3Media, Inc.*

Present: The Honorable   ANDRÉ BIROTTE JR.

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**     **[In Chambers] Order Granting Defendant's Special Motion to Strike Plaintiff's First Amended Complaint (Dkt. No. 36)**

Pending before the Court is Defendant T3Media, Inc.'s Special Motion to Strike Plaintiffs' First Amended Complaint ("FAC") under California's Anti-SLAPP Statute (Cal. Code Civ. Proc. § 425.16), filed on October 24, 2014.   (Mot., Dkt. No. 36.) Plaintiffs Maloney and Judge, acting on behalf of the putative class, filed an Opposition on November 17, 2014 and Defendant filed a Reply on November 17, 2014.   (Opp., Reply, Dkt. Nos. 68, 69.)   This matter was taken under submission on November 25, 2014. (Dkt. No. 71.)   For the reasons stated below, the Court hereby **GRANTS** the motion **WITHOUT LEAVE TO AMEND** and **DISMISSES** the action **WITH PREJUDICE**.

## I.   BACKGROUND

On August 25, 2014, Plaintiffs filed their First Amended Complaint ("FAC") alleging the following claims: (1) deprivation of rights of publicity in violation of California Civil Code § 3344; (2) violation of rights of publicity under California Common Law; and (3) violation of the Unfair Competition Act, California Business & Professions

Code § 17200 *et seq.*   (*See* FAC, Dkt. No. 29.)

Plaintiffs were members of the Catholic University basketball team from 1997 until 2001.   (FAC, ¶ 71.)   The team won the 2001 Men's Division III National Collegiate Athletic Association ("NCAA") championship game.   (FAC, ¶ 72.)   Defendant provides cloud-based storage, hosting and licensing services for digital content uploaded by third-parties.   (Ernest Weiser Declaration, Dkt. No. 36-1, ¶ 3.)

In or about January 2012, Defendant entered into an agreement with the NCAA to store, host, and license photographs for which the copyrights are owned and/or controlled by the NCAA (the "NCAA Photo Library").   (*Id.* at ¶ 5.)   The NCAA Photo Library consists of thousands of photographs over more than 70 years, including 89 NCAA championship games across 23 sports.   (*Id.*)   The NCAA Photo Library includes photographs of Plaintiffs from the 2001 Men's Division III championship game.   (*Id.* at ¶ 10.)

Defendant owned and operated the website Paya.com from approximately January 1, 2013 until August 1, 2014.   (*Id.* at ¶ 6.)   On Paya.com, members of the public could view digital samples and brief descriptions of the people and events depicted in the photographs of the NCAA Photo Library.   (*Id.*)   Paya.com offered users the option to purchase a non-exclusive license to download a single copy of a photograph for their own personal use.   (*Id.*)   Users wishing to download photographs were first required to agree to the terms and conditions of the Paya.com "Content License Agreement."   (*Id.* at ¶ 8; *see* Weiser Decl., Dkt. No. 36-1, Ex. D.)   Users interested in uses other than personal could contact Defendant through a "Make an Offer" button available on the website.   (*Id.* at ¶ 14 subsection c.)

On August 1, 2014, Defendant posted on its Paya.com website that the "Paya.com[] licensing marketplace is no longer available."   (*See id.* at ¶ 51.)   Defendant indicated that it was "relocat[ing] the NCAA photo store" and directed interested users to fill out a form so that a T3Media representative could contact them.   *Id.*

Plaintiffs propose to represent "a class action on behalf of all current and former NCAA student-athletes whose names, images, and likenesses have been used without their consent by Defendant for the purpose of advertising, selling, or soliciting purchases of the photographs" in the NCAA Photo Library.   (FAC, ¶ 5.)   Plaintiffs allege that Defendant's actions constitute a misappropriation of Plaintiffs' rights of publicity.   (*Id.* at ¶¶ 75-78, 105, 108.)   Plaintiffs further contend that any consent obtained by Defendant from student-athletes while they were still in school is void because NCAA rules prohibit the commercial exploitation of student-athlete images.   (*Id.* at ¶¶ 22, 30, 44, 82.)

