Elaine T. Byszewski (SBN 222304)
elaine@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA  91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

Robert B. Carey (*Pro Hac Vice*)
rob@hbsslaw.com
Leonard W. Aragon (*Pro Hac Vice*)
leonard@hbsslaw.com
John M. DeStefano (*Pro Hac Vice*)
johnd@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

*[Additional Counsel Listed on Signature Page]*

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| PATRICK MALONEY, on behalf of himself and all others similarly situated, TIM JUDGE, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> T3MEDIA, INC. D/B/A PAYA.COM, a Colorado corporation, <br><br> Defendant. | No. 2:14-cv-05048-AB-VBK <br><br> **PLAINTIFFS' OPPOSITION TO MOTION OF DEFENDANT T3MEDIA, INC. TO RECOVER ATTORNEYS' FEES** <br><br> Hearing Date:  May 11, 2015 <br> Time:  10:00 a.m. <br> Courtroom:  4 <br><br> [Declaration of John M. DeStefano and Exhibits A-C filed concurrently] <br><br> Complaint Filed: June 27, 2014 |

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES
010430-11  770417 V1

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3    I.    INTRODUCTION ................................................................ 1

4    II.   BACKGROUND .................................................................. 1

5    III.  ARGUMENT ....................................................................... 3

6          A.    T3Media Seeks To Recover Impermissible Fees............................ 3

7                1.    Legal Standard ................................................................. 3

8                2.    T3Media Cannot Recover For Inefficient and
                       Unreasonable Time Spent on the SLAPP Motion .................. 4
9
                 3.    Awards in Other SLAPP Cases Do Not Render T3Media's
10                     Unreasonable Fee Request More Reasonable, and Plaintiff's
                       Recorded Time Shows That T3Media's Efforts Were
11                     Excessive ........................................................................ 7

12               4.    T3Media's SLAPP Motion Vindicated Copyright Interests,
                       Not First Amendment Rights............................................. 10
13
                 5.    T3Media Cannot Recover Fees For Preparing And Filing
14                     An Unnecessary Answer and Amended Answer ............... 11

15               6.    Plaintiffs' Tactics Were Not Overly Aggressive Or
                       Excessive And Do Not Justify T3Media's Excessive
16                     Fee Request .................................................................... 12

17                     a.    The Amendment of the Complaint Did Not
                             Increase the Burden of the Litigation .......................... 12
18
                       b.    Plaintiffs' Ex Parte Request For Time Does Not
19                           Justify an Extraordinary Fee Award............................. 13

20                     c.    Plaintiffs' Requests for Discovery Do Not Justify
                             An Increased Fee Award ................................................ 14
21
          B.    T3Media Has Submitted Insufficient Billing Evidence To
22              Support Its Fee Request.......................................................... 15

23               1.    T3Media's Hours Must Be Reduced For Block Billing........ 15

24               2.    T3Media's Hours Must Be Reduced For Redacted
                       Entries ............................................................................ 16
25

26   IV.   CONCLUSION ................................................................. 17

27

28

i

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*ANT v. McPartlin,*
   No. CV 09-7672, 2010 WL 4572690 (C.D. Cal. Nov. 2, 2010) ........................... 4

5

6

*Batzel v. Smith,*
   372 F. Supp. 2d 546 (C.D. Cal. 2005) ................................ 12

7

*Bernardi v. Cnty. of Monterey,*
   84 Cal. Rptr. 3d 754 (Ct. App. 2008) ................................ 7

8

9

*Brown v. Electronic Arts,*
   No. BC520019, at 7-10 (L.A. County Jan. 29, 2015) ........................... 6

10

*Christian Research Inst. v. Alnor,*
   81 Cal. Rptr. 3d 866 (Ct. App. 2008) ................................ 4, 5

11

12

*Church of Scientology v. Wollersheim,*
   49 Cal. Rptr. 2d 620 (Ct. App. 1996) ................................ 8

13

*Cognizant Tech. Solutions U.S. Corp. v. McAfee,*
   No. 14-CV-1146, 2014 WL 3885868 (N.D. Cal. Aug. 7, 2014) ........................ 16

14

15

*Cusano v. Klein,*
   No. CV 97-4914, 1999 WL 34834936 (C.D. Cal. Dec. 15, 1999),
   *aff'd in relevant part,* 264 F.3d 936 (9th Cir. 2001) ........................... 4

16

17

*Dalidio Family Tr. v. San Luis Obispo Downtown Ass'n,*
   No. 08-55725, 2009 U.S. App. LEXIS 29530
   (9th Cir. Nov. 16, 2009) (unpublished order) ................................ 8

18

19

*Davis v. City & County of San Francisco,*
   976 F.2d 1536 (9th Cir. 1992), *vacated in part on other grounds,*
   984 F.2d 345 (9th Cir. 1993) ................................ 7