From those allegations, Plaintiffs assert causes of action under California Law for:

(1)  Violation of the right of publicity (Cal. Civ. Code § 3344);

(2)  Violation of the right of publicity (Common Law);

(3)  Violation of California Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code § 17200, et seq.)

Defendant now moves for a special motion to strike under California's statute designed to prevent "strategic lawsuits against public participation" (SLAPPs).

## II.   LEGAL STANDARDS

California law allows for pre-trial dismissal of SLAPPs.   Cal. Code Civ. Proc. § 425.16.   Although framed as a rule of state procedure, California's anti-SLAPP statute protects substantive rights and thus applies in federal court.   *Newsham v. Lockheed*, 190 F.3d 963, 973 (9th Cir. 1999).   The statute is designed to discourage actions that "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so."   *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (internal quotation marks omitted).   The Legislature declared "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."   Cal. Code. Civ. Proc. § 425.16(a).   The legislature amended the statute in 1997 to ensure that it "shall be construed broadly."   *Id.*

Under the statute, "[a] cause of action against a person arising from any act . . . in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."   Cal. Civ. Proc. Code § 425.16(b)(1).   The statute explicitly defines four categories of activities "in furtherance of . . . free speech," including "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of . . . free speech in connection with a public issue or an issue of public interest."   Cal. Civ. Proc. Code § 425.16(e)(3)-(4).

In assessing motions to strike under the anti-SLAPP statute, the court takes a two-step approach.   *Navellier v. Sletten*, 29 Cal. 4th 82, 88, 52 P.3d 703, 708 (Cal. 2002). First, the court determines whether the defendant has met his burden of proof that the challenged cause of action arises from protected activity.   *Id.*   If the court is satisfied that the claim falls within the scope of the statute, then the burden shifts to the plaintiff to establish "a probability that [he or she] will prevail on the claim[s]."   Civ. Proc. Code § 425.16(b)(1); *id.* at 88.   "Since an Anti–SLAPP motion is brought at an early stage of proceedings, the plaintiff's burden of establishing a probability of success is not high." *Browne v. McCain*, 611 F. Supp. 2d 1062, 1068 (C.D. Cal. 2009) (citing *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 699–700, 61 Cal.Rptr.3d 29 (Cal. Ct.

App. 2007)).    If the plaintiff cannot meet this burden, then the anti-SLAPP motion is granted and the plaintiff's lawsuit is dismissed.

## III.   DISCUSSION

Defendant contends that Plaintiffs' claims fall within the scope of the anti-SLAPP statute because the claims arise from Defendant's "display, reproduction, and licensing of copyrighted photographs depicting NCAA student-athletes participating in championship games. . . ."   (Mot., p. 6 ¶ 2.)   Defendant then argues that Plaintiffs cannot demonstrate a probability of prevailing on any of their claims because the claims are:

(1) preempted by Federal Copyright law;

(2) constitutionally barred under the First Amendment; and

(3) invalid because California law exempts from liability the "use of a . . . likeness in connection with any news, public affairs, or sports broadcast or account."   *(See* Mot., pp. 9, 13, 23.)

Plaintiffs do not dispute that Defendant engaged in protected activity under the statute's first prong, but argue under the second that their claims meet the § 425.16 standard for probability of success on the merits.   (*See* Opp., Dkt. No 68, p. 3 ¶ 1.)

### A. Protected Activity Under Section 425.16

Although Plaintiff did not dispute the first prong, the Court must determine if Defendant met his burden of establishing that the challenged causes of action arise out of Defendant's protected activity.   Cal. Code Civ. Proc. § 425.16(b)(1).   This threshold showing requires Defendant to demonstrate that Plaintiffs' claims fit into one of the categories listed in Section 425.16, subdivision (e).   *See Navellier*, 29 Cal. 4th at 88.

Defendant contends: (1) the "display of photographs and editorial captions on its websites falls under Section 425.16(e)(3)'s protection for publication made in a public forum in connection with a matter of public interest;" and (2) "Plaintiffs' claims fall under (e)(4), which applies to 'conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest.'" (Mot., pp. 6-7 (quoting Cal. Code Civ. Proc. § 425.16(e)(4)).)