20

21

*Garcia v. Allstate Ins.,*
   No. 12-CV-0609, 2014 WL 37385 (E.D. Cal. Jan. 6, 2014) ........................... 12

22

*Graham-Sult v. Clainos,*
   756 F. 3d 724 (9th Cir. 2014) ................................ 8

23

24

*Hamilton v. State Farm Fire & Cas. Co.,*
   270 F.3d 778 (9th Cir. 2001) ................................ 10

25

*Ianni v. Courtroom Television Network LLC,*
   05-CV-4633 (C.D. Cal. ) ................................ 8

26

27

*Ibarra v. Ortiz,*
   No. BC415273 (L.A. Super. Ct. Oct. 7, 2011) ................................ 6, 8

28

i

*Keller v. Electronic Arts, Inc.,*
   No. 10-15387, at 18-20, 46-51 (9th Cir. Aug. 30, 2010) ................................. 5, 6

*Lahiri v. Universal Music & Video Distrib. Corp.,*
   606 F.3d 1216 (9th Cir. 2010).............................................................. 16

*Lightbourne v. Printroom Inc.,*
   Case No. 8:13-cv-00876 (C.D. Cal.) ....................................................... 6

*Martinez v. Metabolife Int'l, Inc.,*
   6 Cal. Rptr. 3d 494 (Ct. App. 2003) ....................................................... 4

*Maughan v. Google Tech., Inc.,*
   49 Cal. Rptr. 3d 861 (Ct. App. 2006) ............................................... 5, 6, 8, 9

*Metabolife Int'l Inc. v. Wornick,*
   213 F. Supp. 2d 1220 (S.D. Cal. 2002) ................................................... 8

*Olsen v. Harbison,*
   35 Cal.Rptr.3d 909 (Ct. App. 2005) ....................................................... 4

*Orian v. Federation International des Droits de L'Homme,*
   No. 11-CV-6904, 2012 U.S. Dist. LEXIS 39298
   (C.D. Cal. Mar. 22, 2012) ................................................................ 8

*Premier Medical Mgmt. Sys. v. Cal. Ins. Guar. Ass'n,*
   77 Cal. Rptr. 3d 695 (Ct. App. 2008) ..................................................... 8

*Rosenaur v. Scherer,*
   105 Cal. Rptr. 2d 674 (Ct. App. 2001) .................................................... 8

*Streisand v. Adelman,*
   No. SC-077-257 (L.A. Super. Ct. May 10, 2004) ......................................... 8

*Vargas v. City of Salinas,*
   134 Cal. Rptr. 3d 244 (Ct. App. 2011) .................................................... 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
   19 F.3d 1291 (9th Cir. 1994)............................................................ 15

*Welch v. Metro Life Ins. Co.,*
   480 F.3d 942 (9th Cir. 2007)............................................................ 15

**Statutes**

California Civil Code § 3344............................................................ 3, 4

California Code of Civil Procedure § 425.16(c) ........................................... 3

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     Introduction

T3Media's Motion to Recover Attorneys' Fees is an exercise in excess. Having told the Court that its SLAPP Motion "raises straightforward legal issues" that could be addressed in a two-week briefing period,[1] T3Media now seeks compensation for over 400 hours of work on those moving papers plus almost 100 hours spent on other tasks.  T3Media's counsel has briefed similar issues in numerous cases and there is no justification for its inefficiency. Plaintiffs' counsel addressed the same SLAPP-related issues in roughly half the time.  Time spent preparing an unnecessary Answer is likewise not recoverable.

T3Media has also failed to support its request with sufficient billing documentation.  Plaintiffs have identified over $33,000 in block-billed entries that the Court should reduce.  And T3Media cannot recover $10,118 in fees where the relevant billing entry is redacted altogether or redacted to obscure the essential nature of the work performed.

There is no merit to T3Media's suggestion that Plaintiffs' "tenacious" litigation tactics justify the amount sought.  Plaintiffs' filing of an amended complaint and request for additional response time did not substantially increase the burden of the litigation.  Plaintiffs' discovery requests were an appropriate response to T3Media's last-minute manufacture of evidence.

## II.    Background

Plaintiffs are former NCAA student-athletes who appeared in official photographs of NCAA events.  Plaintiffs alleged that the photographs were taken subject to NCAA rules that prohibited their commercialization. Plaintiffs filed suit against T3Media generally alleging that T3Media had

---

[1] (Dkt. No. 55, at 2.)

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

misappropriated their rights of publicity by offering the photographs for sale on its website Paya.com.