#### 1.   Public Forum

Plaintiffs' suit arises out of the "sale"[1] of NCAA student-athlete images on

---

[1]  The FAC refers to the "sale" of NCAA images, whereas Defendant's website offers the ability to purchase a non-exclusive copyright license.   (*See* Mot., p. 4 ¶ 1 fn. 5.)   For clarity, "sale" will be used to designate the purchase of a non-exclusive license.

Defendant's Paya.com website.   (*See* FAC, ¶¶ 3-4.)   "Web sites accessible to the public . . . are public forums for purposes of the anti-SLAPP statute."   *Barrett v. Rosenthal*, 40 Cal.4th 33, 41, fn. 4, 51 Cal.Rptr.3d 55, 146 P.3d 510 (Cal. 2006); *see Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1366, 117 Cal. Rptr. 3d 747, 759 (Cal. App. 2010) (collecting cases).   Even though Defendant controls the content of the Paya.com website with no ability for members of the public to express their viewpoint, the website is part of the internet at-large, and Defendant's posts were made in a public forum.   *See Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 896–98, 17 Cal. Rptr. 3d 497, 505-06 (Cal. Ct. App. 2004) (finding that a controlled website is "one source of information in a larger public forum").

> ## 2.   Public Issue

Even if the Paya.com website was not a public forum, section 425.16, subdivision (e)(4) includes conduct in furtherance of free speech rights, notwithstanding where the conduct takes place.   Cal. Code Civ. Proc. § 425.16(e)(4).   The statute, consequently, applies to private communications, "so long as they concern a public issue."   *Wilbanks*, 121 Cal. App. 4th at 897 (citations omitted).   For this reason, the statute applies to Defendant's expression, if that expression is made "in connection with a public issue or an issue of public interest."   Cal. Code Civ. Proc. § 425.16(e)(4).

The statute does not define a "public issue" or an "issue of public interest."   Courts have considered the statute's explicit provision that it "shall be construed broadly" and found that "an issue of public interest . . . *is any issue in which the public is interested*."   *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042, 72 Cal. Rptr. 3d 210, 220 (Cal. Ct. App. 2008) (emphasis supplied) (comparing cases that have addressed the "public issue" requirement).

The photographs here depict moments in NCAA sports history.   (*See* Mot., p. 7 ¶ 2.)   Considering the relevant case law and the direction to broadly construe the statute, this Court finds that the photographs here fall within the realm of an issue of public interest.   Cal. Code Civ. Proc. § 425.16(a); *see Curtis Publ. v. Butts*, 388 U.S. 130, 154-55 (1967) (finding a state university's athletic director a "public figure"); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 110 (Cal. Ct. App. 2007) (finding employment termination of University's head football coach a matter of public interest); *NCAA v. Bd. Of Regents of the Univ. of Okla.*, 468 U.S. 85, 117 (1984) (addressing the NCAA television plan for the televising, i.e. public availability, of college football games); *Moore v. University of Notre Dame*, 968 F. Supp. 1330, 1337 (N.D. Ind. 1997) (noting "football, and specifically Notre Dame football is a matter of public interest").

Since Defendant has made a threshold showing that the challenged causes of action arise from protected activity, the burden shifts to the Plaintiffs to prove a probability of prevailing on their claims.

### B. Plaintiffs' Probability of Prevailing on their Claims

The anti-SLAPP statute "subjects to potential dismissal only those actions in which the plaintiff cannot 'state[ ] and substantiate[ ] a legally sufficient claim.'" *Navellier*, 29 Cal. 4th at 93 (citation omitted).   In prong two, the burden shifts to the Plaintiffs to establish a probability of prevailing on their claims.   Cal. Code Civ. Proc. § 425.16(b)(1). The California Supreme Court describes the "probability of prevailing" standard as operating like an early summary judgment motion.   *See, e.g.*, *College Hospital Inc. v. Superior Court*, 8 Cal. 4th 704, 719, 34 Cal. Rptr. 2d 898, 882 P.2d 894 (Cal. 1994); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1123, 81 Cal. Rptr. 2d 471, 969 P.2d 564 (Cal. 1999).   "[P]laintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."   *Navellier*, 29 Cal. 4th at 88-89 (quoting another source).