In early August 2014, T3Media's counsel contacted Plaintiffs' counsel to discuss the case.  Counsel for both sides agreed that an Amended Complaint would be filed no later than August 25, 2014, and that T3Media's deadline to file an Answer would be extended until October 3, 2014.  A stipulation was entered and granted to this effect.[2]

Shortly after the Amended Complaint was filed, T3Media's counsel began to prepare the SLAPP Motion.[3]  Over a six-week period that ran from September 12 to October 24, 2014, T3Media's counsel recorded 257.1 hours of time spent on the SLAPP Motion, and fees totaling $94,297.50.[4]  That amount does not include time T3Media spent on the Reply in Support, another 126.9 hours and $45,520 in fees.[5]

While work on the SLAPP Motion proceeded, T3Media's counsel also prepared an Answer to the First Amended Complaint.  The Answer was filed on October 3, 2014, and amended on October 28, 2014.[6]

Plaintiffs requested additional time to respond to the Motion.  Plaintiffs first filed a Motion for time, which the Court denied without prejudice to filing an *ex parte* application.[7]  Plaintiffs then applied *ex parte* for an extension of time, which the Court denied while of its own accord granting Plaintiffs one additional week to make their response.[8]  The two requests were identical in

---

[2] (Dkt. No. 24, 27.)

[3] (Dkt. No. 80-4, at 22.)

[4] (Dkt. No. 80-4, at 16.)

[5] (Dkt. No. 80-4, at 16.)

[6] (Dkt. No. 33, 45.)

[7] (Dkt. No. 49, 53.)

[8] (Dkt. No. 54, 58.)

2

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

substance, and T3Media filed nearly identical briefs and declarations opposing both.

The Court granted T3Media's SLAPP Motion on March 6, 2015.[9]  The Court based its decision on copyright preemption and did not reach T3Media's additional defenses, which consumed the lion's share of the SLAPP briefing: that Plaintiffs' claims are barred by the First Amendment, that Plaintiffs' claims fall within statutory exemptions, and that Plaintiffs' UCL claim independently fails.  T3Media has now moved for an award of attorney's fees under the SLAPP statute, Cal. Civ. P. Code § 425.16(c), and the right-of-publicity statute, Cal. Civ. Code § 3344(a).  Plaintiffs oppose this request as set forth below.

## III.   Argument

The SLAPP statute and California Civil Code § 3344 entitle T3Media to recover reasonable attorney's fees as a prevailing party.  Plaintiffs dispute the reasonableness of the hours spent giving rise to those fees.  First, T3Media seeks to be compensated for massively inefficient billing practices.  These practices include spending over 400 hours on a single motion and filing an unnecessary Answer and Amended Answer. The Court should impose a steep reduction on the $180,571 in fees claimed. Second, T3Media seeks to be compensated for fees which are insufficiently documented, specifically block-billed entries that should be reduced, and redacted billing entries which should be rejected.

### A.   T3Media Seeks To Recover Impermissible Fees

#### 1.   Legal Standard

The purpose of the SLAPP statute is to prevent the expense and burden of litigation from chilling the legitimate exercise of First Amendment rights.  It

---

[9] (Dkt. No. 77.)

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

is to provide an "*efficient* procedural mechanism to obtain an early and *inexpensive* dismissal of nonmeritorious claims." *Martinez v. Metabolife Int'l, Inc.*, 6 Cal. Rptr. 3d 494, 497 (Ct. App. 2003) (emphasis added). While the fee-shifting provision of the statute aims to protect successful defendants from the expense of litigation, it is not a license to bill unreasonably. *Christian Research Inst. v. Alnor*, 81 Cal. Rptr. 3d 866, 871 (Ct. App. 2008) ("The Legislature, however, did not intend recovery of fees and costs as a windfall."); *Olsen v. Harbison*, 35 Cal.Rptr.3d 909, 913 (Ct. App. 2005) (noting "ironic unintended consequence that anti-SLAPP procedures, enacted to curb abusive litigation, are also prone to abuse"). Similarly, under California Civil Code § 3344, recovery of attorney's fees is limited to those fees that are reasonable. *See Cusano v. Klein*, No. CV 97-4914, 1999 WL 34834936, at *5 (C.D. Cal. Dec. 15, 1999), *aff'd in relevant part*, 264 F.3d 936, 951 (9th Cir. 2001); *ANT v. McPartlin*, No. CV 09-7672, 2010 WL 4572690, at *3 (C.D. Cal. Nov. 2, 2010). "To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." *Christian Research Inst.*, 81 Cal. Rptr. 3d at 871 (citation omitted).

### 2. T3Media Cannot Recover For Inefficient and Unreasonable Time Spent on the SLAPP Motion

T3Media claims a fee for its decision to spend over 400 hours preparing the SLAPP Motion and Reply, at an expense of almost $150,000.[10] If the SLAPP statute is intended to promote efficient and inexpensive case resolution, T3Media has turned that premise on its head, treating the SLAPP procedure as a vehicle for inefficient and expensive over-litigation. The SLAPP statute does not empower a defendant to rack up extraordinary and excessive fees and use those to bludgeon any who would raise a colorable, if

---

[10] (Dkt. No. 80-4, at 16.)