"[A] defendant may defeat a cause of action by showing the plaintiff cannot establish an element of its cause of action or by showing there is a complete defense to the cause of action, and there is nothing in the language of section 425.16 or the case law construing it that suggests one of these avenues is closed to defendants seeking protection from a SLAPP suit."   *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 676, 35 Cal. Rptr. 3d 31, 44 (Cal. Ct. App. 2005). Accordingly, Defendant claimed three affirmative defenses in its Motion arguing that Plaintiffs cannot demonstrate the requisite probability of prevailing on their claims.   (*See* Mot., pp. 9, 13, 23.)   Defendant contends Plaintiffs claims are: (1) preempted by Federal Copyright law; (2) constitutionally barred under the First Amendment; and (3) invalid because California law exempts from liability the "use of a . . . likeness in connection with any news, public affairs, or sports broadcast or account."   (*Id.*)

#### 1.   Preemption by the Copyright Act

The Copyright Act ("the Act") provides the sole remedy for all rights "that are equivalent to any of the exclusive rights within the general scope of copyright . . . ."   17 U.S.C. § 301(a).   The preemption analysis comprises two steps.   "First, the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103.   Second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act."   *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001).   In his Treatise on Copyright, Professor Nimmer identifies these elements as relating to the "nature of the work in which such rights may be claimed" and "the nature of the rights granted under state law."   *See* 1-1 Nimmer on Copyright § 1.01[B].

### a.  The Nature of the Work – Photographs Fall Within the Subject Matter of Copyright

The subject matter of copyright entails "original works of authorship fixed in a tangible medium of expression," including "pictorial, graphic, and sculptural works."  17 U.S.C. § 102(a).  The Act lists photographs in its definition of "pictorial works."  17 U.S.C. § 101.  Plaintiffs' claims derive from the "advertisement and sale of images to the general public."  (FAC, p. 24, ¶ 103.)  The images to which Plaintiffs refer are photographs, and photographs that meet the Act's originality requirement fall within the subject matter of copyright.  *See Burrow-Giles Lithographic v. Sarony*, 111 U.S. 53, 58 (1884).

Plaintiffs do not dispute that photographs are the proper subject matter of copyright. Rather, Plaintiffs attempt to distinguish their rights to their own likenesses and to publicity from the photographs themselves.  Plaintiffs contend that the "protected right" they are asserting – their right of publicity – is "categorically not preempted by the Copyright Act because '[a] person's name or likeness is not a work of authorship within the meaning of [the Act] . . . notwithstanding the fact that [plaintiffs'] names and likenesses are embodied in a copyrightable photograph.'"  (Opp., p. 4 ¶ 2 (citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir. 2001).)  Plaintiffs rely on *Downing* to support their argument that "a right-of-publicity claim based on the use of a plaintiff's name or likeness in a copyrighted photograph does not fall within the 'subject matter of copyright' because 'it is not the publication of the photograph itself . . . rather, it is the use of the [plaintiffs'] likenesses and their names pictured in the published photograph."  (Opp., p. 4 ¶ 1 (citing *Downing*, 265 F.3d at 1003.))  Defendant counters by characterizing *Downing* – and all of the cases Plaintiffs' cite – as cases involving "the use of plaintiffs' names and likenesses to sell commercial products and services . . . ."  (Reply, p. 4 ¶ 2.)  Defendant distinguishes those cases from the facts at hand, where "the plaintiffs are trying to prevent the display, reproduction, and/or distribution of copyrighted works."  (*Id.* at p.4.)