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

ultimately unsuccessful, claim against it.  Merely opposing Plaintiffs' *ex parte* request for a simple extension of the SLAPP briefing schedule is said to have incurred $9,997.50 in fees, reflecting over 29 hours of work by three different attorneys, including *seven hours* of partner time.[11] The total fees relating to the SLAPP Motion are unreasonable and inefficient on their face, and the Court should reduce them severely.  *Christian Research Inst*, 81 Cal. Rptr. 3d at 871 ("If ... the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place. To discourage such greed, a severer reaction is needful...." (citation omitted)).

T3Media's legal team consists of specialists in media law and First Amendment law, who have researched, briefed and argued similar right-of-publicity cases, including cases concerning the unique context of athletes and even NCAA student-athletes.[12]  "[C]ounsel acknowledge that they are old hats at [anti-]SLAPP motions and experts in" the Copyright and First Amendment issues in this case.  *Maughan v. Google Tech., Inc.*, 49 Cal. Rptr. 3d 861, 868-69 (Ct. App. 2006) (reducing fee request for 200 hours work on SLAPP Motion to equivalent fee for 50 hours' work expended on the response brief by capable opposing counsel).

For example, in *Keller v. Electronic Arts, Inc.*, attorneys Kelli Sager and Karen Henry argued that the First Amendment and the statutory public interest exemption defeat right-of-publicity claims brought by NCAA student-athletes.  As here, they argued that these defenses arose out of the broad

---

[11] (Dkt. No. 80-4, at 16 ("Ex Parte" phase).)

[12] (Dkt. No. 80-3 ¶ 4(a)-(c) (credentials of counsel).)

5

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

public interest in sporting events and their impact on popular culture. Opening Br., *Keller v. Electronic Arts, Inc.*, No. 10-15387, at 18-20, 46-51 (9th Cir. Aug. 30, 2010).  In August 2014, just weeks before beginning work on the SLAPP Motion in this case, attorneys Kelli Sager and Karen Henry filed a SLAPP Motion in *Brown v. Electronic Arts Inc.*, arguing in part that the First Amendment and the statutory public interest exemption barred claims by a former NFL athlete regarding the misappropriation of his right of publicity. *Brown v. Electronic Arts*, No. BC520019, at 7-10 (L.A. County Jan. 29, 2015).

While factual contexts will vary—both the *Keller* and the *Brown* SLAPP Motions were denied—these First Amendment and public interest arguments relied upon the same body of law as the Motion in this case.  The same arguments made up the lion's share of T3Media's briefs in this case, and did not even play a dispositive role in this Court's decision because the Court did not reach those arguments.[13]  As to the copyright preemption issue, T3Media was independently aware of the litigation in *Lightbourne v. Printroom Inc.*, Case No. 8:13-cv-00876, (C.D. Cal.) and cited the same authorities analyzed in that case as to whether the Copyright Act preempts NCAA student-athlete publicity rights.[14]  *See Maughan*, 49 Cal. Rptr. 3d at 868-69 (affirming reduction of SLAPP-related fee award in putative class action because of moving counsel's familiarity with the relevant procedural and substantive law); *Ibarra v. Ortiz*, No. BC415273 (L.A. Super. Ct. Oct. 7, 2011) (Henry Decl. Ex. E) (reducing SLAPP fee award because of "substantial duplication," "excessive hours," and moving counsel's "well-established expertise in this area of law").

---

[13] (*See* Dkt. No. 36, at 8, 13-24; Dkt. No. 61, at 6-20.)

[14] (*See* Dkt. No. 55, at 4 (declaration of T3Media's counsel stating that *Lightbourne* addressed related issues).)

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

6

1
2
3
4
5
6
7
8
9
10
11

Indeed, the bills reveal numerous entries for briefing topics that were not even raised in the SLAPP motion or the reply, such as implied consent,[15] choice-of-law,[16] judicial notice,[17] incidental use,[18] and a response (drafted before Plaintiffs' brief was filed) to a non-existent argument that the SLAPP statute does not apply.[19] T3Media also seeks to recover $1,015 for preparation of a SLAPP hearing binder, a clerical task which does not even qualify as a recoverable attorney's fee.[20] *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). T3Media's failure to demonstrate efficiency and billing judgment in relation to familiar topics and legal analysis undermines its claim for payment for over 400 hours.