Plaintiffs' own quotation from *Downing* highlights the critical distinction between "publication of the photograph" and the "use of the [plaintiffs'] likenesses . . . ."  (*See* Opp., p. 4 ¶ 2 (citing *Downing*, 265 F.3d at 1004.)  Despite Plaintiffs' assertion to the contrary,[2] the *Downing* decision did consider the use of the photographs in an advertising campaign, even if not explicitly mentioned in the Court's discussion of copyright preemption.  In *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134 (9th Cir. 2006), the Ninth

---

[2]  In their opposition Plaintiffs state: "*Downing*'s holding did not rely on the fact that the photographs at issue were published as part of an advertising campaign . . . .  Indeed, nowhere in the opinion's discussion of copyright preemption does the Court even mention the fact that the photographs were used in an advertising context . . . ."  (Opp., p.7 ¶ 1.)

Circuit elucidated the *Downing* court's reasoning:

> [Defendant] went well beyond mere republication of the photograph. Without obtaining plaintiffs' consent to use their names and images, it also offered t-shirts exactly like those worn by the plaintiffs in the photo.  We noted that the photograph itself was within the subject matter protected by the Copyright Act. *But [defendant] had not merely published the photograph.  Rather, it published the photo in connection with a broad surf-themed advertising campaign*, identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo.

*Id.* at 1141 (emphasis added).

The *Downing* decision differentiated between cases finding right-of-publicity claims not preempted and those that found preemption, by separating the use of the name and/or likeness from the copyrighted work itself.  *See Downing*, 254 F.3d at 1004–5.  In *Downing*, the Ninth Circuit distinguished *Fleet v. CBS, Inc.*, 50 Cal.App.4th 1911, 58 Cal.Rptr.2d 645 (Cal. Ct. App. 1996), by contrasting the *Fleet* plaintiffs, who sought to prevent the defendant from reproducing and distributing their copyrighted performances, with the *Downing* plaintiffs whose "claim [was] based on the use of their names and likenesses, which [were] not copyrightable."  *Downing*, 254 F.3d at 1005 n.4.  Plaintiffs' own cases can be distinguished along the same line.[3]  *See Downing*, 254 F.3d 999–1000 (discussing the defendant's use of the photograph in a clothing catalog; *Muirbrook v.*

---

[3]  In opposition, Plaintiffs rely on an unpublished decision in *Lightbourne v. Printroom, Inc.*, No. SACV 13-00876-JLS (RNBx), Dkt. No. 107, pp. 11-12, in which the court held similar claims by student athletes against a company selling photographs were not preempted by copyright.  However, it does not appear that the parties in *Lightbourne* identified the critical distinction at issue here.  Unlike in *Lightbourne,* Defendant correctly observes the difference between merely *selling a copyrighted photograph* containing an athlete's likeness and *using the athlete's likeness* contained in the photograph for some other purpose. In the first scenario, the athlete's likeness is only used insofar as it is contained in the four corners of the copyrighted work, and the athlete's state-law publicity claims are preempted.  In the second scenario, the athlete's image is used for some purpose beyond the four corners of the copyrighted work (selling a box of cereal or a t-shirt, for example) and suggests the athlete's endorsement of that *other* use.  As the Seventh Circuit rightly observed, "the basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question."  *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005).  It is when (as in the second scenario) the use of the athlete's likeness extends *beyond* the four corners of the copyrighted work that a claim is not preempted.  *See Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1013, 177 Cal. Rptr. 3d 773, 783 (Cal. Ct. App. 2014) ("it is Defendants' use of the [athletes'] likenesses pictured in the photographs to promote Defendants' business that constitutes the alleged misappropriation.").  As discussed more fully herein, Plaintiffs do not allege (or offer *prima facie* evidence to suggest) Defendant used Plaintiffs' likenesses for any purpose beyond the four corners of the copyrighted photographs themselves, and Plaintiffs claims are preempted by the Copyright Act.  To the extent the unpublished decision in *Lightbourne* holds otherwise, the Court respectfully declines to follow it.