12
13

### 3. Awards in Other SLAPP Cases Do Not Render T3Media's Unreasonable Fee Request More Reasonable, and Plaintiff's Recorded Time Shows That T3Media's Efforts Were Excessive

14
15
16
17

T3Media's citations of large fee awards in other SLAPP cases do not render its fees here reasonable. The reasonableness of fees "is necessarily ad hoc and must be resolved on the particular circumstances of each case." *Bernardi v. Cnty. of Monterey*, 84 Cal. Rptr. 3d 754, 766 (Ct. App. 2008) (citation

18
19
20
21
22
23
24
25
26
27
28

---

[15] (Dkt. No. 80-4, at 28 (Oct. 2, 2014 entries).)
[16] (Dkt. No. 80-4, at 28 (Oct. 3, 2014 entry).)
[17] (Dkt. No. 80-4, at 29 (Oct. 8, 2014 entries).)
[18] (Dkt. No. 80-4, at 50 (Nov. 6, 2014 entry).)
[19] (Dkt. No. 80-4, at 50 (Nov. 7, 2014 entry).)
[20] (Dkt. No. 80-4, at 55.)

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

omitted).  Each of the cases T3Media cites involved very different circumstances from those here.[21]

The time Plaintiffs' counsel spent on the Response provides the most apt comparison.  *See Maughan*, 49 Cal. Rptr. 3d at 868-70 (affirming reduction of SLAPP-related fee award by over 75% where plaintiffs' counsel were shown to be capable lawyers with an impressive track record, who submitted a brief on par with the defendants' SLAPP motion and completed it in one-fourth the time); *see also Ianni v. Courtroom Television Network LLC*, 05-CV-4633 (C.D. Cal.); Henry Decl. Ex. D; Dkt. # 80-4, at 78 (finding that bill for 350 hours for preparation of a SLAPP Motion  is "unreasonable and far out of line with the amounts billed by comparable counsel . . . who undertook virtually the same tasks" in the same case, but spent half the time, and reducing bill accordingly).[22] In the conferral process, T3Media's own counsel suggested that

---

[21] *See Vargas v. City of Salinas*, 134 Cal. Rptr. 3d 244 (Ct. App. 2011) (fee included work on initial appeal, California Supreme Court review, and motion for new trial); *Church of Scientology v. Wollersheim*, 49 Cal. Rptr. 2d 620 (Ct. App. 1996) (fee included re-briefing and new evidence after intervening appellate decision); *Premier Medical Mgmt. Sys. v. Cal. Ins. Guar. Ass'n*, 77 Cal. Rptr. 3d 695 (Ct. App. 2008) (fees awarded to 3 defendants in complex case involving 21 named defendants); *Metabolife Int'l Inc. v. Wornick*, 213 F. Supp. 2d 1220 (S.D. Cal. 2002) (fees awarded because plaintiff failed to mitigate expenses by continuing to litigate aggressively after admitting claims had no merit); *Rosenaur v. Scherer*, 105 Cal. Rptr. 2d 674 (Ct. App. 2001) (affirming $65,386 award in pro bono case); *Graham-Sult v. Clainos*, 756 F. 3d 724 (9th Cir. 2014) (complex probate dispute involving eight defendants and twelve causes of action); *Orian v. Federation International des Droits de L'Homme*, No. 11-CV-6904, 2012 U.S. Dist. LEXIS 39298 (C.D. Cal. Mar. 22, 2012) (fees awarded to two separate defendants represented by four law firms); *Dalidio Family Tr. v. San Luis Obispo Downtown Ass'n*, No. 08-55725, 2009 U.S. App. LEXIS 29530 (9th Cir. Nov. 16, 2009) (unpublished order) (reducing fee request and awarding fees of $52,312, including partial work on appeal); *Streisand v. Adelman*, No. SC-077-257 (L.A. Super. Ct. May 10, 2004) (no discussion of case history); *Ibarra v. Ortiz*, No. BC415273 (L.A. Super. Ct. Oct. 7, 2011) (fees included work on motion to strike, motion to defer fee litigation until after appeal, and appeal).

[22] The Court in *Ianni* reduced the fees awarded to equal the lesser amount of fees sought by a co-defendant, with a modest increase for additional work performed.

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

Plaintiffs' lodestar would provide a useful comparison. (April 8, 2015 Declaration of John M. DeStefano (DeStefano Decl.) ¶ 8, filed concurrently.)