*Skechers USA Inc.*, No. CV 12-8762 GAF PLAX, 2012 WL 5456402, at *1 (C.D. Cal. Nov. 6, 2012) (citing the complaint in which plaintiff alleged the defendant "publish[ed] photographs of Plaintiff to enhance the sale of Defendants' products."); *Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1013, 177 Cal. Rptr. 3d 773, 783 (Cal. Ct. App. 2014) ("[I]t is Defendants' use of the Models' likenesses pictured in the photographs to promote Defendants' business that constitutes the alleged misappropriation."); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) ("The basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question.")

Here as in *Fleet*, Defendant's "use of plaintiffs' likenesses did not extend beyond the use of the copyrighted material it held." *Laws*, 448 F.3d at 1143 (discussing *Fleet v. CBS*). Since Plaintiffs do not identify any use of their likenesses not wholly contained within the photographs, Plaintiffs' claims seek to prevent Defendant from distributing the copyrighted work itself. *Cf. Timed Out, LLC*, 229 Cal. App. 4th at 1013 ("[I]t is not the publication of the photographs themselves that is the basis for Plaintiff's claims.") Accepting Plaintiffs' interpretation without separating the likeness from the work would impermissibly negate Copyright's intended preemptive effect. Further, it would destroy copyright holders' ability to exercise their exclusive rights under the Copyright Act, effectively giving the subject of every photograph veto power over the artist's rights under the Copyright Act and destroying the *exclusivity* of rights the Copyright Act aims to protect.

Plaintiffs argue that *Fleet*, as well as other cases cited by Defendant, are "inapplicable because they involve the use of copyrightable *performances*, and many of them specifically distinguish those performance-based claims from claims, like Plaintiffs', involving photographs." (Opp., p. 5 ¶ 3.) Plaintiffs confuse the designation of *which* exclusive right under the Copyright Act is implicated, with *whether* or not the Copyright Act preempts the right-of-publicity claim.[4] The distinction of which exclusive right is involved is inconsequential; rather, the analysis involves: (1) whether the content of the right falls within the subject matter of copyright; and (2) whether the *use* of the copyrighted work implicates additional rights outside the scope of copyright. *Downing*, 254 F.3d at 994. The manner in which the work is used dictates whether there is a qualitative difference between the rights Plaintiffs' seek to protect, and the exclusive rights of copyright.[5] (*See infra* Section III.B.1.b)

---

[4] The Copyright Act delineates six exclusive rights of a copyright owner. 17 U.S.C. § 106. These include: the right to reproduce, to distribute copies, to display the work publicly, and to perform the work publicly. *Id.*

[5] Professor Nimmer refers to this as the "extra element" test. *See* 1-1 Nimmer on Copyright § 1.01[B].
  [I]f under state law the act of reproduction, performance, distribution, or display . .
  . will *in itself* infringe the state-created right, then such right is pre-empted. But if

For Plaintiffs' claims to succeed, they must identify some use of their likenesses (as captured in the photographs) independent of the mere sale of the pictures.  *Dryer v. Nat'l Football League*, No. CIV. 09-2182 PAM/FLN, 2014 WL 5106738, at *17 (D. Minn. Oct. 10, 2014) ("[A] claim for a violation of the right to publicity against a copyrighted work will lie only if that work is used for advertising, not in an expressive work."); *see, e.g.*, *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 366, 92 Cal. Rptr. 2d 713, 716 (Cal. Ct. App. 2000) (discussing the "commercial gain" garnered by the use of plaintiffs' photographs to attract members of the public to defendant's website, which charges a monthly membership fee).   Otherwise, these sales fall squarely within the rights of display, reproduction, and distribution controlled by the Copyright Act.  *See* 17 U.S.C. § 106.

Plaintiffs allege that Defendant uses student-athletes' "names, images, and likenesses . . . for the purpose of advertising, selling, or soliciting purchases of the photographs *themselves*."  (FAC, p. 2 ¶ 5 (emphasis added).)   Plaintiffs, however, do not allege how Defendant uses the photographs to advertise anything other than the sale of the pictures.   Plaintiffs attempt "to prevent nothing more than the reproduction, performance, distribution, or display of a [copyrighted work] is subsumed by copyright law and preempted."  *Fleet v. CBS, Inc.*, *supra*, 50 Cal.App.4th at 1924.[6]   (discussing *Fleet v. CBS*).   Plaintiffs fail to identify the subject matter of the rights they are seeking to protect as their names and likenesses, independent of the photographs.[7]   Without evidence that Defendant is doing something more than selling the copyrighted works, Plaintiffs' "likenesses [can] not be detached from the copyrighted [work]" and their claims are preempted.  *No Doubt v. Activision Publishing, Inc.*, 702 F. Supp. 2d 1139, 1144 (C.D. Cal. 2010).