Plaintiffs' counsel are well versed in right of publicity cases and NCAA student-athlete class actions, and have a strong track record of success in these areas.[23]  Plaintiffs devoted approximately 218 hours of attorney and paralegal time to preparing the SLAPP response amounting to a lodestar of $83,720, roughly half of the amount billed by T3Media.[24]  While it is true that T3Media filed a second brief in support of its Motion, Plaintiffs had to address the same range of issues in their Response.  And Plaintiffs' time was not limited to drafting the Response.  It also included conferral about the SLAPP Motion with T3Media, preliminary research into the issues raised during conferral, document review, preparation of the *ex parte* motion, preparation of the protective order, analysis and research on T3Media's Reply brief, and time spent preparing for oral argument on the SLAPP Motion before it was vacated.  T3Media has not justified spending well over double that time for substantially equivalent tasks addressing familiar issues.  *See Maughan*, 49 Cal. Rptr. 3d at 868.[25]

When opposing Plaintiffs' request for an extension of the response date, T3Media downplayed the complexity of the SLAPP motion.  It contended that

---

[23] (DeStefano Decl. ¶¶ 2-6.)  The *Google* court rejected the objection that further documentary support is needed to support Plaintiffs' calculation of incurred fees. *Maughan*, 49 Cal. Rptr. 3d at 868 & n.8. Because a complete statement of *all* relevant billing entries necessarily includes privileged information, Plaintiff offers to submit further billing evidence to the Court *in camera* if called upon to do so.

[24] (DeStefano Decl. ¶ 9.)

[25] In addition to affirming a comparison of hours spent by Plaintiff and Defendant and a corresponding reduction of Defendant's fee award, the *Maughan* Court noted that the pendency of a putative class action did not justify larger fees: "Although the complaint sought monetary damages, including punitive damages and attorney fees, the lawsuit was essentially a putative class action, and at this early stage of the proceedings, it would be speculative to place any dollar amount on the alleged damages."  *Maughan*, 49 Cal. Rptr. 3d at 869.

9

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

the Motion "raises straightforward legal issues" and asserted that two weeks would present "ample time to review the Motion and prepare their opposition papers."[26]  The Court relied upon these statements in denying Plaintiffs' request for additional time, and T3Media cannot take an inconsistent position now.  *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (judicial estoppel prevents party from taking inconsistent positions "where the court relied on, or 'accepted,' the party's previous inconsistent position").

### 4. T3Media's SLAPP Motion Vindicated Copyright Interests, Not First Amendment Rights

By claiming that its SLAPP Motion "vindicated important First Amendment rights," T3Media confuses heroics with hyperbole.  Plaintiffs' claims did not seek "a monopoly on any use of photographs depicting them during NCAA championship games," as T3Media argues.  Plaintiffs instead sought to enforce their narrow expectation that photographs taken subject to NCAA rules would not be commercialized in violation of those rules.  Those same rules prohibited Plaintiffs from consenting to the commercialization of the photographs and prohibited the NCAA and its agents from making commercial use of them.[27]

Seeking damages based on the unauthorized sale of a restricted collection of photographs is not to control "any use of" the phographs, nor does it seek a monopoly on all photographs of NCAA championship games.[28]  It most certainly would not "allow[] *any* person who is identifiable in a photograph depicting matters of public importance to control (or prevent) the dissemination of that photograph."[29]   T3Media rhapsodizes about iconic

---

[26] (Dkt. No. 55, at 2, 4.)

[27] (FAC ¶¶ 1-4, 22-24, 30-35, 44, 58-61, 66.)

[28] (Dkt. No. 80, at 6.)

[29] (Dkt. No. 80, at 7.)

10

World War II photography while forgetting that NCAA rules limit the commercialization of names, images, and likenesses of a unique and limited class of student athletes. The matter of public interest in this case is not the chilling of First Amendment rights, but the unfair exploitation and commercialization of student athletes within the hugely profitable cartel structure of the NCAA and its business affiliates.

Moreover, the Court did not reach, let alone accept, T3Media's First Amendment defense. The case vindicated First Amendment rights only in the sense that it vindicated a procedural device, the SLAPP statute, that provides for expedited resolution of some copyright issues whether or not the First Amendment actually provides a defense.

### 5. T3Media Cannot Recover Fees For Preparing And Filing An Unnecessary Answer and Amended Answer

The filing of an unnecessary Answer should not serve to increase T3Media's fee claim. T3Media committed early to the course of preparing a SLAPP motion in response to the Complaint. The billing statements show that T3Media began focusing its energies on the preparation of the SLAPP motion several weeks before the October 3, 2014 deadline to answer the complaint.[30] Indeed, the first billing entry to refer to the Answer is dated September 27, 2014. T3Media spent 27.7 hours, totaling $11,756.50 in fees, preparing the Answer and Amended Answer.[31]

The main practical result of filing the Answer was to cause the Court to set a Rule 16 scheduling conference and to encourage counsel to agree to begin discovery.[32] However, T3Media proposed (and Plaintiffs agreed) to stipulate

---

[30] (Dkt. No. 80-4, at 22-26.)

[31] (Dkt. No. 80-4, at 16.)

[32] (Dkt. No. 34, at 2.)