---

qualitatively other elements are required, instead of, or in addition to, the acts of reproduction, performance, distribution, or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption.

*Id.*

[6] Although a non-controlling state-court decision, in *Laws*, the Ninth Circuit noted that it found the holding in *Fleet* "quite persuasive."   *Laws*, *supra*, 448 F.3d at 1142.   This Court agrees.

[7] In *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 373–74 (Cal. Ct. App. 2000) the court addressed the defendant's contention "that something more than a mere infringing use is required to avoid preemption of a [right-of-publicity] claim."   The court did not decide whether the claims involved something more than a mere infringing use, but held plaintiffs' claims not preempted because "the defendant [had] no legal right to publish the copyrighted work."   *Id.* at 374.   Here, by contrast, there is no dispute that Defendant holds a license from the copyright-holder (the NCAA) to reproduce and display the photographs.

## b. Equivalent Rights

To the extent *Downing* could be interpreted as providing a "categorical rule,"[8] the rule pertains to the second prong of the preemption analysis: "Because the subject matter of [plaintiffs'] right of publicity claims is their names and likenesses, which are not copyrightable, the claims are not equivalent to the exclusive rights contained in § 106." *Downing*, 265 F.3d at 1005.

Plaintiffs' claim a deprivation of their right-of-publicity under both California common law and Civil Code section 3344.   (*See* FAC, pp. 24–25.)   The common law cause of action requires: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."   *Downing*, 265 F.3d at 999 (quoting another source).   The statutory remedy includes all of the common law elements, plus the defendant's knowing use of plaintiff's identity and a direct connection between the alleged use and the commercial purpose.   *Id.* (internal citations omitted).

"To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action."   *Laws*, 448 F.3d at 1143 (citing another source).   Here, Plaintiffs have not identified a use of their names or likenesses independent of the display, reproduction, and distribution of the copyrighted images in which they are depicted.   Without this "extra element" that would render Plaintiffs' claims "qualitatively different" from the copyright holder's right in the photographs themselves, the rights Plaintiffs are asserting under state law are equivalent to the exclusive rights contained in section 106 of the Copyright Act.[9]

To summarize, Plaintiffs do not identify a use of their likenesses independent of the copyrighted works.   Thus their right-of-publicity claims involve the same subject matter, i.e. the photographs, and the same rights, i.e. the display, reproduction, and distribution, encompassed by the Copyright Act.   Consequently, these claims are preempted.

---

[8]  Plaintiffs' Opposition states: "*Downing* held that a right-of-publicity claim based on the unauthorized use of a name or likeness is categorically not preempted by the Copyright Act . . . ."   (Opp., p. 4 ¶ 2.)

[9]  The Court pauses to acknowledge that plaintiffs need not possess rights in the copyrighted work for their right-of-publicity claims to be preempted.   *See, e.g.*,Fleet, 50 Cal.App.4th at 1142 (noting the defendant "owned the exclusive rights to [the copyrighted work]"); *Dryer v. Nat'l Football League*, No. CIV. 09-2182 PAM/FLN, 2014 WL 5106738, at *17 (D. Minn. Oct. 10, 2014) (finding preemption of football players' right-of-publicity claims where defendant owned the exclusive copyright in the video footage); *Ray v. ESPN, Inc.*, No. 13-1179-CV-W-SOW, 2014 WL 2766187, at *5 (W.D. Mo. Apr. 8, 2014) (holding plaintiff wrestlers' right-of publicity claims preempted by copyright); *Somerson v. McMahon*, 956 F. Supp. 2d 1345, 1355 (N.D. Ga. 2012) (same); *Armstrong v. Eagle Rock Entm't, Inc.*, 655 F. Supp. 2d 779, 789 (E.D. Mich. 2009) (finding plaintiff's right of publicity claims against the copyright holder preempted).