11

to postpone the Rule 16 conference,[33] and no discovery took place.  In essence, the filing of an Answer and Amended Answer was needless in light of T3Media's plan to file a SLAPP Motion.  The expense could have been avoided by securing a short extension of the Answer deadline to correspond to the SLAPP motion deadline.  *See Garcia v. Allstate Ins.*, No. 12-CV-0609, 2014 WL 37385, at *17 (E.D. Cal. Jan. 6, 2014) (SLAPP Motion filed in lieu of answer); *Batzel v. Smith*, 372 F. Supp. 2d 546, 552 (C.D. Cal. 2005) (same). It should not be recoverable.

### 6. Plaintiffs' Tactics Were Not Overly Aggressive Or Excessive And Do Not Justify T3Media's Excessive Fee Request

Plaintiffs' litigation tactics were not so overly aggressive that they justify T3Media's extraordinary fee request.  Plaintiffs' tactics did not "increase[] significantly" the "amount of time that had to be expended in the defense of this lawsuit" as T3Media asserts.[34]  T3Media lists only three examples of Plaintiffs' "tenacious" litigation: the filing of a First Amended Complaint, the filing of an *ex parte* application to continue the hearing on the SLAPP Motion, and Plaintiffs' requests for additional discovery.  Not one of these examples supports T3Media's argument.

### a. The Amendment of the Complaint Did Not Increase the Burden of the Litigation

Plaintiffs filed their First Amended Complaint on August 25, 2014.[35]  The filing of the First Amended Complaint was a product of cooperation between counsel, not inefficiency or aggressive tactics.  The week of August 10, 2014, T3Media's counsel contacted Plaintiffs' counsel and agreed to extend the deadlines to amend the complaint and file an Answer.  For time spent before

---

[33] (Dkt. No. 72, 74)

[34] (Dkt. No. 80, at 7.)

[35] (Dkt. No. 29.)

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

the First Amended Complaint was filed, T3Media presents billing records of only 1.1 hours, or a total fee of $441.[36]

The First Amended Complaint did not substantially increase fees in any way. It closely resembeled the original Complaint, added only three pages of new allegations, mostly pertaining to widely reported developments in the *O'Bannon* antitrust case[37] and the closure of T3Media's Paya.com website, a fact well known to T3Media.[38] It alleged the same legal theories and causes of action as the original Complaint. It caused no waste, distraction, or confusion that would justify an increased fee award.

### b.   Plaintiffs' Ex Parte Request For Time Does Not Justify an Extraordinary Fee Award

T3Media complains that Plaintiff filed "two *ex parte* applications" to extend the response deadline. In fact, Plaintiff filed one such application, after the Court denied Plaintiff's initial request for time in the form of a Motion.[39] The *ex parte* application largely duplicated Plaintiffs' initial Motion, and T3Media's opposition largely duplicated its original opposition—requiring little additional time. T3Media's own billing records show approximately 2.4 hours of time devoted to the repetitious *ex parte* filing after the Court's November 3, 2014 Order, resulting in an additional expense of $849.50.[40]

While Plaintiffs' *ex parte* request was denied by the Court, it presents no excuse for the $9,997.50 in fees that T3Media claims for opposing it. The Opposition filed was just over four pages long.[41] It was accompanied by a

---

[36] (Dkt. No. 80-4, at 17-19.)

[37] (FAC ¶¶ 26-29, 62-66, 83-85)

[38] (FAC ¶¶ 51-52.)

[39] (Dkt. No. 53.)

[40] (Dkt. No. 80-4, at 49.)

[41] (Dkt. 55.)

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

four-page declaration of counsel reciting basic procedural history.[42]  As already noted, a dispute about the briefing schedule does not justify 29 hours of work, spread across three lawyers, including *seven hours* of partner time.[43] The fee claimed here further illustrates the inefficiency that pervades T3Media's billing statements.

### c. Plaintiffs' Requests for Discovery Do Not Justify An Increased Fee Award

Finally, Plaintiffs' requests for discovery do not justify an inflated bill for T3Media's legal services.  The Court denied discovery only because it held that the discovery pertained to a factual issue that the Court did not reach: T3Media's First Amendment defense.

Plaintiffs' requests for discovery were not burdensome, surprising, or aggressive.  Instead, they were a natural response to T3Media's last-minute manufacture of evidence.  When Defendants conferred with Plaintiffs about their SLAPP Motion on October 16, 2014, Plaintiffs requested a copy of the relevant agreement between T3Media and the NCAA.[44]  By that time, T3Media's counsel was aware of an existing Amended and Restated Digital Asset Management and Content-Licensing Agreement for the NCAA and two amendments to that agreement.[45] Contrary to Plaintiffs' expectations, T3Media never did produce that existing agreement.  Instead, T3Media surprised Plaintiffs by producing a new agreement between T3Media and the NCAA that was signed just days before T3Media filed its SLAPP Motion.  This new agreement refers to the Amended and Restated Digital Asset Management

---

[42] (Dkt. No. 55-1.)