Plaintiffs' UCL claim is derivative of their right-of-publicity claim under § 3344.   (*See* FAC, p. 25 ¶ 111.)   Since their right-of-publicity claims are preempted, Plaintiffs UCL claim must fail.

### 2.   Additional Defenses: First Amendment and Statutory Exemption

Defendant argues two additional affirmative defenses.   (*See* Mot., pp. 13–24.) First, Plaintiffs' claims are constitutionally barred under the First Amendment; and second, Plaintiffs' claims independently fail because California Law exempts from liability the "use of a . . . likeness in connection with any news, public affairs, or sports broadcast or account."   Cal. Civ. Code § 3344(d).   The Court does not address these defenses because Plaintiffs' claims are preempted by the Copyright Act.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Special Motion to Strike under the anti-SLAPP and **STRIKES** Plaintiffs' FAC.   Cal. Code Civ. Proc. 425.16.

Although it is generally error to grant "a defendant's anti-SLAPP motion to strike a plaintiff's *initial* complaint without granting the plaintiff leave to amend" (*Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (emphasis added), this is not Plaintiffs' initial complaint.   Where, as here, a plaintiff has had an opportunity to amend and to conduct at least minimal discovery "[t]o allow amendment after an anti-SLAPP motion to strike has been granted eviscerates the purpose of the anti-SLAPP statute."   *Flores v. Emerich & Fike*, No. 1:05CV0291 OWWDLB, 2006 WL 2536615, at *10 (E.D. Cal. Aug. 31, 2006) (balancing federal rules in favor of liberal amendment with California's substantive interest in quickly disposing of SLAPPs). "[S]ince the statutory intent is to provide a quick, inexpensive method of dismissing SLAPP suits, leave to amend is improper" in such circumstances.   *Browne v. McCain*, 611 F. Supp. 2d 1062, 1068 (C.D. Cal. 2009); *accord Smith v. Santa Rosa Democrat,* No. C 11–02411 SI, 2011 WL 5006463, at *7 (N.D.Cal. Oct.20, 2011) (because "the purpose of the anti-SLAPP statute is to provide for a speedy resolution of claims which impinge on speech protected by the First Amendment … leave to amend is not necessary or appropriate" where plaintiff had already exercised opportunity to amend").   Plaintiffs having already taken the opportunity to amend and having failed to articulate any manner in which additional discovery might save their claims from preemption,[10] the Court strikes

---

[10]  Plaintiffs oppose the motion in part on the ground that they have not had an adequate opportunity to conduct discovery on a handful of topics.   (Opp., pp. 22-24, citing Fed. R. Civ. P. 56(f).)   However, none of the topics of discovery Plaintiffs identify bear on the issue of preemption under the Copyright Act, but instead focus on Defendants' alternative arguments under the First Amendment and California Civil Code section 3344(d).   There is no basis to conclude that further discovery would change the fact that Defendants used Plaintiffs likenesses for the sole purpose of displaying, reproducing, and distributing copyrighted photographs.   Indeed, Plaintiffs affirmatively allege this was the sole use of Plaintiffs'

Plaintiffs' FAC **WITHOUT LEAVE TO AMEND** and **DISMISSES** the action **WITH PREJUDICE**.[11]


   **IT IS SO ORDERED.**

---

likenesses (FAC, ¶5), and further discovery and amendment would be futile and inconsistent with California's substantive interest in providing a "provide a quick, inexpensive method of dismissing SLAPP suits … ."   _Browne v. McCain_, 611 F. Supp. 2d at 1068.

[11]  The Court SUSTAINS Defendant's evidentiary objection number two for lack of foundation.   (_See_ Dkt. No. 63, pp. 2-3.)   The Court OVERRULES Defendant's remaining objections to Plaintiffs' evidence.   (Dkt. No. 63.