[43] (Dkt. No. 80-4, at 16.)

[44] (Dkt. No. 55-1, at 2.)

[45] (Dkt. No. 80-4, at 24 (fourth-from-last billing entry).)

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

and Content-Licensing Agreement as a separate, preexisting document.  (Dkt. No. 36, Weiser Decl. Ex. B, at 1.)

Obviously, the creation of a new agreement for purposes of litigation raises more questions than it answers, and Plaintiffs made follow-up discovery requests accordingly.  T3Media has only itself to blame for failing to produce the NCAA agreement that existed when Plaintiffs made their informal request, and for failing to explain to Plaintiffs why a new agreement was created and immediately submitted into evidence.  Defendants cannot recover extra fees that result from their own surprise conduct.

**B.    T3Media Has Submitted Insufficient Billing Evidence To Support Its Fee Request**

As the party seeking to recover fees, T3Media "bears the burden of submitting detailed time records justifying the hours claimed to have been expended."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (citation omitted).  Because T3Media has submitted insufficient documentation for portions of the fees claimed, the district court should make a corresponding reduction to the award.  Specifically, T3Media has submitted 85 hours of block-billed billing entries, reflecting $33,157 of the total request.  T3Media has also submitted 19.9 hours of billing entries, representing $10,118, which are unsubstantiated because T3Media has redacted the material part of the billing entry or, in many cases, the entirety of the billing entry.

**1.    T3Media's Hours Must Be Reduced For Block Billing**

The practice of block billing can result in the inflation of bills and "makes it more difficult to determine how much time was spent on particular activities."  *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).  Block billed entries may be reduced because of the block billing itself and for any other problematic aspect of the bill in question.  In light of a California State

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

Bar committee report that block billing can result in the inflation of time entries by 10 to 30%, the Ninth Circuit has approved a reduction of block-billed fee awards by as much as 30%, not including other reductions.  *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010).  Here, Plaintiffs request at least a 30% reduction of block-billed entries in addition to any other reductions already imposed by the Court.

Attached is a list of thirteen separate block-billed entries from T3Media's billing statement.[46]  These entries total $33,157 and should be reduced by at least 30% of that total amount, or $9,947.10.

### 2. T3Media's Hours Must Be Reduced For Redacted Entries

T3Media "is not allowed to petition the Court for fees but hide from the public the basis for its request." *Cognizant Tech. Solutions U.S. Corp. v. McAfee*, No. 14-CV-1146, 2014 WL 3885868, at *3 (N.D. Cal. Aug. 7, 2014) (citation omitted).  Nonetheless, T3Media's billing records include over thirty billing entries where the substantive information about the nature of the work performed has been redacted.  In several instances, T3Media has redacted the entirety of a billing entry for a particular task but has failed to reduce the total number of hours for the day by the same amount.  The Court should refuse to award any fees with respect to these redacted billing entries.

Attached is a list of 35 billing entries from T3Media's billing statement that the Court cannot evaluate because T3Media has redacted all substantive information about the nature of the work performed, or because T3Media has redacted the billing entry in its entirety.[47]  These billing entries total $10,118 and the Court should award no part of this figure to T3Media.

---

[46] (DeStefano Decl. Ex. B.)

[47] (DeStefano Decl. Ex. C.)

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES

## IV.    Conclusion

For the foregoing reasons, Plaintiffs request that the Court reduce T3Media's total fee request by at least 50%, or $90,285.50, and apply similar scrutiny to fees expected to be requested in relation to T3Media's Reply in support of the fee motion.

DATED: April 8, 2015.                    Respectfully Submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:  __/s/ John M. DeStefano_____

Robert B. Carey (Pro Hac Vice)
rob@hbsslaw.com
Leonard W. Aragon (Pro Hac Vice)
leonard@hbsslaw.com
John M. DeStefano (Pro Hac Vice)
johnd@hbsslaw.com
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

Elaine T. Byszewski (SBN 222304)
elaine@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA  91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

William S. Sowders (SBN 221687)
wsowders@gustlaw.com
GUST ROSENFELD P.L.C.
One East Washington Street, Suite 1600
Phoenix, AZ  85004
Telephone: (602) 257-7478
Facsimile: (602) 254-4878

*Attorneys for Plaintiffs and the Proposed Class*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

    Pursuant to FRCP 5, I, John M. DeStefano, hereby certify that on April 8, 2015,

3

a true and correct copy of the foregoing *Plaintiffs' Opposition to Motion of Defendant*

4

*T3Media, Inc. to Recover Attorneys' Fees* was filed electronically with the Clerk of

5

Court at my direction using the CM/ECF system, which will send notification of such

6

filing to all counsel of record.

7

8

                         /s/ John M. DeStefano

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION
FOR ATTORNEYS' FEES